Case No. 17–1234

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

DENZELL D. GRANT,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

On Appeal from the United States District Court
for the Southern District of Illinois
Case No. 3:16–CV–677–MJR
(Related Case No. 3:14–CR–30039–MJR)

## BRIEF OF PETITIONER-APPELLANT

Benjamin S. Morrell
 *Counsel of Record*
Adam W. Decker
Spencer J. Parts

TAFT STETTINIUS &
HOLLISTER LLP
111 East Wacker Drive
Suite 2600
Chicago, IL 60601
(312) 527–4000
bmorrell@taftlaw.com
adecker@taftlaw.com
sparts@taftlaw.com

*Appointed Counsel for Petitioner-Appellant*

## Disclosure Statement

The undersigned counsel for Petitioner-Appellant Denzell D. Grant makes the following submissions pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1:

(1) *Represented party's full name*. Denzell Daquan Grant.

(2) *Law firms that have appeared for the party*. Undersigned counsel, of Taft Stettinius & Hollister LLP, represent Grant pro bono in this appeal. Grant filed the petition that is the basis for this appeal pro se and Assistant Federal Public Defender Daniel Cronin appeared on his behalf in the district court. Grant was represented in his underlying criminal case by Assistant Federal Public Defender Todd Schultz.

By     /s/     *Adam W. Decker*

# Table of Contents

Page

Disclosure Statement ...............................................................ii

Table of Authorities.................................................................. v

Statement Regarding Oral Argument ..................................................... x

Statement Regarding Jurisdiction........................................................... 1

Questions Presented................................................................2

Statement of the Case ...................................................................3

I.    Grant pleads guilty to attempted Hobbs Act robbery and use of a firearm in furtherance of a crime of violence. .............................................................. 3

II.   Grant files his habeas petition within one year of *Johnson*. ................................................................. 9

III.  This Court grants a certificate of appealability and stays briefing. ................................................................. 12

Standard of Review .................................................................. 15

Summary of the Argument ................................................................ 15

Argument.................................................................................. 17

I.    Attempted Hobbs Act robbery is no longer a crime of violence under § 924(c) following *Taylor*. ........................... 17

A.    The Supreme Court in *Davis* held that § 924(c)(3)(B)'s definition of "crime of violence" is unconstitutionally vague. ........................................ 18

B.    The Supreme Court in *Taylor* held that uncompleted Hobbs Act robbery is not categorically a crime of violence. ............................... 20

II.   *Taylor* applies retroactively on collateral review. ............... 25

III.  Grant is entitled to relief even though he pleaded guilty to the § 924(c) charge............................................ 29

IV.   Grant's limited waiver of appeal and collateral review does not preclude relief here. ........................................... 34

**Table of Contents (continued)**

Page

A.    Grant is "actually innocent" of the § 924(c) offense to which he pleaded guilty, as that term is used in his plea agreement. ................................................ 35

B.    Alternatively, the language of the plea agreement is ambiguous and should be interpreted to permit collateral review. ...................................................... 40

C.    If the waiver's exception for subsequent developments in governing law does not apply, this Court should nonetheless refuse to enforce it because to do so would result in a miscarriage of justice. ................................................................. 42

V.    Grant did not commit a procedural default, distinguishing this case from *Cobbs*; even if he did, he must prevail because he is factually innocent of completed Hobbs Act robbery. ........................................... 48

A.    Grant did not procedurally default his *Johnson*-based claim because *Johnson* had not been decided when his conviction became final, and his plea agreement barred appeal absent new law. .......... 49

B.    If Grant did procedurally default his claim, his default can be excused for cause and prejudice .......... 50

1.    There was cause for any default. ....................... 51

2.    The prejudice prong is also satisfied here. ........ 53

C.    If Grant did procedurally default his claim and cannot show cause and prejudice, he nonetheless is entitled to relief because he is actually innocent of completed Hobbs Act robbery. ............................. 54

Conclusion ................................................................................. 58

Certificate of Compliance ...................................................... 60

Certificate of Service .............................................................. 61

# Table of Authorities

**Page(s)**

**Cases**

*Aponte v. United States,*
  No. 19 Civ. 3511, 2023 U.S. Dist. LEXIS 90284 (S.D.N.Y.
  May 23, 2023)........................................................................28

*Bailey v. United States,*
  516 U.S. 137 (1995)...............................................................29

*Bousley v. United States,*
  523 U.S. 614 (1998)................................................... 28, 50, 56

*Bufkin v. United States,*
  800 F. App'x 436 (7th Cir. 2020).........................................29

*Class v. United States,*
  583 U.S. 174 (2018)...................................... 29, 30, 31, 33

*Cobbs v. United States,*
  141 F.4th 872 (7th Cir. 2025) .................................... *passim*

*Davila v. United States,*
  843 F.3d 729 (7th Cir. 2016)............................... 31, 32, 33

*Delatorre v. United States,*
  847 F.3d 837 (7th Cir. 2017)...........................................53

*Edwards v. Vannoy,*
  593 U.S. 255 (2021)...........................................................27

*Fountain v. United States,*
  211 F.3d 429 (7th Cir. 2000)............................................15

*Gregorczyk v. United States,*
  997 F.3d 743 (7th Cir. 2021)............................... 31, 32, 33

*Haynes v. United States,*
  390 U.S. 85 (1968)...........................................................30

*Hughes v. United States,*
No. 22-5545, 2023 WL 12299338 (6th Cir. 2023) .............................. 33

*Hunter v. United States,*
146 S. Ct. 1702 (2026) ........................................................ *passim*

*Johnson v. United States,*
576 U.S. 591 (2015) ........................................................... *passim*

*Johnson v. United States,*
Nos. 22-cv-1526, 18-cr-182-2 (E.D. Wis. Mar. 30, 2023) ................... 28

*Jones v. United States,*
609 U.S. __, 146 S. Ct. 2547 (2026) ............................................... 43

*Jones v. United States,*
39 F.4th 523 (8th Cir. 2022) ....................................................... 52

*Lund v. United States,*
913 F.3d 665 (7th Cir. 2019) ...................................................... 38

*Mapp v. Ohio,*
367 U.S. 643 (1961) ................................................................. 26

*McCoy v. United States,*
815 F.3d 292 (7th Cir. 2016) ...................................................... 49

*Miranda v. Arizona,*
384 U.S. 436 (1966) ................................................................. 26

*Murray v. Carrier,*
477 U.S. 478 (1986) .............................................................. 51, 53

*Pedro v. United States,*
No. 22-cv-9387, 2022 U.S. Dist. LEXIS 216175 (S.D.N.Y.
Nov. 30, 2022) ....................................................................... 28

*Raines v. United States,*
898 F.3d 680 (6th Cir. 2018) ...................................................... 54

*Ramos v. Louisiana,*
590 U.S. 83 (2020) ............................................................... 26, 27

vi

*Reed v. Ross*,
    468 U.S. 1 (1984)..................................................................51, 52

*Schriro v. Summerlin*,
    542 U.S. 348 (2004)...................................................... 25, 26, 27, 29

*United States v. Acevedo*,
    178 F.4th 789 (1st Cir. 2026).......................................................32

*United States v. Adams*,
    814 F.3d 178 (4th Cir. 2016)................................................ 45, 46, 47

*United States v. Davis*,
    588 U.S. 445 (2019)............................................................ 19, 29, 31

*United States v. Frady*,
    456 U.S. 152 (1982)....................................................................53

*United States v. Garcia*,
    811 F. App'x 472 (10th Cir. 2020)...............................................52, 54

*United States v. Hester*,
    No. 23 C 14306, 2024 U.S. Dist. LEXIS 103615 (N.D. Ill.
    June 11, 2024)..........................................................................28

*United States v. Ingram*,
    947 F.3d 1021 (7th Cir. 2020)............................................. 13, 14, 25

*United States v. Jones*,
    No. 24-3185, 2026 WL 1347507 (3d Cir. May 14, 2026) ....................32

*United States v. Litos*,
    847 F.3d 906 (7th Cir. 2017)............................................. 35, 42, 43, 44

*United States v. Malone*,
    815 F.3d 367 (7th Cir. 2016)............................................. 35, 40, 41, 58

*United States v. McKinney*,
    60 F.4th 188 (4th Cir. 2023) ................................................... *passim*

*United States v. Nulf*,
    978 F.3d 504 (7th Cir. 2020)........................................................43

*United States v. Roper,*
No. 22-5415, 2023 WL 3376689 (6th Cir. 2023) .......................... 32, 33

*United States v. Schatz,*
178 F.4th 364 (7th Cir. 2026) ........................................................ 20

*United States v. Simmons,*
649 F.3d 237 (4th Cir. 2011) ......................................................... 45

*United States v. Snyder,*
871 F.3d 1122 (10th Cir. 2017) ..................................................... 54

*United States v. St. Hubert,*
909 F.3d 335, 343–44 (11th Cir. 2018) .......................................... 31

*United States v. Sweeney,*
833 F. App'x 395 (4th Cir. 2021) ................................................... 47

*United States v. Taylor,*
596 U.S. 845 (2022) ............................................................... *passim*

*United States v. Ury,*
106 F.2d 28 (2d Cir. 1939) ............................................................ 30

*United States v. Vessell,*
No. 25-5008, 2025 WL 1577818 (10th Cir. Jun. 24, 2025) ................. 23

*Velez v. United States,*
793 F. App'x 453 (7th Cir. 2020) ............................................ 13, 14, 25

*Wheeler v. United States,*
No. 22-cv-764, 2023 U.S. Dist. LEXIS 131783 (E.D. Wis.
July 31, 2023) ......................................................................... 28, 33

*White v. United States,*
8 F.4th 547 (7th Cir. 2021) ..................................................... 48, 50

## Statutes

18 U.S.C. § 924 ..................................................................... *passim*

18 U.S.C. § 1951 .............................................................. 4, 5, 7, 8

18 U.S.C. § 3663A ................................................................................... 44

28 U.S.C. § 2253 ...................................................................................... 1

28 U.S.C. § 2255 ............................................................................ *passim*

## Other Authorities

Fourth Amendment ............................................................................... 26

Sixth Amendment .................................................................................. 26

## Statement Regarding Oral Argument

Petitioner Grant respectfully requests oral argument. This appeal is not "frivolous" (*see* Fed. R. App. P. 34(a)(2)(A)), because the primary issue identified by the Court in its order granting a certificate of appealability—"whether an uncompleted attempted Hobbs Act robbery is a crime of violence under § 924(c)(3)'s elements clause"—was resolved in Grant's favor by *United States v. Taylor*, 596 U.S. 845 (2022). (*See* Order Granting Certificate of Appealability, App. Dkt. 9.)[1] Grant also believes the Court would benefit from oral argument given the complexity of the remaining issues, including the retroactivity of *Taylor* and the effect (if any) of his plea agreement.

---

[1] The docket in the instant appellate proceeding, Seventh Circuit Case No. 17-1234, is hereinafter abbreviated "App. Dkt." The docket in the civil case from which this appeal is taken, Case No. 16-cv-677-MJR (S.D. Ill.), is abbreviated "Civ. Dkt." The docket in Grant's underlying criminal case, Case No. 14-cr-30039-MJR (S.D. Ill.) is abbreviated "Crim. Dkt." Citations to materials cited in Grant's Appendix are abbreviated "App'x at __."

## Statement Regarding Jurisdiction

*District court's jurisdiction*. The district court had jurisdiction over Grant's habeas petition pursuant to 28 U.S.C. § 2255 because Grant was "in custody" at the time he filed his petition on June 21, 2016. 28 U.S.C. § 2255(a). Grant's petition, although filed more than one year after entry of judgment in his criminal case, is nonetheless timely because the relevant one-year limitation period begins to run from the "date on which the right asserted [in the petition] was initially recognized by the Supreme Court . . . ." 28 U.S.C. § 2255(f)(3). Grant's petition asserted his conviction was unconstitutional under *Johnson v. United States*, 576 U.S. 591 (2015), and was filed within one year following the Supreme Court's decision in that case.

*Appellate jurisdiction*. This Court has jurisdiction pursuant to 28 U.S.C. § 2253 because the Court issued Grant a certificate of appealability on June 13, 2017. (App. Dkt. 9.)

1

## Questions Presented

1. Was attempted Hobbs Act robbery the "crime of violence" that served as the predicate offense for Grant's conviction under 18 U.S.C. § 924(c)(1)(A)?

2. Is attempted Hobbs Act robbery a "crime of violence" as that term is defined in 18 U.S.C. § 924(c)(3)?

3. Is *United States v. Taylor*, 596 U.S. 845 (2022), retroactive on collateral review?

**Statement of the Case**

On October 13, 2013, Denzell Grant unsuccessfully attempted to rob Max's One Stop, a convenience store in Swansea, Illinois. (Stipulation of Facts ("Stip."), Crim. Dkt. 23, ¶¶ 1–2, Petitioner's Appendix ("App'x") at 35–36.) He was 19 years old at the time, a soldier in the United States Army, and had no criminal record. (Stip. ¶ 1; Change of Plea Hearing Transcript ("Plea Tr."), Crim. Dkt. 44, 07:02; Sealed Initial Presentence Investigation Report, Crim. Dkt. 27 at PageID 56.) Grant held the store clerk (identified only as R.B.) at gunpoint, demanding money from the cash register. (Stip. ¶ 1.) However, R.B. wrestled the gun away from Grant. (*Id.*) In doing so, the gun accidentally discharged, with the bullet injuring R.B.'s left hand and striking Grant's right arm. (*Id.*) Grant then tried to jump over the counter and escape. (*Id.* ¶ 2.) But a customer physically held Grant to prevent him from fleeing the scene. (*Id.*) R.B. also held Grant at gunpoint to prevent him from getting away until police arrived. (*Id.*)

## I.     Grant pleads guilty to attempted Hobbs Act robbery and use of a firearm in furtherance of a crime of violence.

On February 20, 2014, a grand jury in the U.S. District Court for the Southern District of Illinois charged Grant in a two-count indictment

3

with Hobbs Act robbery and possessing a firearm in furtherance of a crime of violence. (Indictment, Crim. Dkt. 1, *see* App'x at 23–24.) The first count of the indictment charged "Interference with Commerce by Robbery," alleging that Grant:

> did knowingly obstruct, delay, and affect, commerce . . . by robbery, as that term is defined in [18 U.S.C. § 1951(b)(1)], and did attempt to do so, and did knowingly commit and threaten physical violence to a person in furtherance of a plan and purpose to obstruct, delay, and affect commerce, by robbery, in that [Grant], while in Max's One Stop Shop . . . pointed a handgun at R.B., the clerk at the shop, demanded money from him, and by means of a firearm, threatened the clerk as he walked to the cash register to provide the defendant with United States currency in response to the defendant's demand; all in violation of [18 U.S.C. § 1951(a)].

(*Id.*) The second count charged "Possession of Firearm in Furtherance of Crime of Violence," alleging that Grant:

> did knowingly discharge a firearm in furtherance of a crime of violence for which he may be prosecuted in a court of the United States – that is, Interference with Commerce by Robbery, in violation of [18 U.S.C. § 1951(a)] as charged in Count 1 of this Indictment; all in violation of [18 U.S.C. § 924(c)(1)(A)(iii)].

(*Id.*, App'x at 24.)

Grant was taken into custody and made his initial appearance on February 27, 2014, during which he was represented by appointed counsel from the Federal Defender Program. Grant pleaded not guilty to both

4

counts of the indictment. (Minute Entry for Initial Appearance and Arraignment, Crim. Dkt. 10.) The parties thereafter negotiated and executed an agreement whereby Grant pleaded guilty to attempted Hobbs Act robbery, and use of a firearm in furtherance of a crime of violence. (Plea Agreement, Crim. Dkt. 22, App'x at 25–34.)

While the indictment generally charged Grant with Hobbs Act robbery, he pleaded guilty to attempted Hobbs Act robbery, but he did not plead guilty to completed Hobbs Act robbery. (Indictment, App'x at 23–24; Plea Agreement, App'x at 25–34.) In the first offense-specific paragraph, the Agreement states: "[Grant] will enter a plea of guilty to the Indictment, which charges, in Count 1, Attempted Interference with Commerce by Violence . . . and, in Count 2, Use of a Firearm in Furtherance of a Crime of Violence." (Plea Agreement § 2, App'x at 28.) As to the essential elements of the Hobbs Act offense to which Grant pleaded, the Agreement states that those elements are: "[D]efendant knowingly attempted to commit a robbery, as it is defined in Title 18, United States Code, Section 1951(b)(1)," and "[t]he attempted robbery obstructed, delayed, or affected commerce, as it is defined in Title 18, United States Code, Section 1951(b)(3)." (*Id.*) As to the § 924(c) offense, the agreement

5

states that the essential elements are: "The defendant committed the crime of Attempted Interference of Commerce by Violence, as charged in Count 1 of the Indictment," and "The defendant knowingly used a firearm during and in relation to such crime." (*Id.*, App'x at 29.)

In connection with the Plea Agreement, Grant also agreed to a Stipulation of Facts, in which he admitted the same factual details of his attempted robbery as previously discussed.[2] (*See* p. 1, *supra.*) In addition to

---

[2] In full:

Grant, wearing a mask and armed with a loaded gun, entered Max's One Stop and jumped over the counter which led to the area where the lone clerk, R.B., was sitting with the purpose to rob Max's One Stop of the United States Currency it had made from the sales of products that had moved in and were part of commerce. Grant put the gun to R.B.'s head and told R.B. to give Grant all of the money. Grant held the gun on R.B. as Grant followed R.B. to the cash register. As R.B. was giving Grant the cash from the cash register, R.B. grabbed the gun and the two began struggling over the gun. During the struggle, the firearm discharged, injuring R.B.'s left hand and striking Grant in the right arm. [ ] After being shot, Grant tried to escape by jumping over the counter into the customer area. At the same time, a customer who knew R.B. walked into the convenience store and heard R.B. call for help. The customer helped prevent Grant from escaping until the police arrived, sometimes by having to physically restrain Grant. R.B. also helped prevent Grant from escaping by pointing the gun Grant brought into the store with him at Grant until the police arrived.

(Stip. ¶¶ 1–2, App'x at 35–36.)

the narrative of the offense, Grant agreed in the Stipulation that he "knowingly attempted to commit a robbery, as defined in Title 18, United States Code, Section 1951(b)(1), at Max's One Stop," "[d]uring the course of [his] attempted robbery of Max's One Stop" he "knowingly possessed and brandished" a pistol, and that the "discharge of the [pistol] injured R.B.'s left hand and Grant's right arm." (Stip., ¶¶ 4–5, App'x at 36–37.)

In exchange, the government agreed to recommend a sentence of no more than five years' imprisonment for Grant's attempted Hobbs Act robbery charge. (Plea Agreement § 2, App'x at 30.) The parties also agreed that Grant was subject to a 10-year mandatory minimum sentence for his firearm charge, running consecutively with the sentence imposed on the attempted robbery charge. (*Id.*, App'x at 29.)

Grant's plea agreement contained a provision waiving his right to appeal or collaterally attack his sentence, subject to certain exceptions. One of the exceptions allows Grant to challenge the sentence based on "any subsequent change in the interpretation of the law by the United States Supreme Court or the United States Court of Appeals for the Seventh Circuit that is declared retroactive by those Courts and that renders the defendant actually innocent of the charges covered herein." (*Id.* § 3,

7

App'x at 32–33.)[3]

In a change-of-plea hearing before the magistrate judge, Grant formally pleaded guilty to attempted Hobbs Act robbery and use of a firearm in connection with that offense. The government's recitation of the elements of the offenses to which Grant pleaded guilty tracked the terms of the plea agreement. As to the Hobbs Act offense, the government's counsel stated that to convict Grant on the charge to which he pleaded guilty, "the government would have to show that the defendant knowingly attempted to commit a robbery as defined in Title 18 United States Code, Section 1951(b)(1); and second, the attempted robbery obstructed, delayed or [a]ffected commerce as defined in Title 18 United States Code, Section 915(b)(3) [sic]." (Plea Tr. 13:17–23, Crim. Dkt. 44.) As to the § 924(c) offense to which Grant pleaded guilty, the government stated that it would have to prove that "[t]he defendant committed the crime of attempted interference of commerce by violence, as charged in Count 1 of the indictment; and two, the defendant knowingly used a firearm during and in relation to such a crime." (*Id.* 14:02–09.)

---

[3] The waiver also does not apply to retroactive amendments to the Sentencing Guidelines. (Plea Agreement § 3, App'x at 33.)

The district court adopted the magistrate judge's recommendation that it accept Grant's guilty plea, and "adjudge[d] Defendant guilty of the offenses set forth in the plea agreement." (Crim. Dkt. 26, PageID 48.) On October 24, 2014, the district court sentenced Grant to 30 months of imprisonment for attempted Hobbs Act robbery and 150 months for use of a firearm in connection with a crime of violence, with the two terms totaling 15 years to be served consecutively. (Judgment, Crim. Dkt. 31.) He also ordered Grant to pay R.B. $10,500 in restitution. (*Id.*) Grant did not challenge his conviction on direct appeal.

## II.     Grant files his habeas petition within one year of *Johnson*.

On June 21, 2016, Grant filed the instant petition under 28 U.S.C. § 2255 to vacate his conviction and sentence on Count 2 of the Indictment. Grant's pro se petition argued his "conviction and 150 month sentence for having violated 18 U.S.C. § 924(c)(3)(A) must be vacated and dismissed in light of the Supreme Court[']s recent holding in *Johnson v. United States*, 135 S.Ct. 2551 (June 26, 2015) . . . [P]ost-*Johnson*, Hobbs Act conspiracy categorically fails to qualify as a 'crime of violence'." (Civ. Dkt. 1 at PageID 10–11.) The district court appointed the Federal Public Defender's Office for the Southern District of Illinois to represent Grant on

9

his *Johnson*-based petition. (Civ. Dkt. 2.) The Federal Public Defender's office filed a brief on Grant's behalf on August 29, 2016. (Civ. Dkt. 5.) The public defender contended Grant's petition was timely because it came within one year of the Supreme Court's holding in *Johnson* that the Armed Career Criminal Act ("ACCA")—which includes similar language to the offense for which Grant was charged—was unconstitutionally vague. (*Id.*) The public defender ultimately concluded, however, that Grant's petition failed because while *Johnson* rendered unconstitutional one definition of "crime of violence" in § 924(c), Grant's attempted Hobbs Act robbery conviction remained a "crime of violence" under a separate definition.[4]

The district court denied Grant's § 2255 petition, concluding Grant's conviction on Count 1 of the indictment for attempted Hobbs Act robbery remained a "crime of violence" for purposes of § 924(c) after *Johnson*. The court explained that § 924(c)(3)'s so-called "elements clause" or "force clause," was "untouched by *Johnson* and its progeny" and under

---

[4] The public defender's office's brief does not distinguish between attempted and completed Hobbs Act robbery or mention that Grant pleaded guilty to attempted rather than completed Hobbs Act robbery. Regardless, the distinction between attempted and completed Hobbs Act robbery was not salient in the Seventh Circuit until *Taylor*.

that clause, Hobbs Act robbery remained a crime of violence. (District Court Order at 9–10, Civ. Dkt. 10, App'x at 1, 9–10.) The district court acknowledged that Grant admitted to "attempting to commit a robbery," (*id.* at App'x at 18) but did not distinguish between completed and attempted Hobbs Act robbery while discussing Grant's conviction. (*See, e.g.*, *id.*, App'x at 11 ("[The offense] Grant was convicted of was Hobbs Act robbery.").)

The district court also concluded that Grant's plea agreement waived his right to collaterally attack his sentence, on grounds that were inter-related with its conclusion on the merits of the petition. The court acknowledged that Grant's plea agreement "explicitly left one door to collateral review open"—the exception for subsequent changes in law. (*Id.* , App'x at 7.) It nonetheless concluded that "[a]ny reliance on this provision would be misplaced, because *Johnson* did *not* render Grant actually innocent of the charges he pled guilty to – Hobbs Act robbery and discharge of a firearm in furtherance of a crime of violence. Nothing about the holding of *Johnson* altered the elements of or heightened the proof required for conviction under these statutes." (*Id.*, App'x at 8.)

11

The district court ruled in Grant's favor with respect to the timeliness of his petition and procedural default. (*See id.* at 4–5 ("Next, the Court addresses whether Grant's petition was timely filed. It was. . . . Grant filed his petition on June 21, 2016 -- within the one-year period set forth in § 2255(f)(3), based on the Supreme Court's June 26, 2015 decision in *Johnson*, which has been declared retroactively applicable on collateral review.").)[5] The district court did not issue Grant a certificate of appealability. (*Id.*, App'x at 21.)

## III. This Court grants a certificate of appealability and stays briefing.

Grant filed a notice of intent to appeal the district court's ruling on February 3, 2017. (App. Dkt. 1.) He then filed a pro se motion for a certificate of appealability from this Court. (App. Dkt. 5.) This Court issued Grant a certificate of appealability on June 13, 2017, finding:

---

[5] The district court's order does not explicitly mention procedural default. However, in its brief opposing Grant's petition, the government argued that "[a]ny argument that the Hobbs Act robbery is not a crime of violence under the force clause is foreclosed by the petitioner's failure to raise it on direct appeal, as well as his failure to provide any cause and prejudice for his failure to do so." (Civ. Dkt. 8 at PageID 109.) The district court appeared to reject this argument as it concluded, simply, that Grant's petition was timely filed and proceeded to address the appeal-waiver and merits arguments discussed below. (*See* District Court Order, App'x at 4.)

Grant ha[d] made a substantial showing that reasonable jurists could debate whether his conviction under 18 U.S.C. § 924(c) violates *Johnson v. United States*, 576 U.S. 591 (2015): specifically whether Grant was convicted of an uncompleted attempted Hobbs Act robbery and whether an uncompleted attempted Hobbs Act robbery is a crime of violence under § 924(c)(3)'s elements clause.

(App. Dkt. 9.)

The Court suspended briefing pending decision in three cases (Seventh Circuit Case Nos. 17-1034, 17-1035, and 17-1426), which were eventually consolidated under the caption *Velez v. United States*, 793 F. App'x 453 (7th Cir. 2020), all of which turned on whether attempted Hobbs Act robbery is a crime of violence under § 924(c). (*See* App. Dkt. 9.) In those cases, this Court concluded, based on its decision *United States v. Ingram*, 947 F.3d 1021 (7th Cir. 2020), that "attempted Hobbs Act robbery is a predicate 'crime of violence' under § 924(c)." *Velez*, 793 F. App'x at 454.

Shortly after the Court decided those cases, the same issue came before the Supreme Court. This Court's November 22, 2021 order noted it had "granted a certificate of appealability to resolve whether attempted Hobbs Act robbery is a crime of violence under the elements clause of 18 U.S.C. § 924(c)" and that this "same question [was] now before the Supreme Court of the United States in *United States v. Taylor*, No. 20-

13

1459." (App. Dkt. 18.) The Court ordered the parties to submit position statements following the Supreme Court's decision in *Taylor*, which were also to address "the effect (if any) of [Grant's] plea agreement." (*Id.*)

The Supreme Court decided *Taylor* on June 21, 2022. As explained below, *Taylor* held that attempted Hobbs Act robbery is not a crime of violence for purposes of § 924(c), abrogating this Court's prior decisions in *Velez*, *Ingram*, and other cases reaching a contrary conclusion. *See United States v. Taylor*, 596 U.S. 845 (2022).

The same day that the Supreme Court rendered its decision in *Taylor*, June 21, 2022, Grant wrote and signed a seven-page handwritten position statement. (App. Dkt. 24.)[6] He explained that following *Taylor*, "Attempted Hobbs Act Robbery does not satisfy the elements clause. No element of Attempted Hobbs Act Robbery requires proof that the defendant used, attempted to use, or threatened to use force." (*Id.*) Responding to this Court's request for his position on the appeal and collateral-review waiver, Grant explained that the waiver did not apply because of its exception for newly-established law, and because the Seventh Circuit has

---

[6] The statement was docketed with this Court about a week later on June 29, 2022. (App. Dkt. 24.)

14

recognized a due-process exception to collateral review waivers. (*Id.*)

The government filed its position statement a month later, arguing the appeal and collateral attack waiver in Grant's plea agreement precluded relief, and that Grant pled guilty to completed Hobbs Act robbery. (App. Dkt. 26.) On February 15, 2023, and April 26, 2024, this Court issued further Orders acknowledging the parties' submissions and stating it would rule on Grant's request for appointment of counsel when its docket permitted. (App. Dkt. 30, 35.) Counsel was appointed by this Court on May 6, 2026, to represent Grant in this appeal. (App. Dkt. 39.)

## Standard of Review

This Court reviews de novo the district court's denial of Grant's § 2255 motion to vacate his sentence. *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000). Specifically, review is de novo on questions of law and for clear error on factual issues. *Id.*

## Summary of the Argument

This Court previously expressed that Grant "made a substantial showing that reasonable jurists could debate . . . whether Grant was convicted of an uncompleted Hobbs Act robbery and whether an uncompleted attempted Hobbs Act robbery is a crime of violence under § 924(c)(3)'s

15

elements clause." (App. Dkt. 9.) The Supreme Court in *Taylor* answered the second part of this question in Grant's favor, holding uncompleted Hobbs Act robbery is *not* a crime of violence under § 924(c)(3). The Government cannot dispute this point and, indeed, appears to tacitly concede as much.

With that question resolved in Grant's favor, what is left are issues that arise when the Supreme Court (or this Court)'s interpretation of a federal criminal statute substantively changes. These include retroactivity, the effect of plea agreements on challenges based on changes in law, and the enforceability of collateral-review waivers.

These questions, too, should all be resolved in Grant's favor. *Taylor* is retroactive because it announced a new substantive rule of criminal law. Grant's plea agreement does not change the analysis because the predicate offense to which he pleaded guilty is no longer sufficient to support a § 924(c) conviction. And Grant did not waive his right to make this challenge because his collateral-review waiver includes an express exception for changes in the Supreme Court's and the Seventh Circuit's interpretation of relevant law. This exception is of particular note, as not all

16

defendants successfully bargain for such an exception in their plea agreements. If the exception does not apply, the Court should nonetheless refuse to enforce the collateral-review waiver because that would work a miscarriage of justice.

For these reasons, discussed more fully below, Grant respectfully requests that the Court give him the benefit of the plea agreement he bargained for—one that expressly allows him to collaterally challenge his sentence following changes in the Supreme Court's interpretation of his statute of conviction. Vacatur of his § 924(c) conviction and remand for resentencing are therefore the appropriate remedies.

## Argument

### I.    Attempted Hobbs Act robbery is no longer a crime of violence under § 924(c) following *Taylor*.

In *Taylor*, the Supreme Court held that attempted Hobbs Act robbery is not a crime of violence for purposes of § 924(c). 596 U.S. at 851. This holding directly abrogated the portion of the lower court's order that reached a contrary conclusion. (*See* Order, App'x at 8–19.) Under *Taylor*, Grant's attempted Hobbs Act robbery conviction is not a valid predicate offense for his § 924(c) conviction. And Grant's conviction cannot stand without a valid predicate offense. As discussed below, Grant's guilty plea

17

on the § 924(c) offense and related sentence must thus be vacated.

**A.    The Supreme Court in *Davis* held that § 924(c)(3)(B)'s definition of "crime of violence" is unconstitutionally vague.**

18 U.S.C. § 924 sets out various federal firearms crimes. Subsection (c) provides, in relevant part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime— . . . (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A). Subsection (c) defines "crime of violence" as an offense that is a felony and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3).

The first definition of crime of violence is sometimes called the "elements clause." The second is generally referred to as the "residual clause." Thus, as § 924(c) is written, a federal felony qualifies as a "crime

of violence" if it meets the definition set out in either the elements clause or the residual clause.

However, in *United States v. Davis*, 588 U.S. 445, 139 S. Ct. 2319 (2019), the Supreme Court found the residual clause, 18 U.S.C. § 924(c)(3)(B), unconstitutionally vague. *Id.* at 470. Applying *Johnson* (the case that was the initial basis for Grant's § 2255 petition), where the Court held that a similar residual clause in the ACCA is unconstitutionally vague, the Court in *Davis* reached the same conclusion regarding 18 U.S.C. § 924(c)(3)(B). *Id.* at 451–52, 470. Following *Davis*, the government can no longer rely on the residual clause when charging defendants under § 924(c).

That leaves the government to rely solely on the elements clause, which states that an offense is a "crime of violence" if it has "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). To determine whether an offense is a crime of violence under this definition, courts must use what is called the "categorical approach." *Taylor*, 596 U.S. at 850. In the context of § 924(c)(3)(A), the Court must ask whether an offense is categorically a crime of violence, i.e. "whether the federal felony

19

at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Id.*

The categorical approach is required "because the clause poses the question whether the federal felony at issue 'has *as an element* the use, attempted use, or threatened use of physical force.'" *Id.* (quoting § 924(c)(3)(A)). This means a court "look[s] only to the formal definition of the [predicate] offense, cutting real-world facts out of the equation." *United States v. Schatz*, 178 F.4th 364, 368 (7th Cir. 2026). "[A]nswering that question does not require—in fact, it precludes—an inquiry into how any particular defendant may commit the crime." *Taylor*, 596 U.S. at 850.

**B.    The Supreme Court in *Taylor* held that uncompleted Hobbs Act robbery is not categorically a crime of violence.**

In 2022, the Supreme Court held that the predicate offense to which Grant pleaded guilty—attempted Hobbs Act robbery—is not a crime of violence under § 924(c)(3), because the elements of attempted Hobbs Act robbery do not "require the government to prove the use, attempted use, or threatened use of force." *Taylor*, 596 U.S. at 860. It explained that to convict for attempted Hobbs Act robbery, the government must prove two

20

things: "(1) The defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' towards that end." *Id.* at 851 (citing *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007)). And "whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Id.*

The Supreme Court in *Taylor* thus announced that an individual convicted of attempted Hobbs Act robbery "may not be lawfully convicted and sentenced under § 924(c)." 596 U.S. at 860. And under *Taylor*, Grant never violated 18 U.S.C. § 924(c) because he did not commit a "crime of violence" as that term is used in the statute. He committed attempted Hobbs Act robbery, which is categorically *not* a crime of violence. The Court should thus find in Grant's favor on this precise issue for which he was granted a certificate of appealability. (App. Dkt. 9.)

The government's position statement here equivocates on the issue of whether Grant pleaded guilty to attempted or completed Hobbs Act robbery, but the record is clear that it was the former. (*See* App. Dkt. 26

21

at 7.) Grant's plea agreement refers throughout to "Attempted Interference with Commerce by Violence." (Plea Agreement § 2, App'x at 28–29.) And it identifies the following as the elements of the Hobbs Act offense to which Grant pleaded guilty: 1) that Grant "knowingly *attempted* to commit a robbery" and, 2) that the "*attempted* robbery obstructed, delayed, or affected commerce." (*Id.*, App'x at 28 (emphasis added).) Most important, as to the elements of the § 924(c) offense to which Grant pleaded guilty, it states that those are: first, that he "committed the crime of Attempted Interference of Commerce by Violence, as charged in Count 1 of the Indictment," and second, that he "knowingly used a firearm during and in relation to such crime." (*Id.*, App'x at 29.)

Grant's plea colloquy also reflected the parties' understanding that Grant pleaded guilty to and was to be adjudged guilty of *attempted* Hobbs Act robbery, *not* completed Hobbs Act robbery. When asked to identify the elements of the robbery offense to which Grant pleaded guilty, the government described the first offense as "*attempted* interference with commerce by violence," and said it would have to prove that Grant "knowingly *attempted* to commit a robbery" and that the "*attempted* robbery obstructed, delayed, or [a]ffected commerce." (Plea Tr. 13:17–23, Crim.

22

Dkt. 44 (emphasis added).) As to the firearm offense, the government stated that it would have to prove that Grant "committed the crime of *attempted* interference of commerce by violence" and "knowingly used a firearm during and in relation to such a crime." (*Id.* 14:02–09 (emphasis added).) The record is thus clear that Grant pled guilty to attempted Hobbs Act robbery that, as discussed, is not a crime of violence under § 924(c).

At most, the government may maintain that there was some ambiguity in the comments made by the magistrate judge during the plea colloquy. In asking how Grant pleaded, for example, the magistrate judge asked: "How do you plead to Count 1 that charges you with interference of commerce by robbery . . . ?" (*Id.* 23:07–11.) That particular question thus omitted any reference to attempted robbery. But this omission is immaterial for at least two reasons.

First, "if the district court's summary was inconsistent with the plea agreement, the plea agreement controls." *United States v. Vessell*, No. 25-5008, 2025 WL 1577818, *3 (10th Cir. Jun. 24, 2025). The plea agreement makes clear that Grant pled guilty to attempted Hobbs Act robbery, not completed Hobbs Act robbery. The government drafted and

23

negotiated this agreement alongside Grant. The government cannot now claim that Grant pled guilty to completed Hobbs Act robbery based on the magistrate judge's comments during the plea colloquy, especially when those comments are inconsistent with the written plea agreement's clear and unambiguous language.

Second, the magistrate judge's failure to mention attempted robbery does not necessarily support the government because the magistrate judge did not distinguish between attempted and completed robbery. In other words, this is similar to saying, "how do you plead to the Hobbs Act offense?" which could describe attempted or completed Hobbs Act robbery. A simple slip of the tongue cannot transform one crime into a completely different crime entailing different elements and punishments.

Finally, the government argues in its position statement that the district court appears to have "assumed that Grant pleaded guilty to Hobbs Act robbery, not to attempt." (Gov't's Position Statement, App. Dkt. 26.) That is demonstrably wrong but ultimately irrelevant. The district court's order in fact acknowledged that Grant admitted to "*attempting* to commit a robbery." (District Court Order, App'x at 18 (emphasis added).)

But even assuming the government is correct in this regard, ruling against Grant based on an incorrect assumption that he pled guilty to a completed robbery is error warranting this Court's intervention.

For the foregoing reasons, the Court should also answer this portion of Grant's certificate of appealability in his favor because he pled guilty to attempted—not completed—Hobbs Act robbery.

## II.    *Taylor* **applies retroactively on collateral review.**

As of the date of the *Taylor* decision (June 21, 2022), attempted Hobbs Act robbery is no longer a crime of violence for purposes of 18 U.S.C. § 924(c). Grant was sentenced well before this decision, at a time when circuit precedent held the opposite. *See Velez*, 793 F. App'x 453 (7th Cir. 2020); *United States v. Ingram*, 947 F.3d 1021 (7th Cir. 2020). He is nonetheless entitled to relief because *Taylor* announced a new substantive rule of federal criminal law and is thus retroactive on collateral review.

When a decision of the Supreme Court "results in a 'new rule,' that rule applies to all criminal cases still pending on direct review." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) (citation omitted). But for convic-

25

tions that are already final, only "*substantive* rules generally apply retroactively." *Id.* The category of substantive rules "includes decisions that narrow the scope of a criminal statute by interpreting its terms . . . as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Id.* at 351–52. Substantive rules apply retroactively "because they 'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him." *Id.* at 352 (cleaned up).

Procedural rules, on the other hand, generally do not apply retroactively because they "do not produce a class of persons convicted of conduct the law does not make criminal." *Id.* Rules that have been held to be procedural and thus not retroactive include: the rule announced in *Miranda v. Arizona,* 384 U.S. 436 (1966) that police must inform individuals of certain individual rights before questioning; the rule announced in *Mapp v. Ohio,* 367 U.S. 643 (1961) that evidence obtained in violation of the Fourth Amendment must generally be excluded from a state prosecution of a defendant, and more recently, the rule announced in *Ramos v. Louisiana,* 590 U.S. 83 (2020) that under the Sixth Amendment a state jury

must be unanimous to convict a defendant of a serious offense. *See Edwards v. Vannoy*, 593 U.S. 255, 259, 268 (2021) (holding that *Ramos* does not apply retroactively and collecting cases).

The rule announced in *Taylor* meets the test set out in *Schriro*.[7] *Taylor* set out a new substantive rule of federal criminal law by "narrow[ing] the scope" of § 924(c) to exclude attempted Hobbs Act robbery from that statute's definition of "crime of violence." *See Schriro*, 542 U.S. at 351. The rule announced in *Taylor* "carr[ies] a significant risk that a defendant . . . faces a punishment that the law cannot impose upon him," *id.* at 352 (citation omitted) because after *Taylor*, a defendant convicted of attempted Hobbs Act robbery cannot also be subject to the lengthy mandatory minimum sentence attendant to a § 924(c) conviction, so long as attempted Hobbs Act robbery is the predicate offense. *See Taylor*, 596 U.S. at 860 ("Mr. Taylor may face up to 20 years in prison for violating the Hobbs Act. But he may not be lawfully convicted and sentenced under § 924(c) to still another decade in federal prison."). That describes this case well. Grant is currently serving a prison sentence for conduct the

---

[7] It appears that neither the Supreme Court nor the Seventh Circuit has yet determined whether *Taylor* should apply retroactively.

Supreme Court has decided does not categorically fall within § 924(c)'s scope. That type of unjust result is precisely why substantive changes in the law must retroactively benefit criminal defendants like Grant here.

Reinforcing this point, several district courts in this circuit have concluded that *Taylor* applies retroactively. *E.g.*, *United States v. Hester*, No. 23 C 14306, 2024 U.S. Dist. LEXIS 103615, *8 (N.D. Ill. June 11, 2024) ("The Supreme Court's analysis demonstrates that the rule in *Taylor* is substantive and, accordingly, applies retroactively to cases on collateral review."); *Wheeler v. United States*, No. 22-cv-764, 2023 U.S. Dist. LEXIS 131783 (E.D. Wis. July 31, 2023); *Johnson v. United States*, Nos. 22-cv-1526, 18-cr-182-2 (E.D. Wis. Mar. 30, 2023). As have other courts around the country. *See, e.g.*, *Aponte v. United States*, No. 19 Civ. 3511, 2023 U.S. Dist. LEXIS 90284 (S.D.N.Y. May 23, 2023); *Pedro v. United States*, No. 22-cv-9387, 2022 U.S. Dist. LEXIS 216175, *3–*4 (S.D.N.Y. Nov. 30, 2022) (collecting cases). Acknowledging the Supreme Court's decision in *Taylor* applies retroactively should not be a controversial proposition.

Additionally, Supreme Court decisions similar to *Taylor* have been applied retroactively by the Supreme Court and this Court. *Bousley v.*

*United States*, 523 U.S. 614, 621 (1998) (acknowledging that *Bailey v. United States*, 516 U.S. 137 (1995), which interpreted § 924(c), applies retroactively). *Bufkin v. United States*, 800 F. App'x 436, 438–39 (7th Cir. 2020) (holding that the rule announced in *Davis*, 588 U.S. 445, that the residual clause of 18 U.S.C. § 924(c) is unconstitutionally vague, applies retroactively). This Court should likewise hold that the rule announced in *Taylor* applies retroactively on collateral review because it "narrow[ed] the scope of a criminal statute by interpreting its terms." *Schriro*, 542 U.S. at 351.

### III.  Grant is entitled to relief even though he pleaded guilty to the § 924(c) charge.

Grant's guilty plea does not preclude him from challenging his conviction and sentence under *Taylor*.[8] While a defendant gives up certain rights by pleading guilty, including the right to argue that he did not commit the conduct to which he admitted in that plea, he does not necessarily give up his right to challenge his conviction entirely. In *Class v. United States*, 583 U.S. 174 (2018), the Supreme Court explained that

---

[8] This was not a basis the district court relied on when denying relief, but the government raised it in its position statement at pages 6–7. (App. Dkt. 26.)

the Court's "understanding of the nature of guilty pleas" stretching back nearly 150 years permits a criminal defendant to challenge his conviction on the grounds that "the facts alleged and admitted do not constitute a crime." 583 U.S. at 180 (quoting *Commonwealth v. Hinds*, 101 Mass. 209, 210 (1869)). It cited approvingly earlier cases reflecting that understanding and permitting challenges to the statute under which the defendant was convicted, including *Haynes v. United States*, 390 U.S. 85 (1968), and *United States v. Ury*, 106 F.2d 28 (2d Cir. 1939). And it permitted the defendant to challenge his conviction under a statute barring the carrying of firearms on the grounds of the U.S. Capitol because the statute was deemed unconstitutional. *Id.* at 185.

Under *Class*, Grant's plea agreement does not prevent him from challenging his conviction because his claims here "challenge the Government's power to criminalize [his] (admitted) conduct," thereby "call[ing] into question the Government's power to 'constitutionally prosecute' him." *See id.* at 181–82 (quoting *United States v. Broce*, 488 U.S. 563, 575 (1989)). While it is true that *Class* spoke directly to constitutional claims, and Grant's petition raises both a constitutional claim and a statutory claim—challenging the residual clause on constitutional grounds and the

30

elements clause on statutory grounds—courts have applied *Class* to permit dual constitutional-statutory challenges to § 924(c) convictions. In *United States v. St. Hubert*, for example, the Eleventh Circuit held that such a challenge is permissible, noting that *Class* "suggested, albeit in dicta, that a claim that the facts alleged in the indictment and admitted by the defendant do not constitute a crime at all cannot be waived by a defendant's guilty plea because that kind of claim challenges the district court's power to act." 909 F.3d 335, 343–44 (11th Cir. 2018).

While the Seventh Circuit has rejected challenges to § 924(c) convictions based on *Johnson v. United States*, 576 U.S. 591 (2015), and *United States v. Davis*, 588 U.S. 445 (2019), in light of a defendant's guilty plea, these decisions came in cases where the petitioner's § 924(c) conviction could be based on that statute's "elements clause," § 924(c)(3)(A). *See Gregorczyk v. United States*, 997 F.3d 743, 747 (7th Cir. 2021) ("Although *Davis* invalidated the residual clause's definition of a crime of violence, it left the elements clause intact. Gregorczyk's conviction . . . remains constitutionally permissible *as long as murder-for-hire falls within the definition of a crime of violence under the elements clause*." (emphasis added)); *Davila v. United States*, 843 F.3d 729 (7th

31

Cir. 2016) (rejecting challenge to § 924(c) conviction in part because of guilty plea and in part because it was predicated on a drug trafficking crime). *Gregorczyk* and *Davila* both involved new challenges to § 924(c), asking this Court to say for the first time that a particular crime is not a "crime of violence." *See Gregorczyk*, 997 F.3d at 746 (murder for hire); *Davila*, 843 F.3d at 731 (pre-*Taylor* challenge to conspiracy to commit Hobbs Act robbery as predicate). With *Taylor* having conclusively determined that Grant's offense is not a "crime of violence" under the elements clause, this case comes to the Court in a different posture from *Gregorczyk* and *Davila*.[9]

Following *Taylor*, several other circuits have vacated convictions secured by guilty pleas similar to Grant's guilty plea for attempted Hobbs Act robbery in this case. *United States v. Acevedo*, 178 F.4th 789, 792 (1st Cir. 2026) (guilty plea; noting lower court's earlier vacatur following *Taylor*); *United States v. Jones*, No. 24-3185, 2026 WL 1347507, *1 (3d Cir. May 14, 2026) (guilty plea; noting earlier vacatur); *United States v.*

---

[9] Additionally, in *Cobbs v. United States*, 141 F.4th 872 (7th Cir. 2025), discussed *infra*, this Court considered a post-*Taylor* challenge to a § 924(c) conviction and did not indicate that the defendant's guilty plea posed a barrier to relief.

*Roper*, No. 22-5415, 2023 WL 3376689 (6th Cir. 2023) (guilty plea; granting government's motion to remand for resentencing post-*Taylor*); *Hughes v. United States*, No. 22-5545, 2023 WL 12299338 (6th Cir. 2023) (same). This Court should do the same because *Class* and the 150-year-old line of cases cited therein permit a post-guilty plea challenge to a conviction where, as a result of subsequent developments, the "facts alleged and admitted do not constitute a crime." *Class*, 583 U.S. at 180 (citation omitted).

Finally, Grant's plea agreement expressly permits him to benefit from subsequent changes in law made by the Supreme Court and this Court. (Plea Agreement § 3, App'x at 33.) The plea agreements at issue in *Gregorczyk*, *Davila*, and *Wheeler* may not have included such an exception, and it would make little sense to hold that a guilty plea alone precludes a challenge based on subsequent developments in law, where the plea agreement expressly states that a defendant can collaterally attack his conviction based on subsequent developments. If Grant's guilty plea precludes all challenges based on subsequent legal developments, the exception would be at best surplusage, and at worst misleading to a criminal defendant.

33

## IV. Grant's limited waiver of appeal and collateral review does not preclude relief here.

In addition to erroneously concluding that attempted Hobbs Act robbery is a crime of violence, the district court also held that Grant waived his right to file a § 2255 petition. (Order, App'x at 6–8.) This, too, was error.[10] The district court correctly acknowledged that Grant's plea agreement "explicitly left one door to collateral review open," (Order at 7, App'x at 7), but erroneously concluded that door remained shut in Grant's case.[11] As previously discussed, the provision in Grant's plea agreement supposedly waiving his appellate and collateral review rights does not apply to "any subsequent change in the interpretation of the law by the United States Supreme Court or the United States Court of Appeals that is declared retroactive by those Courts and that renders the defendant actually innocent of the charges covered herein." (Plea Agreement § 3,

---

[10] This is the government's leading argument in its position statement. (App. Dkt. 26 at 5.)

[11] The district court's analysis on this point was interrelated with its analysis of the merits. (Order, App'x at 6–8.) Whether or not its conclusion was correct at the time it rendered its decision, it is incorrect now following *Taylor*.

App'x at 33.) In light of *Taylor*, this exception applies here for three reasons.

First, standard principles of contract interpretation support this conclusion. The Court must "give unambiguous terms in the plea agreement their plain meaning," *United States v. Malone*, 815 F.3d 367, 370 (7th Cir. 2016), and by the exception's unambiguous terms it applies. Second, to the extent the agreement is ambiguous, it should be interpreted to permit this petition. "[W]hen the language in a plea agreement is ambiguous, [the Court] look[s] to the parties' reasonable expectations and construe[s] ambiguities against the government as the drafter." *Id.* (citation omitted). The parties would reasonably expect Grant to be able to benefit from *Taylor*, and any ambiguities should be construed against the government. Third, if the Court concludes the waiver's exceptions do not apply on their face, the Court should nonetheless refuse to enforce the waiver because to do so would work a miscarriage of justice. *See United States v. Litos*, 847 F.3d 906, 910–11 (7th Cir. 2017).

### A.    Grant is "actually innocent" of the § 924(c) offense to which he pleaded guilty, as that term is used in his plea agreement.

First, Grant is "actually innocent" of the § 924(c) offense under the

unambiguous terms of the plea agreement. As discussed above, attempted Hobbs Act robbery is not a crime of violence for purposes of § 924(c) pursuant to *Taylor*. The essential elements of Grant's § 924(c) offense were, first, that he "committed the crime of Attempted Interference of Commerce by Violence," and second, that he "knowingly used a firearm during and in relation to such crime." (Plea Agreement § 2, App'x at 29.) Those elements no longer add up to a § 924(c) offense under *Taylor*. In other words, Grant pleaded guilty to conduct that no longer qualifies as a § 924(c) offense. He is innocent of the § 924(c) charge to which he pleaded guilty and may thus challenge his conviction on collateral review.

While *Cobbs v. United States*, 141 F.4th 872 (7th Cir. 2025), interpreted the phrase "actual innocence" to require a showing of factual innocence in a similar post-*Taylor* challenge to a § 924(c) conviction, Grant need not make the factual showing the Court asked of the petitioner in *Cobbs*.[12] As discussed below, *Cobbs* used the term "actual innocence" to refer to factual innocence. The best reading of Grant's plea agreement is

---

[12] The government notified the Court of *Cobbs* in a Rule 28(j) letter. (App. Dkt. 36.)

that it applies to legal innocence—changes in the law that put his conduct outside the ambit of the criminal statute.

*Cobbs*, like this case, involved a collateral challenge to a conviction for attempted Hobbs Act robbery and use of a firearm in furtherance of a crime of violence, with attempted Hobbs Act robbery as the predicate offense. This Court considered whether the petitioner could establish that he was "actually innocent" of his § 924(c) charge, which would excuse his procedural default—specifically, his failure to raise the issues in that petition in a direct appeal. 141 F.4th at 877. The court noted that in this context, Cobbs' claim of actual innocence was serving "double duty"—it was "both his procedural default lifeboat *and* the source of his relief on the merits." 141 F.4th at 878. It expressed skepticism that actual innocence "can serve such double duty." *Id.*

Grant is not using actual innocence as a "procedural default lifeboat." *Id.* First, as discussed *infra*, there is no procedural default here. The district court correctly held that Grant's petition was timely because it was filed within one year of *Johnson,* as discussed *supra*, implicitly rejecting the procedural default argument the government made below. This Court should not disturb that conclusion.

Second, actual innocence, as the term is used in Grant's plea agreement, triggers application of the exception for new law in his appeal waiver. There is a difference—actual innocence as a "procedural default lifeboat" requires factual innocence, while actual innocence as that term is used in Grant's plea agreement must include legal innocence. This follows from the different contexts in which the term is used in Grant's plea agreement and in *Cobbs*. As to "actual innocence" in Grant's plea agreement, the purpose of that provision is to allow Grant a path to vacate his sentence if the Supreme Court or the Seventh Circuit interprets the law such that his conduct is no longer barred by the statute to which he pleaded guilty. Rather than performing "double duty," *Cobbs*, 141 F.4th at 878, the carve out in Grant's plea agreement exists precisely to permit his claim of actual innocence.

Actual innocence as it is discussed in *Cobbs*—a "procedural default lifeboat" for habeas claims—is something different. *Id.* at 878. The paradigmatic example of "actual innocence" as a "procedural default lifeboat" is the discovery of "new evidence, like DNA evidence" that casts doubt on the petitioner's conviction. *Lund v. United States*, 913 F.3d 665, 667 (7th Cir. 2019). In other words, innocence as an excuse for procedural default

38

means factual innocence—the petitioner did not commit the physical acts for which he was charged and convicted. It is only a "procedural default lifeboat" because innocence is not a freestanding ground for habeas relief—a petitioner who makes an actual innocence showing, like DNA evidence, generally must find some other basis for relief from his conviction.

It is apparent that "actually innocent" as the term is used in Grant's plea agreement is not restricted to only DNA evidence or something of that sort, because the agreement states expressly that the exception applies where it is a "subsequent change in the interpretation of the law . . . that renders the defendant actually innocent of the charges covered herein." (Plea Agreement § 3, App'x at 33.) Grant's plea agreement refers to legal innocence, while when *Cobbs* discusses "actual innocence" as a "procedural default lifeboat," it refers to factual innocence.

Reading the term this way, the exception to Grant's appeal and collateral review waiver applies. After *Taylor*, he is innocent of his § 924(c) conviction because he pleaded guilty to attempted Hobbs Act robbery, and attempted Hobbs Act robbery is not a "crime of violence," as that term is used in the statute. A "subsequent change in the interpretation of the law by the United States Supreme Court . . . [has] render[ed]

39

[Grant] actually innocent of the [§ 924(c)] charge[ ].” (Agreement § 3, App'x at 33.) Thus, he is permitted to collaterally attack his sentence.

### B. Alternatively, the language of the plea agreement is ambiguous and should be interpreted to permit collateral review.

As discussed above, the relevant provision in Grant's plea agreement is clear and unambiguous, permitting him to challenge his § 924(c) sentence on collateral review. To the extent the Court finds the collateral-review waiver and its exceptions ambiguous, however, the Court should still rule in Grant's favor. In that case the Court must "look to the parties' reasonable expectations and construe ambiguities against the government as the drafter." *United States v. Malone*, 815 F.3d 367, 370 (7th Cir. 2016). The parties would reasonably expect the agreement to permit review after *Taylor*, and ambiguities must be construed against the government.

A reasonable criminal defendant like Grant reading the waiver provision could reasonably interpret it to permit a challenge to his sentence in the event the Supreme Court or this Court interprets the statute to which he pleaded guilty in such a way that it no longer criminalizes the conduct to which he pled. In other words, a reasonable defendant would

40

expect that should the Supreme Court or this Court rule for a defendant identically situated to himself, he would be able to benefit from that ruling.

There is no indication that "actually innocent" is a term of art that should be read any way other than according to its ordinary meaning. A defendant is "innocent" when he is "free from legal guilt or fault." "Innocent," *Merriam-Webster Online,* merriam-webster.com/dictionary/innocent (last visited Aug. 4, 2026). This definition encompasses a defendant—like Grant with respect to his § 924(c) offense—whose conduct no longer meets the legal definition of a crime.

Moreover, the relevant provision in Grant's agreement appears next to an exception for retroactive amendments to the U.S. Sentencing Guidelines. (Plea Agreement § 3, App'x at 33.) This indicates that the paragraph applies even to technical changes to the federal criminal scheme, and reasonably communicates to a defendant that the agreement leaves open the possibility of resentencing based on subsequent developments in the law.

In any event, the Court must "construe ambiguities against the government as the drafter," particularly in the plea-bargaining context

41

where the government has a distinct advantage based on its asymmetrical power dynamic and experience when negotiating plea agreements. *Malone*, 815 F.3d at 370 (citation omitted); *see Hunter v. United States*, 146 S. Ct. 1702, 1719 (2026) (Gorsuch, J., concurring). So, to the extent the Court concludes the collateral review waiver and its exceptions are ambiguous, it must construe the ambiguity against the government and hold that the exception for new law applies here.

### C.    If the waiver's exception for subsequent developments in governing law does not apply, this Court should nonetheless refuse to enforce it because to do so would result in a miscarriage of justice.

Should the Court conclude that the express exception to the appeal waiver in Grant's plea agreement does not apply, it should nonetheless refuse to enforce the waiver because doing so would "result in a miscarriage of justice." *Hunter*, 146 S. Ct. at 1708.

In *Hunter*, the Supreme Court resolved a circuit split regarding when to enforce appeal waivers in plea agreements. It held that "an agreement not to appeal a sentence is unenforceable when it would result in a miscarriage of justice—meaning, when it would leave in place the kind of egregious error that would bring the judicial system into disrepute." *Id.* Prior to *Hunter*, this Court, along with several other circuits,

42

had generally taken a stricter view of the enforceability of appeal waivers. *Id.* at 1710 n.2; *see United States v. Nulf*, 978 F.3d 504, 507 (7th Cir. 2020). But not always. In *United States v. Litos*, this Court "decided to ignore [an] appellate waiver" because the order of restitution challenged on appeal was "contrary to the applicable statute and therefore illegal." 847 F.3d 906, 911 (7th Cir. 2017). While the Court did not adopt the "miscarriage of justice" exception, it cited approvingly decisions of other appellate courts adopting that exception. *Id.* at 910.

*Hunter*, by its terms, applies only to appeal waivers, not collateral review waivers, but its logic extends to both. Both waivers do not actually prevent a litigant from filing an appeal or collateral challenge. For both, then, "the real-world effect of a waiver provision turns, and turns only, on whether the . . . court decides to enforce it." *Hunter*, 146 S. Ct. at 1712. Thus, for collateral-review waivers just as much as for appeal waivers, "courts are in the middle of, and partly responsible for [the] waivers and their results." *Id.* This Court should apply the "miscarriage of justice" exception to both appeal and collateral review waivers following *Hunter*. *See Jones v. United States*, 609 U.S. __, __, 146 S. Ct. 2547 (Mem.), slip op. at 2 (2026) (statement of Sotomayor, J., respecting denial of certiorari)

43

("In the future, when defendants challenge the constitutionality of their convictions, I encourage the Fifth Circuit and other courts to consider carefully whether to enforce a collateral-review or appeal waiver in light of the miscarriage-of-justice principles laid out in *Hunter*."). To enforce Grant's waiver here would result in a miscarriage of justice.

As noted above, the Seventh Circuit had not adopted the miscarriage-of-justice exception prior to *Hunter*. However, in *Litos*, this Court acknowledged that "there are exceptional situations in which waiver does not foreclose appellate review," and declined to enforce an appeal waiver because the order of restitution challenged on appeal was "contrary to the applicable statute and therefore illegal." 847 F.3d at 910–11. (The Court had concluded that the bank to whom the defendant was ordered to pay restitution was not a proper recipient under the Mandatory Victim Restitution Act of 1996, 18 U.S.C. § 3663A. *Id.* at 909.) Even applying Seventh Circuit law pre-*Hunter*, Grant's appeal waiver should not be enforced because his conviction and sentence under § 924(c) was "contrary to the applicable statute and therefore illegal." *Id.* at 911. Under *Litos*, the collateral-review waiver should not be enforced.

Post-*Hunter*, precedent from circuits that have long applied a

broader miscarriage-of-justice exception to appeal waivers is valuable in determining how to apply that decision. Precedent from the Fourth Circuit indicates that where a subsequent change in law renders a defendant innocent of the offense to which he pleaded guilty, a collateral-attack waiver should not be enforced because to do so would work a miscarriage of justice.

In *United States v. Adams*, 814 F.3d 178 (4th Cir. 2016), the Fourth Circuit considered a § 2255 petition challenging the petitioner's felon-in-possession conviction despite a collateral-review waiver. Adams, who was sentenced in 2009, argued that none of his prior convictions were felonies following the Fourth Circuit's decision in *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), which changed whether certain North Carolina offenses qualified as felonies. The Fourth Circuit determined that Adams was actually innocent of his § 922(g) conviction because under *Simmons*, which had been declared retroactive, he was not a felon at the time of his offense of conviction. The court explained that a "proper showing of 'actual innocence' is sufficient to satisfy the 'miscarriage of justice' requirement." *Id.* at 182 (quoting *Wolfe v. Johnson*, 565 F.3d 140, 160 (4th Cir.

2009)). Thus, "in keeping with [its] precedent and to prevent a miscarriage of justice, [the court] conclude[d] Adams's claim is outside the scope of his appeal waiver." *Id.* at 183.

The Fourth Circuit subsequently decided that enforcing a collateral-review waiver in the situation at issue in this case—a § 924(c) conviction premised on an offense that is no longer a valid predicate—would work a miscarriage of justice. In *United States v. McKinney*, 60 F.4th 188 (4th Cir. 2023), the petitioner pleaded guilty to conspiracy to commit Hobbs Act robbery and a § 924(c) charge with Hobbs Act conspiracy as the predicate offense. After the Fourth Circuit struck down the residual clause as unconstitutional, then held that Hobbs Act conspiracy was not a "crime of violence," McKinney challenged his conviction and sentence in a § 2255 petition. The government countered that McKinney waived his right to collaterally challenge his conviction. 60 F.4th at 191.

Relying on *Adams*, the Fourth Circuit rejected this argument, noting that the "most fundamental reason" to refuse to enforce an appeal waiver is that enforcing the waiver would "result in a miscarriage of justice." *Id.* at 192 (citation omitted). The court explained that in *Adams*, the petitioner made "a cognizable claim of actual innocence" and thus

46

"met the standard for miscarriage of justice." *Id.* at 192 (quoting *Adams*, 814 F.3d at 182). McKinney, too, "made a cognizable claim of actual innocence and so, like Adams, ha[d] satisfied the miscarriage-of-justice requirement." *Id.* at 192–93. Notably, the Fourth Circuit reached this conclusion only on the basis that McKinney "made a cognizable claim of actual innocence," not on the basis of a finding that he was actually innocent, as that term is used in the context of procedural default. *See id.* at 193.

Finally, in *United States v. Sweeney*, 833 F. App'x 395 (4th Cir. 2021), the Fourth Circuit similarly declined to enforce an appeal waiver where the defendant argued his § 924(c) conviction was predicated on Hobbs Act offenses (conspiracy and attempt) that were no longer valid § 924(c) predicates. The Fourth Circuit concluded: "Because [Defendant's] § 924(c) conviction is not supported by a valid predicate, he has made a proper showing of actual innocence. We therefore decline to enforce the waiver . . . ." *Id.* at 397. In the same opinion, the court vacated the defendant's § 924(c) conviction. *Id.*

*Hunter* directs that appeal waivers should not be enforced if doing so would work a "miscarriage of justice." It should be emphasized that

47

the Court need not reach the issue of whether enforcing Grant's collateral-review waiver would work such a miscarriage of justice, because his plea agreement includes an express exemption for challenges based on intervening changes in law. But if the Court does reach the issue, it should follow the Fourth Circuit and conclude that Grant "has made a cognizable claim of actual innocence and so . . . has satisfied the miscarriage-of-justice requirement." *McKinney*, 60 F.4th at 192–93.

**V.     Grant did not commit a procedural default, distinguishing this case from *Cobbs*; even if he did, he must prevail because he is factually innocent of completed Hobbs Act robbery.**

"A claim not raised on direct appeal generally may not be raised for the first time on collateral review and amounts to procedural default." *White v. United States*, 8 F.4th 547, 554 (7th Cir. 2021). As has been discussed, the district court was correct to conclude that Grant's *Johnson*-based petition was "timely filed" and there was no procedural default. (Order at 4–5, App'x at 4–5.) This case thus comes to the Court in a somewhat different posture from many habeas petitions—oftentimes, the petitioner is asking this Court to reverse the district court's ruling on procedural default and also rule in his favor on the merits. *See, e.g., Cobbs*,

141 F.4th at 877 ("On appeal, Cobbs contests the district court's determination that he procedurally defaulted his *Taylor*-based claim."). Here, the district court ruled for Grant on timeliness and procedural default, proceeding to consider his collateral-review waiver and the merits of his underlying claim.

### A. Grant did not procedurally default his *Johnson*-based claim because *Johnson* had not been decided when his conviction became final, and his plea agreement barred appeal absent new law.

Grant did not procedurally default his *Johnson*-based § 2255 claim because *Johnson* had not been decided when the judgment was entered in his case. While "[a] claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal," *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016), Grant's *Johnson*-based claim could *not* have been raised at trial or on direct appeal because *Johnson* had not yet been decided. That distinguishes this case from cases such as *Cobbs*, where the defendant was convicted and sentenced after *Johnson*, meaning that case was available to raise on direct review.

Additionally, as with the issue of waiver, the exception to Grant's appeal and collateral-review waiver at issue here makes a crucial difference. As the government has emphasized, Grant waived *all* appellate and

collateral-review rights with the exception of subsequent changes in interpretation of law by the Supreme Court and this Court. (Plea Agreement § 3, App'x at 33.) In other words, direct appeal would have been futile absent a change in the interpretation of the law that came down between the day Grant's judgment became final and the day his time for appeal expired. Grant cannot be deemed to have procedurally defaulted this challenge by failing to make an appeal that his plea agreement expressly forbade. The doctrine of procedural default serves to funnel challenges to criminal convictions to the proper channels—for state prisoners, through state post-conviction proceedings; and for federal prisoners, direct appeal. Here, Grant made this challenge through the proper channels by raising the challenge on collateral-review once a Supreme Court decision came out that changed the interpretation of the statute of his conviction, exactly as was contemplated by his plea agreement.

**B.    If Grant did procedurally default his claim, his default can be excused for cause and prejudice.**

To overcome a procedural default, a § 2255 petitioner must show "either cause for the default and actual prejudice from the alleged error, or that he is actually innocent." *White v. United States*, 8 F.4th 547, 554 (7th Cir. 2021). *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

50

Should the Court conclude that Grant procedurally defaulted his *Johnson*-based claim, it should nonetheless conclude that there was cause for his default and actual prejudice from the alleged error, on similar grounds to those outlined above.

### 1.    There was cause for any default.

The cause inquiry turns on whether the defendant "can show that some objective factor external to the defense impeded counsel's efforts to comply with the . . . rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A showing that the "factual or legal basis for a claim was not reasonably available to counsel" may constitute cause." *Id.*; *see Reed v. Ross*, 468 U.S. 1, 16 (1984) ("[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim . . . .").

As an initial matter, the "legal basis" for Grant's claim—the *Johnson* decision casting doubt on the constitutionality of § 924(c)'s residual clause—was unavailable to him during the time period in which he was permitted to directly appeal his conviction. In *McKinney*, the Fourth Circuit concluded that a § 2255 petitioner who was sentenced in 2013 suc-

cessfully showed cause for his failure to raise a void-for-vagueness challenge to § 924(c)'s residual clause. 60 F.4th at 194–95. The court held the claim was not reasonably available to McKinney's counsel on direct appeal as it found "no cases in any federal court of appeals prior to . . . *Johnson* in 2015 that adopt[ed] a vagueness argument" with respect to § 924(c). *Id.* at 194. There was thus no "reasonable basis upon which an attorney previously could have urged a court to adopt the position ultimately endorsed by the Supreme Court in *Johnson*," so the petitioner established cause for his default. *Id.* at 195 (cleaned up). Other circuits have reached the same conclusion for defendants sentenced pre-*Johnson*. *Jones v. United States*, 39 F.4th 523, 525 (8th Cir. 2022); *United States v. Garcia*, 811 F. App'x 472, 479–80 (10th Cir. 2020).

Even if the Court were to conclude, contrary to *McKinney* and the other authority cited above, that *Johnson* was not a "constitutional claim . . . so novel that its legal basis [wa]s not reasonably available to counsel," *Reed*, 468 U.S. at 16, it should nonetheless rule in Grant's favor on account of the appeal waiver in his plea agreement. As explained above, Grant agreed in his plea agreement not to appeal his sentence except on account of a "subsequent change in the interpretation of the law"

52

by the Supreme Court or this Court. (Plea Agreement § 3, App'x at 33.) This agreement—and the absence of any intervening change in law during the time Grant's conviction could have been appealed—was an "objective factor external to the defense" that "impeded [Grant's] efforts to comply with the . . . rule" that challenges must be made first on direct appeal. *Murray*, 477 U.S. at 488. Grant's plea agreement forbidding direct appeal was cause for his failure to raise the issues in this petition on direct appeal.

## 2. The prejudice prong is also satisfied here.

To show prejudice, a defendant must establish that the error at issue "worked to his *actual* and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982). In other words, he must show a "reasonable probability" that the outcome in his case would have been different absent the error. *Delatorre v. United States*, 847 F.3d 837, 846 (7th Cir. 2017). Here, Grant was prejudiced by the courts' prior conclusion that attempted Hobbs Act robbery was an adequate predicate offense for § 924(c). The proper inquiry here is whether "a defendant, had he known of the error, would not have pled guilty to the count of conviction." *McKinney*, 60 F.4th at 196. Had Grant known of the error at issue here, he

53

would not have pleaded guilty to § 924(c) with attempted Hobbs Act robbery as the predicate, because attempted Hobbs Act robbery is not a valid predicate offense.

The Fourth, Sixth, and Tenth Circuits have found prejudice where a "defendant's conviction or sentence is no longer authorized by law." *McKinney*, 60 F.4th at 196 (citation omitted); *see Raines v. United States*, 898 F.3d 680, 687 (6th Cir. 2018) (holding that because the defendant's "*Johnson* claim [challenging his ACCA conviction] is meritorious . . . he has made the requisite showing of prejudice"); *United States v. Snyder*, 871 F.3d 1122, 1128 (10th Cir. 2017) (same); *United States v. Garcia*, 811 F. App'x 472, 480 (10th Cir. 2020) (holding same with respect to § 924(c) and noting that a conviction being "not authorized by law . . . is certainly an actual and substantial disadvantage of constitutional dimensions." (quoting *Snyder*, 871 F.3d at 1128)). This Court should follow those cases.

**C. If Grant did procedurally default his claim and cannot show cause and prejudice, he nonetheless is entitled to relief because he is actually innocent of completed Hobbs Act robbery.**

Finally, even if the Court were to find procedural default and no showing of cause and prejudice, it should nonetheless rule in Grant's fa-

54

vor because the facts to which Grant stipulated do not support a conviction for completed Hobbs Act robbery and thus do not support a § 924(c) conviction. Accordingly, he is actually innocent of his § 924(c) charge on the factual record in this case, excusing his procedural default.

In *Cobbs*, the Court found that the petitioner failed to show cause and prejudice for his procedural default and thus proceeded to actual innocence. 141 F.4th at 877. Accordingly, to show that Grant qualifies for the actual-innocence excuse, it is appropriate to track the *Cobbs* analysis and explain where this case differs. In short, the facts that Cobbs admitted to showed he could have been convicted for a completed Hobbs Act robbery. This is not the case for Grant.

The Court in *Cobbs* explained that the indictment at issue in that case charged that Cobbs "'unlawfully obstructed, delayed, and affected, *and* attempted to obstruct, delay, and affect commerce . . . by robbery.' In doing so, this language described a completed Hobbs Act robbery as well as an attempted one." 141 F.4th at 881. Unlike *Cobbs*, Grant did not stipulate to facts amounting to a completed Hobbs Act robbery. (*See* Indictment, Crim. Dkt. 1, App'x at 23–24.)

Applying the Supreme Court's decision in *Bousley*, 523 U.S. 614,

the Court in *Cobbs* explained that to establish actual innocence, "a habeas petitioner must show that he was actually innocent of the charge to which he pleaded, *and* he must show that he was actually innocent of any charge that the government dropped during the course of plea discussion so long as the dropped charge was more serious or equally serious to the one that was the subject of the plea." 141 F.4th at 880. For Cobbs, and for Grant, because the indictment alleged both completed and attempted Hobbs Act robbery, actual innocence—as that term is used in the context of excuse for procedural default—requires a showing of innocence of completed Hobbs Act robbery.

Cobbs could not make that showing, but Grant can. The Court in *Cobbs* went on to explain that "the factual admissions Cobbs made during his plea satisfied both" completed and attempted Hobbs Act robbery. *Id.* at 881. Specifically, Cobbs admitted

> that he had taken a cell phone from an employee . . . after binding the individual with duct tape and while brandishing a firearm. [He also acknowledged that he was eventually found in a dumpster outside the restaurant with the cell phone he had taken.] By acknowledging these facts, Cobbs admitted that he had taken or obtained personal property from the person of another, against that person's will, by means of actual or threatened force.

*Id.* The Court explained that those admissions amounted to admission to

the elements of a completed Hobbs Act robbery. *Id.* In addition to Cobbs' admission regarding taking the cell phone, the court noted that Cobbs admitted he "took the money from the owner [of the store he robbed] with the intent to permanently deprive the owner of the proceeds"; even though Cobbs did not make it out of the store with the money, "any carrying away movement, however slight," qualifies as a completed robbery. *Id.* n.4 (quoting 2 Wharton's Criminal Law § 26:15 (16th ed.))

Here, Grant's factual admissions did not amount to a completed robbery. In relevant part, the Stipulation of Facts states:

> Grant put the gun to R.B.'s head and told R.B. to give Grant all of the money. Grant held the gun on R.B. as Grant followed R.B. to the cash register. As R.B. was giving Grant the cash from the register, R.B. grabbed the gun and the two began struggling over the gun. During the struggle, the firearm discharged . . . .

(Stip., App'x at 35.) This was not a completed Hobbs Act robbery—according to the stipulation of facts, and in contrast to *Cobbs*, there was no "asportation." *See Cobbs*, 141 F.4th at 881 n.4 ("There is an asportation when the actor carries away the property.").

Should the Court reach the issue of factual innocence as it was evaluated in *Cobbs*, i.e., whether the facts to which Grant stipulated amount to a completed Hobbs Act robbery, it should conclude they do not, and

57

that Grant is thus factually innocent of the § 924(c) charge for which he was convicted and sentenced.

## Conclusion

Nine years ago, the Court granted a certificate of appealability in this case on the basis of Grant's showing as to whether he was "convicted of an uncompleted attempted Hobbs Act robbery" and "whether an uncompleted Hobbs Act robbery is a crime of violence." (App. Dkt. 9.) As explained, both these issues should be resolved in Grant's favor. Grant's plea agreement makes clear that he pleaded guilty to attempted, not completed, Hobbs Act robbery. And under *Taylor*, attempted Hobbs Act robbery is not a crime of violence under 18 U.S.C. § 924(c).

On the issue of waiver, this would perhaps be a different case absent the collateral-review waiver's express exception for subsequent developments in law. But *with* that exception, Grant is entitled to relief under *Taylor*. This Court has often said that plea agreements are to be interpreted "using ordinary principles of contract law." *Malone*, 815 F.3d at 370. Here, those principles favor reading the contract to allow Grant's petition and this appeal. Grant can be presumed to have bargained for that exception—one that not all criminal defendants do bargain for. He

58

is entitled to the benefit of that bargain.

For the reasons discussed above, the Court should vacate Grant's

conviction for violation of § 924(c) and remand for resentencing.

Filed: August 4, 2026.

Respectfully submitted,

DENZELL D. GRANT,
*By Counsel*

By   /s/    *Adam W. Decker*
Benjamin S. Morrell
Adam W. Decker
Spencer J. Parts
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Dr., Suite 2600
Chicago, IL 60601
(312) 527-4000
bmorrell@taftlaw.com
adecker@taftlaw.com
sparts@taftlaw.com

*Appointed Counsel for Petitioner-
Appellant*

## Certificate of Compliance

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that the foregoing document complies with the type-volume limitation of Rule 32(a)(7)(B)(i), as modified by Circuit Rule 32(c). It contains 12,263 words.

I further certify that the foregoing document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6), as modified by Circuit Rule 32(b). It has been prepared using Microsoft Word in the proportionally spaced typeface of Century Schoolbook, in 14-point font size.

Dated: August 4, 2026.

By   /s/    *Adam W. Decker*

## Certificate of Service

I certify that on the date listed below, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: August 4, 2026.

By　/s/　*Adam W. Decker*

Case No. 17–1234

---

## UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

---

DENZELL D. GRANT,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

---

On Appeal from the United States District Court
for the Southern District of Illinois
Case No. 3:16–CV–677–MJR
(Related Case No. 3:14–CR–30039–MJR)

---

## REQUIRED APPENDIX OF PETITIONER-APPELLANT

---

Benjamin S. Morrell
 *Counsel of Record*
Adam W. Decker
Spencer J. Parts

TAFT STETTINIUS &
HOLLISTER LLP
111 East Wacker Drive
Suite 2600
Chicago, IL 60601
(312) 527–4000
bmorrell@taftlaw.com
adecker@taftlaw.com
sparts@taftlaw.com

*Appointed Counsel for Petitioner-Appellant*

# Table of Contents

Statement That All Required Materials Are in Appendix………………..i

District Court Order Denying Petitioner-Appellant's § 2255 Petition….1

District Court Judgment Denying Petitioner-Appellant's § 2255 Petition……………………………………………………………………..22

Indictment in Underlying Criminal Case…….…………......................... 23

Plea Agreement……………………………………………………………..25

Stipulation of Facts………………………………………………………35

**Statement That All Required Materials Are in Appendix**

Counsel for Petitioner-Appellant Grant hereby certifies that all of the materials required by Circuit Rule 30(a) are included in this Appendix. *See* 7th Cir. R. 30(d).

Date: August 4, 2026

/s/  *Adam W. Decker*
Adam W. Decker
*Appointed Counsel for*
*Petitioner-Appellant*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DENZELL D. GRANT,                          )
                                           )
          Petitioner,                      )
                                           )
vs.                                        )          Case No. 16-cv-0677-MJR
                                           )      (Related Case 14-CR-30039-MJR)
UNITED STATES OF AMERICA,                  )
                                           )
          Respondent.                      )

ORDER DENYING *JOHNSON*-BASED PETITION TO
VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. 2255

REAGAN, Chief Judge:

A.      Introduction

In his underlying criminal case (Case No. 14-cr-30039-MJR), Denzell Grant pled

guilty to interference with commerce by robbery in violation of 18 U.S.C. 1951(a)

(Count 1, sometimes referred to as "Hobbs Act robbery") and discharge of a firearm in

furtherance of a crime of violence in violation of 18 U.S.C. 924(c)(1)(A)(iii) (Count 2).

The undersigned sentenced Grant to 180 total months in prison (150 months on Count 2

running consecutively to 30 months on Count 1), plus three years of supervised release.

Judgment was entered on October 24, 2014.

On June 21, 2016, Grant filed a pro se petition to vacate, set aside, or correct his

sentence under 28 U.S.C. 2255 petition, along with a 40-page supporting memorandum.

The petition was based on the United States Supreme Court's 2015 decision in ***Johnson***

***v. United States*, -- U.S. --, 135 S. Ct. 2551 (2015).**  *Johnson* declared unconstitutional a

portion of a federal statute -- the residual clause of the Armed Career Criminal Act

Page | 1

App'x 1

("ACCA"), 18 U.S.C. 924(e)(2)(B)(ii).  The Supreme Court held that the residual clause of ACCA violates the United States Constitution's guarantee of due process by being so vaguely worded as to not give ordinary people fair notice of the conduct it punishes. Grant claims that this ruling supports his request for relief under 28 U.S.C. 2255.

On threshold review of Grant's petition, the undersigned set a briefing schedule and appointed counsel to assist Grant in pursuing any relief he may be entitled to under *Johnson*.  In that Order, the Court noted several potential obstacles to § 2255 relief, if the petition was timely.  First, Grant was not sentenced under the residual clause of the ACCA that was struck down in *Johnson* -- 18 U.S.C. 924(e)(2)(B)(ii)*.*  Instead, he was sentenced for violation of 18 U.S.C. 1951(a) (on Count 1, Hobbs Act robbery) and 18 U.S.C. 924(c)(1)(A)(iii) (on Count 2, discharging a firearm in furtherance of a crime of violence). So (especially at the time of this Court's threshold review Order), the application of *Johnson* beyond ACCA-based sentences was unclear.  Second, in a written plea agreement, Grant had waived the right to challenge his sentence under 28 U.S.C. 2255, with two exceptions that did not appear to apply.

On August 29, 2016, Grant's counsel (Assistant Federal Public Defender Daniel Cronin) filed a detailed memorandum addressing the concerns raised by the Court and explaining his reasons for concluding that "there is no non-frivolous basis for the relief sought in Petitioner's pro se § 2255 petition" (Doc. 5, p. 1).  Cronin argues that Grant's petition was timely filed.  As to Grant's waiver of the right to collateral review,  Cronin offers a potential basis on which to sidestep the waiver which Grant executed, but he

essentially concedes that the plain language of the waiver "seems to preclude consideration of Mr. Grant's § 2255 claims on the merits" (Doc. 5, p. 5).

If Grant's petition is not barred by the § 2255 waiver, *and* assuming that *Johnson* extends to the residual clause Grant cites to (18 U.S.C. 924(c)(3)(B)), another impediment to relief exists.  18 U.S.C. 924(c)(3) defines the term "crime of violence" to mean a felony offense that either (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.  **18 U.S.C. 924(c)(3).**  Cronin asserts that Grant's Hobbs Act robbery may no longer qualify as a crime of violence under the residual-like clause of § 924(c)(3)(B) (as Grant argues), but that offense would still qualify as a crime of violence under the elements or "force" clause of § 924(c)(3)(A).  For all these reasons, Mr. Cronin was compelled to opine that there is no solid basis on which this Court can award the relief sought in Grant's § 22255 petition.

The United States (the Government) responded on October 7, 2016 (*see* Doc. 8).  Grant filed two replies (*see* Docs. 7 and 9).  The issues have been thoroughly discussed, and the matter was fully ripe as of November 9, 2016.  For the reasons stated below, the Court dismisses Grant's petition.

B.      **Preliminary Issues**

Under Rule 8(a) of the Rules Governing Section 2255 Proceedings, this Court must determine whether an evidentiary hearing is warranted.  Not every petition warrants a hearing.  ***Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016).  *See also***

Page | 3

App'x 3

*Martin v. United States*, **789 F.3d 703, 706 (7th Cir. 2015) ("It is well-established that a district court need not grant an evidentiary hearing in all § 2255 cases," such as where the record conclusively shows the prisoner is not entitled to relief.);** *Kafo v. United States*, **467 F.3d 1063, 1067 (7th Cir. 2006) (to justify a hearing, petition must be accompanied by a detailed affidavit which shows that the petitioner has actual proof of the allegations going beyond mere unsupported assertions).** The record before this Court conclusively reveals that Grant is not entitled to relief, so no hearing is needed.

Next, the Court addresses whether Grant's petition was timely filed. It was. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year period of limitations for prisoners to file petitions seeking to modify or vacate their sentences under 28 U.S.C. 2255. **28 U.S.C. 2255(f);** *Purvis v. United States*, **662 F.3d 939, 942 (7th Cir. 2011).** *Accord Clay v. United States*, **537 U.S. 522, 524 (2003) ("A motion by a federal prisoner … under 28 U.S.C. § 2255 is subject to a one-year time limitation that generally runs from 'the date on which the judgment of conviction becomes final.'").**

The one-year limitation period is triggered by the latest of four events:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

Page | 4

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

**28 U.S.C. 2255(f).**  The statute does not provide for extensions of time.[1]

Grant filed his petition on June 21, 2016 -- within the one-year period set forth in § 2255(f)(3), based on the Supreme Court's June 26, 2015 decision in ***Johnson,*** which has been declared retroactively applicable to cases on collateral review.  ***Welch v. United States, -- U.S. --, 136 S. Ct. 1257, 1265 (2016) ("Johnson is … a substantive decision and so has retroactive effect … in cases on collateral review."); Price v. United States, 795 F.3d 731, 734 (7th Cir. 2015) (Johnson announced a new substantive rule which applies retroactively on collateral review).***  The Court treats the petition as timely-filed.

C.    <u>Analysis</u>

(1)    OVERVIEW

Analysis starts with the proposition that relief under § 2255 is limited.  It is "available only in extraordinary situations," requiring an error of constitutional or jurisdictional magnitude or a fundamental defect that resulted in a complete miscarriage of justice.  ***Blake v. United States, 723 F.3d 870, 879 (7th Cir. 2013).  Accord United States v. Coleman, 763 F.3d 706, 708 (7th Cir. 2014).***

Grant vehemently asserts that there has been an error of constitutional proportion here.  He insists that, after ***Johnson***, his Hobbs Act robbery conviction no

---

[1]    The limitation period is not jurisdictional and can be equitably tolled.  ***Boulb v. United States, 818 F.3d 334, 339 (7th Cir. 2016), citing Holland v. Florida, 560 U.S. 631, 645 (2010).***  But equitable tolling is "reserved for extraordinary circumstances far beyond the litigant's control" which prevented him from filing the petition on time.  ***Id., quoting Socha v. Boughton, 763 F.3d 674, 684 (7th Cir. 2014).  Accord Nolan v. United States, 358 F.3d 480, 484 (7th Cir. 2004).***

longer qualifies as a crime of violence, so his "§ 924(c) conviction cannot stand" (Doc. 7, p. 5), and the Court must enter a "judgment of acquittal" on that count (Doc. 9, p. 4). The essence of Grant's argument is that the residual clause of 18 U.S.C. 924(c)(3)(B) is materially the same as the residual clause of ACCA struck down in *Johnson*, so the residual clause of 924(c)(3)(B) is unconstitutionally vague, and his conviction and sentence under the latter are invalid.

**(2)   WAIVER OF RIGHT TO FILE 2255 PETITION**

Before reaching the merits of this argument, the Court must confront an obvious procedural impediment – Grant waived the right to collaterally challenge his sentence pursuant to 28 U.S.C. 2255.[2]  In July 2014, Grant executed a written plea agreement in which he acknowledged that he had rights to contest his sentence under Title 18 and Title 28, as well as certain appeal rights.  The plea agreement then stated (Doc. 8-2; bold in original, italics added here):

> The Government agrees to recommend a sentence of not more than five (5) years imprisonment on Count 1 of the Indictment.  Based on this concession, the Defendant agrees to waive his appeal and collateral review rights….
>
> However, in exchange for the recommendations and concessions made by the United States in this plea agreement, the Defendant knowingly and voluntarily waives his right to contest any aspect of his conviction and sentence that could be contested under … Title 28, or under any other provision of federal law, **except that if the sentence imposed is in excess of sixty (60) months' on Count 1, the Defendant reserves the right to appeal the reasonableness of the sentence….**

---

[2]      The plea agreement and stipulation of facts from the criminal case are exhibits in this civil proceeding, at Docs. 8-2 and 8-3.

Page | 6

Defendant's waiver of his right to … bring collateral challenges shall not apply to: 1) any subsequent change in the interpretation of the law by the United States Supreme Court or the United States Court of Appeals for the Seventh Circuit that is declared retroactive by those Courts *and that renders the defendant actually innocent of the charges covered herein;* and 2) appeals based upon Sentencing Guideline amendments that are made retroactive by the United States Sentencing Commission (*see* U.S.S.G. § 1B1.10).

Cronin offers one possible basis on which to circumvent the waiver – an implicit due process-based exception to the waiver (*see* Doc. 5, pp. 5-6). Petitioner Grant adopts this argument (Doc. 9, pp. 1-2). The Court finds it unavailing. The Court concludes that the waiver, which was knowingly and voluntarily executed (Grant does not claim otherwise, nor would the record support such a claim), dooms Grant's § 2255 petition.

Clearly, a defendant can waive his right to collateral review as part of a plea agreement. ***See, e.g., Solano v. United States*, 812 F.3d 573, 577 (7th Cir. 2016) ("As part of a plea agreement, a defendant may validly waive his right to challenge his conviction and sentence on direct appeal or collateral review under 28 U.S.C. 2255.").** Such waivers are enforced unless the plea agreement was involuntary, the court relied on a constitutionally impermissible factor (like the defendant's race), the sentence exceeded the statutory maximum, or the defendant claimed ineffective assistance of counsel in connection with negotiation of the plea agreement. ***Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011),** *citing **Jones v. United States*, 167 F.3d 1142, 1144-45 (7th Cir. 1999); *Gaylord v. United States*, 829 F.3d 500, 505 (7th Cir. 2016).** None of these exceptions applies here.

Grant's plea agreement explicitly left one door to collateral review open. The agreement says the waiver of the right to bring a collateral challenge does *not* apply to

Page | 7

any subsequent change in the law by the United States Supreme Court or the United

States Court of Appeals for the Seventh Circuit that was declared retroactive by those

Courts *and* that rendered Grant actually innocent of the charges.

Any reliance on this provision would be misplaced, because *Johnson* did *not*

render Grant actually innocent of the charges he pled guilty to – Hobbs Act robbery and

discharge of a firearm in furtherance of a crime of violence. Nothing about the holding

of *Johnson* altered the elements of or heightened the proof required for conviction

under these statutes.[3] The undersigned finds the § 2255 waiver enforceable. That

waiver precludes the relief Grant seeks. If the Court could bypass the waiver, Grant's

petition would fail on the merits.

**(3)   MERITS OF 2255 PETITION**

The Government maintains that Grant's convictions are for crimes not impacted

by *Johnson*, as *Johnson* involved ACCA, and Grant was not sentenced under ACCA.

Post-*Johnson* caselaw in this Circuit reveals weakness in this argument, as sentencing

provisions other than ACCA's residual clause have been found void based on the

rationale of *Johnson*. So the Court (again assuming, *arguendo*, that the waiver provision

did not bar this collateral challenge) addresses Grant's argument head-on.

18 U.S.C. 924(c)(1)(A) provides in part that any person who "during and in

relation to any crime of violence … uses or carries a firearm …, shall, in addition to the

---

[3]   *Johnson* stands in contrast to *Flores-Figueroa v. United States,* **556 U.S. 646, 657 (2009)**, which changed the proof required for conviction under the aggravated identity theft statute. In *Flores-Figueroa,* an element of the offense of conviction was changed by the Supreme Court's opinion, resulting in the defendant being *actually innocent* of the charge. *Johnson* did not render Grant innocent of the charges he pled guilty to in this Court.

punishment provide for such crime of violence" be sentenced to a term of imprisonment of not less than five years. The sentence jumps to not less than ten years if the firearm is discharged. **18 U.S.C. 924(c)(1)(A)(iii).**[4] The merits-based question is whether Grant's Hobbs Act robbery conviction is still a "crime of violence" post-*Johnson*.

There are two ways a felony offense qualifies as a "crime of violence" under 18 U.S.C. 924(c)(3) -- the offense (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. **18 U.S.C. 924(c)(3).** Provision (A) is referred to as the "force" or "elements" clause; provision (B) has been called the residual clause.

Grant points out that *Johnson* sweeps farther than the Government's crabbed interpretation, and he argues that the residual clause of § 924(c)(3)(B) is every bit as vague as the ACCA residual clause declared unconstitutional in *Johnson*. Indeed, the Seventh Circuit has expanded *Johnson* to strike down residual clauses in laws other than ACCA. ***See, e.g., United States v. Vivas-Ceja,* 808 F.3d 719, 721 (7th Cir. 2015) (finding residual clause of 18 U.S.C. 16(b) invalid for the same reason ACCA's**

---

[4]    Grant was convicted of Hobbs Act robbery under 18 U.S.C. 1951(a) (Count 1) and discharge of a firearm in furtherance of a crime of violence under 18 U.S.C. 924(c)(1)(A)(iii) (Count 2).   The presentence investigation report (PSR, Doc. 27 in the underlying criminal case) explained as to Count 2 that U.S.S.G. 2K2.4 directs that if a defendant (whether or not convicted of another crime) is convicted under § 924(c), the term of imprisonment is that required by statute (here, since the firearm was charged in relation to Count 1, the penalty is not less than 10 years, running consecutively to Count 1).

residual clause was invalidated)[5]; and *United States v. Hurlburt,* 835 F.3d 715 (7th Cir. 2016) (finding residual clause in § 4B1.2(a)(1) of the U.S. Sentencing Guidelines unconstitutionally vague).[6]    Moreover, just eight weeks ago, the Seventh Circuit addressed the validity of the residual clause of § 924(c)(3).

In *United States v. Cardena,* 842 F.3d 959, 996 (7th Cir. Nov. 18, 2016), the Seventh Circuit held that the residual clause of 18 U.S.C. 924(c)(3)(B) is "virtually indistinguishable from the clause in *Johnson* that was found to be unconstitutionally vague" and is likewise unconstitutionally vague.    So Grant's Hobbs Act robbery conviction *does not count* as a crime of violence under **§ 924(c)(3)(B)**.    The problem for Grant is that his Hobbs Act robbery conviction still constitutes a crime of violence under **§ 924(c)(3)(A)** -- the elements or force clause of 924(c)(3).

That clause, untouched by *Johnson* and its progeny, provides that a felony offense is a "crime of violence" if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."    To date, the United States Supreme Court and Seventh Circuit have not squarely decided whether a Hobbs Act robbery is a crime of violence under the force clause of § 924(c)(3)(A). However, over a dozen district courts and at least two federal courts of appeal have

---

[5]    The United States Supreme Court has granted review in a case presenting the question whether *Johnson* extends to the residual clause in 18 U.S.C. § 16(b). *Dimaya v. Lynch,* 803 F.3d 1110 (9th Cir. 2015), *cert. granted,* -- U.S. --, 137 S. Ct. 31 (Sept, 29, 2016).  *See United States v. Armour,* 840 F.3d 904, 912 (7th Cir. 2016).

[6]    It bears note that, to date, this holding (the extension of *Johnson* to the U.S.S.G. 4B1.2(a)(2)) has not been declared to apply retroactively to cases on collateral review.  The Supreme Court is expected to decide that question in *Beckles v. United States,* 616 F. App'x 415 (11th Cir. 2015), *cert. granted,* -- U.S. --, 136 S. Ct. 2510 (June 27, 2016).

App'x 10

tackled the issue, all answering the question affirmatively, and the Seventh Circuit has

hinted as much (*see* footnote 7, below).

The district court cases are summarized in the Northern District of Indiana's

decision in ***United States v. Crawford, -- Fed. Supp. 3d --, 2016 WL 320116, at \*3 (N.D.***

***Ind. 2016)***, which also concludes that Hobbs Act robbery is a crime of violence under 18

U.S.C. 924(c)(3)(A).  Furthermore, in ***United States v. Hill, 832 F.3d 135 (2nd Cir. 2016),***

the Court of Appeals for the Second Circuit held that Hobbs Act robbery is a crime of

violence under the force clause of § 924(c)(3).

Section 924(c)(3)(A) defines a crime of violence as a felony offense that "has as an

element the use, attempted use, or threatened use of physical force against the person or

property of another."  Grant was convicted of was Hobbs Act robbery, a violation of 18

U.S.C. 1951.  Section 1951(b)(1) defines robbery as "the unlawful taking or obtaining of

personal property from the person or in the presence of another, against his will, by

means of actual or threatened force, or violence, or fear of injury, immediate or future,

to his person or property…."

In ***Hill***, the defendant argued that Hobbs Act robbery was not a crime of violence

under 18 U.S.C. 924(c)(3), because it was possible to commit Hobbs Act robbery *without*

satisfying § 924(c)'s force clause – i.e., by merely putting the victim in fear of injury as

opposed to actually using (or threatening to use) force or violence.  The Second Circuit

soundly rejected this argument:

> In *Castleman*, the Supreme Court, construing "physical force" as it is
> employed in connection with § 922(g)(9), made clear that physical force
> "encompasses even its indirect application," as when a battery is

committed by administering a poison: "That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter" lest we conclude that pulling the trigger on a gun involves no use of force "because it is the bullet, not the trigger, that actually strikes the victim." 134 S. Ct. at 1414–15. Hill offers no persuasive reason why the same principle should not apply to the construction of § 924(c)(3), so that, as regarding the Hobbs Act, a robbery still has as an element "the use, attempted use, or threatened use of physical force against the person or property of another," notwithstanding that it is accomplished by threatening to poison a victim, rather than to shoot him. Some threats do not require specification of any particular means in order to be effective; yet they still threaten *some* type of violence and the application of *some* force. Consider: "That's a nice car—would you like to be able to continue driving it?"

….

In sum, we agree with the Ninth Circuit, … that Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

**Hill, 832 F.3d at 143-44, *citing United States v. Castleman,* -- U.S. --, 134 S. Ct. 1405, 1417 (2014)(Scalia J., concurring), and *United States v. Howard,* 650 F. App'x 466, 468 (9th Cir. 2016) (holding that Hobbs Act robbery qualifies as a crime of violence under § 924(c)'s force clause).** [7]  The Second Circuit reached this conclusion after applying an analytical framework known as "the categorical approach."  A bit of background on this approach is helpful to understand why the undersigned does not apply it here.

To determine whether a conviction qualifies as a crime of violence for sentencing purposes, federal courts usually apply the categorical approach, under which they ask only whether the elements of the offense forming the basis of the prior conviction sufficiently match the elements of the generic or commonly understood version of that

---

[7]    Additionally, the Seventh Circuit (when denying applications for leave to file a second or successive § 2255 petition) has suggested that Hobbs Act robbery counts as a crime of violence under § 924(c)(3)(A)'s force or elements clause. *See, e.g., Rimpson v. United States,* **No. 16-2304 at 1-2 (7th Cir. June 28, 2016);** *Scott v. United States,* **No. 16-1630 at 1-2 (7th Cir. April 8, 2016).**

App'x 12

crime.  *See Taylor v. United States,* **495 U.S. 575, 599-600 (1990).**   In this process, the court examines the legal elements of the crime, not the specific conduct of a particular defendant on a certain day.  *Begay v. United States,* **553 U.S. 137 (2008).**

The court compares two things – the judgment and the statute of conviction – to determine whether the elements of the prior offense are the kind that make the offense a violent crime.  *See United States v. Ker Yang,* **799 F.3d 750, 752 (7th Cir. 2015),** *citing United States v. Woods,* **576 F.3d 400, 403 (7th Cir. 2009).**  *Accord Descamps v. United States,* **-- U.S. --, 133 S. Ct. 2276 (2013).**  *See also Mathis v. United States,* **-- U.S. --, 136 S. Ct. 2243 (2016).**   As long as the elements of the prior crime are the same as or narrower than the generic offense, the prior crime counts as a predicate for sentencing purposes.  *See, e.g., Taylor,*  **495 U.S. at 599 (if the state statute is narrower than the generic view, "there is no problem, because the conviction necessarily implies that the defendant has been found guilty of all the elements of" the generic offense).**

The inquiry is simple if the statute defines a crime with one indivisible set of elements.  "The court then lines up that crime's elements alongside those of the generic offense and sees if they match."  *Mathis,* **136 S. Ct. at 2248.**  The task is more difficult when the statute lists the elements in the alternative and thereby defines multiple crimes.  *Id.* **at 2249.**   In that situation, confronted with a "divisible" statute, the court may follow the *modified* categorical approach and consult a limited class of documents (e.g., indictment, jury instructions, plea agreement and colloquy) "to determine what

App'x 13

crime, with what elements, a defendant was convicted of," and compare that crime with the relevant generic offense. *Id., citing Shepard v. United States,* **544 U.S. 13, 26 (2005).**[8]

The task is even harder if the statute lists alternative *means* of satisfying one of its elements. That was the type of statute under review in **Mathis.** In that case, the defendant received a 15-year sentence enhancement in federal court based on his prior convictions under Iowa's burglary statute. The generic offense of burglary has the following elements: unlawful entry into a building or other structure with the intent to commit a crime. The Iowa burglary statute covered not just buildings or structures but also vehicles, meaning there was more than one way to fulfill a single element of the Iowa burglary law. The Supreme Court found that the Iowa statute set out disjunctive means or "factual scenarios" of committing the crime of burglary, not alternative *elements* of conviction. This meant the Iowa law was *not* divisible. Reliance on a conviction under this kind of statute is problematic, because a jury need not necessarily make specific findings at trial to obtain a conviction for (or a defendant make specific admissions in pleading guilty to) such a crime. *Mathis,* **136 S. Ct. at 2249.**

Since the Iowa statute was not divisible, the sentencing judge was not allowed to inspect records of the prior convictions and determine whether the defendant had burgled structures (which would match generic burglary) as opposed to vehicles (which

---

[8]   A state law forbidding the lawful entry *or unlawful* entry of a premise with intent to steal would create two different offenses, one more serious than the other. A defendant's conviction under that law would "match" generic burglary and qualify as an ACCA predicate if he was convicted of *unlawful* entry but not *lawful* entry, so the court could look at the *Shepard* documents to see what the defendant was actually convicted of – which elements were integral to his conviction – and whether those matched generic burglary. *Mathis,* **136 S. Ct. at 2249.**

Page | 14

would not match generic burglary).  The sentencing judge had to stick with the categorical approach and ask whether the *elements* of Iowa burglary were the same as (or narrower than) those of the generic offense of burglary.  They were not.  The elements of Iowa's burglary statute were broader than the elements of the generic offense of burglary, so a prior conviction for burglary in Iowa could not be counted as an ACCA violent felony predicate.  ***Id.,* 136 S. Ct. at 2251.**

*Mathis* involved sentence enhancement under ACCA.   In September 2016, the Seventh Circuit applied *Mathis* in the context of sentence enhancement under the Guidelines.  In ***United States v. Edwards,* 836 F.3d 831 (7th Cir. 2016),** the Seventh Circuit scrutinized whether a Wisconsin burglary statute was divisible such that the sentencing judge could consult the state court charging documents to decide whether a prior conviction was a crime of violence under the Guidelines.  The Court ultimately found that the Wisconsin law was *not* divisible.  It identified two different means of committing a single crime (burglary) as opposed to listing alternative elements that create multiple, distinct offenses.

The Court explained (***id.* at  834-35, emphasis added**):

The concept of divisibility is an outgrowth of the categorical approach that governs the crime-of-violence determination under the Sentencing Guidelines…. The categorical approach disregards the facts underlying a prior conviction, focusing instead on the statutory definition of the offense….
**If the statutory definition is the same as (or narrower than) the Guidelines definition, the prior conviction can be counted as a crime of violence…. [i]f a statute defines an offense more broadly than the Guidelines, the prior conviction doesn't count**….  Consequently, in most cases the sentencing judge's inquiry is limited to "the fact of conviction and the statutory definition of the prior offense." *Taylor,* 495 U.S. at 602….

We say 'most cases' because the categorical approach "may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases…. This occurs when a statute is "divisible"….

Until recently, the circuits were split regarding what qualifies as a divisible statute…. The Supreme Court resolved the split in *Mathis*, holding that a statute is divisible only if it creates multiple offenses by listing one or more alternative *elements*…. A statute that defines a single offense with alternative *means* of satisfying a particular element is indivisible and therefore not subject to the modified categorical approach.

In *Edwards*, the Seventh Circuit emphasized that "recourse to state-court charging documents was improper," because the statute was not divisible, it only set forth alternative means of satisfying one element (the location element) of the state burglary offense. *Id*, **836 F.3d at 833.** Sticking with the categorical approach, the Seventh Circuit found that the elements of the crime of conviction were broader than "the elements of the Guidelines offense so the defendants' burglary convictions cannot serve as predicate offenses under § 2K2.1(a)." *Id.* **at 6.**

Turning back to the case *sub judice*, the conviction of Grant's under scrutiny is his conviction for Hobbs Act robbery. The Hobbs Act is violated when a person "in any way or degree obstructs, delays, or affects commerce … by robbery or extortion … or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section." **18 U.S.C. 1951(a).** The statute goes on to define *robbery* as:

the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

Page | 16

App'x 16

**18 U.S.C. 1951(b)(1).**

Since the Hobbs Act can be violated two separate ways – robbery or extortion (both of which obstruct commerce but are different offenses) – arguably it is a divisible statute. Counsel did not brief (and the undersigned need not delve into application of) the categorical or modified categorical approach here, because there is a key distinction between the statutes underlying Grant's convictions and the statutes at play in the cases involving these approaches.

ACCA and similar provisions are sentencing *enhancement* statutes, so a reviewing court on a § 2255 petition assesses whether the defendant's prior convictions (often felonies under state law) are crimes of violence that support sentence enhancement. The Seventh Circuit recently stressed that whereas ACCA is a sentence-enhancement statute based on prior convictions for violent felonies, "§ 924(c) is not. It defines a stand-alone crime" – a particular crime of violence (or drug trafficking crime) committed with a firearm. ***Davila v. United States, -- F.3d --, 2016 WL 7217582, at *1 (7th Cir. Dec. 13, 2016).*** The district court need not apply an analytical approach to determine if the defendant was convicted of a "crime of violence" where the conviction at issue is the offense the defendant was convicted of in that federal court (i.e., the offense of conviction itself) as opposed to a prior conviction under a state statute.[9]

---

[9]     In ***Davila***, the Seventh Circuit pointed out: "When stating the factual basis of his plea, Davila admitted to a substantive … offense that made him eligible for conviction under § 924(c), no matter how the Hobbs Act conspiracy is best classified…." ***Id., at *1.***

Page | 17

App'x 17

In a case with facts parallel to those at bar (and in which the defendant sought to set aside his conviction on the ground that his Hobbs Act robbery conviction no longer was a crime of violence as required for conviction under § 924(c)), Chief Judge Simon of the Northern District of Indiana explained:

> unlike § 924(e), which is a sentencing-enhancement statute based on *prior convictions* for violent felonies, a § 924(c) charge is a 'stand-alone crime' that *itself* alleges the particular crime of violence … committed with a firearm….
>
> Mr. James admitted at his plea hearing that he stormed the gas station armed with a gun and brandished it while robbing the place…. Mr. James plainly committed a violent crime that involved the use of actual and threatened force, as well as fear of injury, when he robbed the gas station. … The facts … established by stipulation clearly meet the elements prong of § 924(c)(3)(A), because the Hobbs Act robbery that was actually committed by Mr. James involved the unlawful taking of personal property by means of actual and threatened force, violence and fear of immediate personal injury…. [T]he crime of violence is an element of the § 924(c) charge of which James was convicted, [and] the proof of the elements of that underlying crime was before me at Mr. James' plea hearing and sentencing….

*United States v. James,* **-- Fed. Supp. 3d --, 2016 WL 7475657, at \*2 (N.D. Ind. Dec. 29, 2016),** *citing Davila,* **2016 WL 7217582, at \*1-2.**

Similarly, Denzell Grant was convicted of Hobbs Act robbery (in violation of 18 U.S.C 1951(a)) and discharge of a firearm in furtherance of a crime of violence (in violation of 18 U.S.C. 924(c)(1)(A)(iii)). When Grant entered his guilty plea, he admitted to attempting to commit a robbery as defined in 18 U.S.C. 1951 at Max's One Stop, specifically by attempting to unlawfully take and obtain personal property consisting of United States currency from the person of another "by means of actual and threatened

App'x 18

force, violence and fear of immediate injury to the person of R.B." Doc. 8-3, p. 2.[10]

Without question, Grant's Hobbs Act robbery had as an element the use, attempted use, or threatened use of physical force against the person or property of another and thus met the definition of a crime of violence under the force clause of § 924(c)(3)(A) -- a clause which remains on sound footing in the wake of *Johnson, Cardena*, and other cases striking down residual clauses.[11] ***See In re Fleur*, 824 F.3d 1337, 1340-41 (11th Cir. 2016) (defendant pled guilty to using, carrying, and discharging a firearm during a Hobbs Act robbery, "which robbery offense meets the use-of-force clause of the definition of crime of violence under § 924(c)(3)(A)").** Therefore, if the Court could reach the merits of Grant's petition, the undersigned would deny the requested relief.

### D.    Conclusion

In *United States v. Worthen*, **842 F.3d 552, 554 (7th Cir. 2016),** the Seventh Circuit enforced an appeal waiver in a plea agreement and refused to reach the question of whether the defendant's Hobbs Act robbery conviction was a crime of violence under 18 U.S.C. 924(j). The Court reiterated its "longstanding precedent that appeal waivers are generally enforceable," discussed the substantial benefits criminal defendants receive in exchange for such waivers, and held that the defendant had expressly waived

---

[10]     Grant further admitted knowingly possessing and brandishing a Taurus .380 caliber pistol which discharged (in a struggle over the weapon between Grant and a store clerk) during the commission of the offense, in furtherance of a crime of violence for which he may be prosecuted (i.e., the Hobbs Act robbery). Doc. 8-3, pp. 2-3. He also admitted that the discharge of the weapon injured R.B.'s left hand and struck Grant in the right arm. Doc. 8-3, p. 1.

[11]     Grant's appointed counsel reached the same conclusion, candidly positing (Doc. 5, p. 10) that any claim that a Hobbs Act robbery is not a 'crime of violence' under § 924(c)(3)(A) is "a forlorn hope."

App'x 19

his right to appeal his conviction and sentence, and that waiver precluded an appeal. *Id.* **at 555-56.** Likewise here, the undersigned concludes that Grant's waiver of the right to pursue a collateral challenge forecloses this collateral attack via § 2255 petition.

Grant does not contend that his guilty plea, his stipulation, or his execution of the waiver was involuntary. He does not identify any defect in his Rule 11 plea colloquy. He does not challenge the jurisdiction of this Court to sentence him, and his sentence did not exceed a relevant statutory maximum.

Grant's plea (including the waiver provision) was knowing and voluntary. The Government made significant concessions in exchange, including agreeing to recommend no more than a five-year sentence on Count 1 (despite the fact that Grant robbed a convenience store with a loaded firearm that he held to the head of the clerk while demanding money, a firearm that discharged during a struggle for the weapon between Grant and the clerk).

The Court enforces the § 2255 waiver Grant executed. That waiver bars Grant's § 2255 petition. The petition is hereby **DISMISSED**. If the waiver somehow could be overlooked such that the Court could reach the merits of the petition, the undersigned would find that Hobbs Act robbery still qualifies as a crime of violence under the force clause of 18 U.S.C. 924(c)(3)(A).

### E.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings requires a district court entering a final order adverse to a petitioner to issue or deny a certificate of appealability. 28 U.S.C. 2253(c)(2) states that a certificate of appealability may issue

Page | 20

App'x 20

"only if the applicant has made a substantial showing of the denial of a constitutional right."   This standard requires the petitioner to demonstrate that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the "issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell,* **537 U.S. 322, 336 (2003),** *quoting Slack v. McDaniel,* **529 U.S. 473, 484 (2000).**  *See also United States v. Fleming,* **676 F.3d 621, 625 (7th Cir. 2012).**

For the reasons explained above, the Court finds Grant's § 2255 waiver fully enforceable.  And if that waiver were disregarded, the undersigned would find Grant not entitled to § 2255 relief, because his Hobbs Act robbery conviction qualifies as a "crime of violence" under the force or elements clause of 18 U.S.C. § 924(c)(3)(A). Reasonable jurists would not find these conclusions debatable.  Because Grant has failed to make a substantial showing of the denial of a constitutional right, the Court **DECLINES to issue** a certificate of appealability.   The Clerk of Court shall send a copy of this Order directly to Petitioner Grant.

IT IS SO ORDERED.

DATED January 11, 2017.

s/ *Michael J. Reagan*
Michael J. Reagan
United States District Judge

# United States District Court
## for the
## Southern District of Illinois

|  |  |  |
|---|---|---|
| DENZELL D. GRANT,<br>11098-025 | ) ) ) ) | |
| Petitioner, | ) ) | Case Number: No. 16-cv-677-MJR |
| v. | ) ) ) | |
| UNITED STATES of AMERICA, | ) ) | |
| Respondent. | ) ) | |

## JUDGMENT IN A CIVIL ACTION

**DECISION BY THE COURT.**

**IT IS ORDERED AND ADJUDGED that** Denzell D. Grant's 28 U.S.C. § 2255 PETITION is

DENIED and this action is dismissed with prejudice.

Dated: January 12, 2016

JUSTINE FLANAGAN, ACTING CLERK OF COURT
*s/ Reid Hermann*
Deputy Clerk

Approved: _____
Michael J. Reagan, U.S. District Judge

App'x 22

**FILED**

FEB 2 0 2014

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 14-30039-MJR |
| | ) | |
| DENZELL D. GRANT, | ) | Title 18, United States Code, |
| | ) | Sections 924(c)(1)(A)(iii) and 1951(a). |
| Defendant. | ) | |

## INDICTMENT

### THE GRAND JURY CHARGES:

### COUNT 1

#### INTERFERENCE WITH COMMERCE BY ROBBERY

On or about October 13, 2013, in St. Clair County, in the Southern District of Illinois,

### DENZELL D. GRANT,

defendant herein, did knowingly obstruct, delay, and affect, commerce, as that term is defined in

Title 18, United States Code, Section 1951(b)(3), by robbery, as that term is defined in Title 18,

United States Code, Section 1951(b)(1), and did attempt to do so, and did knowingly commit and

threaten physical violence to a person in furtherance of a plan and purpose to obstruct, delay, and

affect commerce, by robbery, in that **DENZELL D. GRANT**, while in the Max's One Stop

Shop -- a business engaged in interstate commerce -- pointed a handgun at R.B., the clerk at the

shop, demanded money from him, and by means of a firearm, threatened the clerk as he walked

1

App'x 23

to the cash register to provide the defendant with United States currency in response to the defendant's demand; all in violation of Title 18, United States Code, Section 1951(a).

## COUNT 2

### POSSESSION OF FIREARM IN FURTHERANCE OF CRIME OF VIOLENCE

On or about October 13, 2013, in St. Clair County, in the Southern District of Illinois,

**DENZELL D. GRANT,**

defendant herein, did knowingly discharge a firearm in furtherance of a crime of violence for which he may be prosecuted in a court of the United States – that is, Interference with Commerce by Robbery, in violation of Title 18, United States Code, Section 1951(a), as charged in Count 1 of this Indictment; all in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

**A TRUE BILL**

██████████████████

*Angela Scott*
ANGELA SCOTT
Assistant United States Attorney

*Stephen R. Wigginton*
STEPHEN R. WIGGINTON
United States Attorney

Recommended Bond: Detention

App'x 24

**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JUL 11 2014

CLERK, U.S. DISTRICT
SOUTHERN DISTRICT COURT
EAST ST. LOUIS OFFICE OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL NO. 14-30039-MJR |
| vs. | ) | |
| | ) | |
| DENZELL D. GRANT, | ) | |
| | ) | |
| Defendant. | ) | |

## AGREEMENT TO PLEAD GUILTY

The attorney for the Government and the attorney for the Defendant have engaged in discussions and have reached an agreement pursuant to Federal Rule of Criminal Procedure 11. As a result of the Plea Agreement, the Defendant intends to plead guilty in this case.

### I.

1. By pleading guilty, the Defendant fully understands that Defendant is waiving the following rights: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offense charged against the Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence; and the right to compel the attendance of witnesses.

2. The Defendant fully understands that the Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The Defendant's counsel has explained these rights and the

App'x 25

consequences of the waiver of these rights.   The Defendant fully understands that, as a result of the guilty plea, no trial will occur and that the only action remaining to be taken in this case is the imposition of the sentence.

3.    The Defendant agrees that all agreements between the parties are written and that no oral promises, inducements, representations, or threats were made to induce Defendant to enter into the Plea Agreement and Stipulation of Facts.

4.    It is further understood that the Plea Agreement is limited to the Southern District of Illinois, and cannot bind other federal, state or local prosecuting authorities.   It is further understood that the Plea Agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil proceedings directly or indirectly involving Defendant.

5.    Defendant understands that pursuant to Title 18, United States Code, Section 3013, the Court will assess a "Special Assessment" of $100 per felony count.   Defendant agrees that the full amount of the special assessment will be paid prior to or at the time of sentencing.

6.    Defendant understands that the Court will impose a term of "supervised release" to follow incarceration.   *See* 18 U.S.C. §3583; U.S.S.G. §5D1.1.

7.    Defendant understands that the Court may impose a fine, costs of incarceration, and costs of supervision.   Defendant understands that the Court may impose a fine, costs of incarceration, and costs of supervision.   The estimated costs of such incarceration or community confinement or supervision, pursuant to an advisory notice from the Administrative Office of the United States Courts pertaining to the fiscal year 2012, are, for imprisonment: $2,412.33 per month; for community confinement: $2,244.17 per month; and for supervision:

2

App'x 26

$278.95 per month.    The Defendant will cooperate fully with the United States Probation Office in its collection of information and preparation of the Presentence Report.    Said cooperation will include signing all releases, as requested.    The Defendant agrees that any Probation Officer may share any and all financial information with the United States Attorney's Office and the Defendant waives any rights Defendant may have under the Right to Financial Privacy Act. The Defendant agrees to make complete financial disclosure by truthfully filling out, at the request of the United States Attorney's Office, a Financial Statement (OMB-500).

8.    Defendant understands that Defendant is pleading guilty to felonies punishable by a term of imprisonment exceeding one year.    Therefore, no matter what sentence the Court imposes (whether probation or any term of imprisonment), Defendant will be forbidden by federal firearms laws from possessing any type of firearm in Defendant's lifetime, unless Defendant obtains relief pursuant to 18 U.S.C. §925, or other appropriate federal statute.

9.    If convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

10.    The Defendant understands and agrees that if Defendant commits any offense in violation of federal, state, or local law, or violates any condition of release, or violates any term or condition of the Plea Agreement, the Government is not bound by the provisions herein and may request that the Court impose on the Defendant any penalty allowable by law, including the filing of additional charges or sentencing enhancement notices, in addition to any sanctions that may be imposed for violation of the Court's order setting the conditions of release.    No action taken or recommendation made by the Government pursuant to this paragraph shall be grounds for the Defendant to withdraw the plea of guilty.

3

11.     The Defendant has read the Plea Agreement and has discussed it with defense counsel, understands it, and agrees to be bound by it.

**II.**

1.     The Defendant will enter a plea of guilty to the Indictment, which charges, in Count 1, Attempted Interference with Commerce by Violence, in violation of Title 18, United States Code, Section 1951(a); and, in Count 2, Use of a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).   The maximum penalty that can be imposed for a violation of Title 18, United States Code, Section 1951(a) is not more than 20 years' imprisonment, a fine up to $250,000, or both, not more than 3 years' supervised release, and a $100 special assessment.   The maximum penalty that can be imposed for a violation of Title 18, United States Code, Section 924(c)(1)(A)(iii), when the firearm is discharged during the commission of the crime of violence, is not less than 10 years' imprisonment up to life, to run consecutive to the sentence imposed on Count 1, a fine up to $250,000, or both, not more than 5 years' supervised release and a $100 special assessment.

The Government and the Defendant agree that the following constitute the essential elements of the offense of Attempted Interference with Commerce by Violence, as charged in Count 1 of the Indictment, and Defendant admits that Defendant's conduct violated these essential elements of the offense of Attempted Interference with Commerce by Violence, as charged in Count 1 the Indictment:

FIRST:     The defendant knowingly attempted to commit a robbery, as it is defined in Title 18, United States Code, Section 1951(b)(1); and

SECOND:     The attempted robbery obstructed, delayed, or affected commerce, as it is defined in Title 18, United States Code, Section 1951(b)(3).

4

App'x 28

The Government and the Defendant agree that the following constitute the essential elements of the offense of Use of a Firearm in Furtherance of a Crime of Violence, as charged in Count 2 of the Indictment, and Defendant admits that Defendant's conduct violated these essential elements of the offense of Use of a Firearm in Furtherance of a Crime of Violence, as charged in Count 2 of the Indictment, and that the firearm discharged during the use of it in furtherance of the crime of Attempted Interference of Commerce by Violence:

> FIRST:  The defendant committed the crime of Attempted Interference of Commerce by Violence, as charged in Count 1 of the Indictment;

> SECOND:  The defendant knowingly used a firearm during and in relation to such crime.

3.    **It is the Government's position that, under the Sentencing Guidelines, after all factors have been considered, Defendant will have an Adjusted Offense Level of 21, a Criminal History Category of I, a sentencing range of 37-46 months, and a fine range of $7,500 to $75,000.**

**It is the Defendant's position that, under the Sentencing Guidelines, after all factors have been considered, Defendant will have an Adjusted Offense Level of 19, a Criminal History Category of I, a sentencing range of 30-37 months, and a fine range of $6,000 to $60,000.**

**The Government and Defendant agree that, pursuant to Count 2 of the Indictment and because the firearm was discharged during the commission of the offense, the Defendant is to be sentenced to a mandatory minimum sentence of ten (10) years, and that the sentence of 10 years' imprisonment must run consecutive to any sentence imposed on Count 1 of the Indictment.**   The Government and Defendant agree that these calculations of

5

Offense Level and Criminal History are not binding on the Court, and that the Court ultimately will determine the Guideline range after receiving the Presentence Report and giving both parties the opportunity to comment thereon.   The Defendant expressly recognizes that, regardless of the Guideline range found or the sentence imposed by the Court, Defendant will not be permitted to withdraw Defendant's plea of guilty.

**The Government agrees to recommend a sentence of not more than five (5) years' imprisonment on Count 1 of the Indictment.   Based on this concession, the Defendant agrees to waive his appeal and collateral review rights, as set forth more fully in section III below.   The Defendant reserves the right to request a sentence on Count 1 that is within the advisory guideline range ultimately determined by the Court.**

The agreement by the parties is not binding upon the Court or the United States Probation Office, and the Court may impose any sentence authorized by law.   The Government specifically reserves the right to argue for, present testimony, or otherwise support the Probation Office's or the Court's findings as to Offense Level and Criminal History Category (which may be in excess of the calculations set forth herein by the Defendant and the Government). The Defendant understands that the Sentencing Guidelines are advisory only and that the Court has the discretion to sentence the Defendant anywhere up to the statutory maximum sentence after consideration of the Sentencing Guidelines, and the factors set forth in 18 U.S.C. §3553(a), including the nature and circumstances of the offenses and the criminal history and characteristics of the Defendant.

4.      **Defendant and the Government agree that the Base Offense Level in this case is 20, pursuant to U.S.S.G. §2B3.1(a).   The Defendant and the Government further agree**

6

that the specific offense characteristic applies:   the victim sustained bodily injury; thus, the Defendant's base offense level should be *increased* two (2) levels, pursuant to U.S.S.G. §2B3.1(b)(3)(A), resulting in an adjusted offense level of 22.

5.     Defendant and the Government agree that no victim-related adjustments apply to this offense.   *See* U.S.S.G. §3A1.

6.     Defendant and the Government agree that his role in the offense was such that his offense level should be neither increased (under §3B1.1) nor decreased (under §3B1.2).

7.     **It is the Government's position that the defendant has obstructed the administration of justice; thus, the Defendant's base offense level should be** *increased* **two (2) levels, pursuant to U.S.S.G. §3C1.1, resulting in an adjusted offense level of 24.**

**It is the Defendant's position that he has not obstructed the administration of justice, and therefore, his offense level should not be increased two (2) levels, leaving his adjusted offense level at 22.**

8.     **Defendant and the Government agree that Defendant has voluntarily demonstrated a recognition and affirmative acceptance of personal responsibility for this criminal conduct, and the Government will recommend a reduction of three (3) levels.**

**If the Government's position is correct, it will reduce the base offense level from 24 to an adjusted offense level of 21.**

**If the Defendant's position is correct, it will reduce the base offense level from 22 to an adjusted offense level of 19.** *See* U.S.S.G. §3E1.1.   A reduction for acceptance of responsibility is dependent on the Defendant not committing any acts or taking any

App'x 31

position prior to sentencing inconsistent with acceptance of responsibility, including falsely denying relevant conduct or committing any acts constituting obstruction of justice.

9.     Defendant and the Government submit that it appears that Defendant has amassed no criminal history points and that, therefore, the Sentencing Guideline Criminal History Category is I.

Defendant expressly recognizes that the final calculation will be determined by the Court after considering the Presentence Report, the views of the parties, and any evidence submitted before sentencing.   Defendant recognizes that, regardless of the criminal history found by the Court, Defendant will not be able to withdraw the plea of guilty.

10.     The Defendant understands that the Government will recommend the imposition of a fine.   The Defendant understands that the Government's recommendation may be based in part on the Defendant's projected earnings through the Inmate Financial Responsibility Program.

11.     The Defendant acknowledges that Title 18, United States Code, Section 3143(a)(2) requires that upon the Court's acceptance of a plea of guilty in this case, the Court must order the Defendant detained pending sentencing, in the absence of exceptional circumstances as set forth in Title 18, United States Code, Section 3145(c).   **The Defendant and Government agree that there are no exceptional circumstances that would justify the Defendant's release pending sentencing.**

### III.

1.     The Defendant understands that by pleading guilty, Defendant is waiving all appellate issues that might have been available if Defendant had exercised the right to trial. The Defendant is fully satisfied with the representation received from defense counsel.   The

8

<span style="color:red">App'x 32</span>

Defendant acknowledges that the Government has provided complete discovery compliance in this case. The Defendant has reviewed the Government's evidence and has discussed the Government's case, possible defenses and defense witnesses with defense counsel.

2.      The Defendant is aware that Title 18, Title 28, and other provisions of the United States Code afford every defendant limited rights to contest a conviction and/or sentence through appeal or collateral attack. However, in exchange for the recommendations and concessions made by the United States in this plea agreement, the Defendant knowingly and voluntarily waives his right to contest any aspect of his conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law, **except that if the sentence imposed is in excess of sixty (60) months' on Count 1, the Defendant reserves the right to appeal the reasonableness of the sentence.** The Defendant acknowledges that in the event such an appeal is taken, the Government reserves the right to fully and completely defend the sentence imposed, including any and all factual and legal findings supporting the sentence, even if the sentence imposed is more severe than that recommended by the Government.

3.      Defendant's waiver of his right to appeal or bring collateral challenges shall not apply to: 1) any subsequent change in the interpretation of the law by the United States Supreme Court or the United States Court of Appeals for the Seventh Circuit that is declared retroactive by those Courts and that renders the defendant actually innocent of the charges covered herein; and 2) appeals based upon Sentencing Guideline amendments that are made retroactive by the United States Sentencing Commission (*see* U.S.S.G. §1B1.10). The Government reserves the right to oppose such claims for relief.

App'x 33

4.      Defendant's waiver of his appeal and collateral review rights shall not affect the Government's right to appeal Defendant's sentence pursuant to Title 18, United States Code, Section 3742(b).   This is because United States Attorneys lack any right to control appeals by the United States, through plea agreements or otherwise; that right belongs to the Solicitor General.   28 C.F.R. §0.20(b).

5.      Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any Department or Agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation, any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act of 1974, Title 5, United States Code, Section 552a.

6.      Defendant waives all claims under the Hyde Amendment, Title 18, United States Code, Section 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

## IV.

No matters are in dispute.

STEPHEN R. WIGGINTON
United States Attorney

_____
DENZELL D. GRANT
Defendant

_____
ANGELA SCOTT
Assistant United States Attorney

_____
TODD M. SCHULTZ
Attorney for Defendant

Date: ___07-02-14_____

Date: ___7|11|14_____

10

App'x 34

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**FILED**

UNITED STATES OF AMERICA,       )
                                )
                    Plaintiff,  )
                                )       **JUL 11 2014**
                                )       CLERK, U.S. DISTRICT COURT
         vs.                    )       SOUTHERN DISTRICT OF ILLINOIS
                                )       EAST ST. LOUIS OFFICE
DENZELL D. GRANT,               )       CRIMINAL NO. 14-30039-MJR
                                )
                    Defendant.  )

## STIPULATION OF FACTS

The parties hereby agree and stipulate that, if this case had proceeded to trial, the Government would have proven the following beyond a reasonable doubt:

1. On October 13, 2013, Defendant Denzell D. Grant, an Army soldier visiting from Fort Hood in Killeen, Texas, developed a plan with others to rob Max's One Stop in Swansea, Illinois, within the Southern District of Illinois, while visiting Swansea with a friend. That day, Grant, wearing a mask and armed with a loaded gun, entered Max's One Stop and jumped over the counter which led to the area where the lone clerk, R.B., was sitting with the purpose to rob Max's One Stop of the United States Currency it had made from the sales of products that had moved in and were part of commerce. Grant put the gun to R.B.'s head and told R.B. to give Grant all of the money. Grant held the gun on R.B. as Grant followed R.B. to the cash register. As R.B. was giving Grant the cash from the register, R.B. grabbed the gun and the two began struggling over the gun. During the struggle, the firearm discharged, injuring R.B.'s left hand and striking Grant in the right arm.

2. After being shot, Grant tried to escape by jumping over the counter into the customer area. At the same time, a customer who knew R.B. walked into the convenience store

1

<span style="color:red">App'x 35</span>

and heard R.B. call for help.    The customer helped prevent Grant from escaping until the police arrived, sometimes by having to physically restrain Grant.    R.B. also helped prevent Grant from escaping by pointing the gun Grant bought into the store with him at Grant until the police arrived.

3.      On October 13, 2013, Max's One Stop, a convenience store, was engaged in interstate commerce, as it is all year long, by selling and purchasing products that had moved in interstate commerce.    Grant's attempted robbery of Max's One Stop obstructed, delayed, and affected commerce because Max's One Stop was closed for several hours to clean up the damage caused by Grant's attempted robbery which prevented it from selling products that it had purchased, and that had moved in and were part of commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and causing a loss in their business income.    In addition, the United States Currency that Grant attempted to take from Max's One Stop was from the sale and purchase of merchandise that had moved in and were part of commerce.

4.      On October 13, 2013, Grant knowingly attempted to commit a robbery, as defined in Title 18, United States Code, Section 1951(b)(1), at Max's One Stop by attempting to unlawfully take and obtain personal property, consisting of United States Currency, from the person of another -- that is, Grant entered Max's One Stop armed with a firearm, which he pointed at R.B., and demanded money from R.B., and by means of robbery, attempted to take and obtain personal property, consisting of United States Currency, against the will of R.B., by means of actual and threatened force, violence and fear of immediate injury to the person of R.B.

5.      During the course of Grant's attempted robbery of Max's One Stop, Grant knowingly possessed and brandished, a Taurus International, Model PT738, .380 caliber pistol, bearing serial number 40551D, which discharged during the commission of the offense, in

2

furtherance of a crime of violence for which he may be prosecuted in the United States, namely, Attempted Interference with Commerce by Robbery, in violation of Title 18, United States Code, Section 1951, as charged in Count 1 of the Indictment.   The discharge of the firearm injured R.B.'s left hand and Grant's right arm.

6.    This stipulation of facts is intended only to provide the Court with a sufficient foundation to accept the defendant's guilty plea and is not necessarily an exhaustive account of the defendant's criminal activity.

STEPHEN R. WIGGINTON
United States Attorney

_____
DENZELL D. GRANT
Defendant

_____
TODD M. SCHULTZ
Attorney for Defendant

_____
ANGELA SCOTT
Assistant United States Attorney

Date: ___07-02-14_____

Date: ___7/11/14_____

3

App'x 37