No. 17-1234

IN THE

# United States Court of Appeals

FOR THE SEVENTH CIRCUIT

**DENZELL D. GRANT,**

*Petitioner-Appellant,*

v.

**UNITED STATES OF AMERICA,**

*Respondent-Appellee.*

On Appeal from the United States District Court
for the Southern District of Illinois, No. 3:16-CV-677-MJR
(Related Case No. 3:14-CR-30039-MJR)
The Honorable Michael J. Reagan, District Judge

# BRIEF FOR APPELLEE UNITED STATES

STEVEN D. WEINHOEFT
*United States Attorney*

THOMAS E. LEGGANS
*Assistant United States Attorney*
*Office of the United States Attorney*
*402 West Main*
*Benton, Illinois 62812*
*(618) 439-3808*

No. 17-1234

IN THE

# United States Court of Appeals

FOR THE SEVENTH CIRCUIT

**DENZELL D. GRANT,**

*Petitioner-Appellant,*

v.

**UNITED STATES OF AMERICA,**

*Respondent-Appellee.*

On Appeal from the United States District Court
for the Southern District of Illinois, No. 3:16-CV-677-MJR
(Related Case No. 3:14-CR-30039-MJR)
The Honorable Michael J. Reagan, District Judge

# BRIEF FOR APPELLEE UNITED STATES

# TABLE OF CONTENTS

Table of Contents ..... i

Table of Authorities ..... iv

Statement Regarding Oral Argument ..... 1

Jurisdictional Statement ..... 2

Statement of the Issues ..... 4

Statement of the Case ..... 5

Summary of Arguments ..... 9

Argument

I. Grant's Knowing and Unconditional Guilty Plea Independently Forecloses his Present *Taylor*-based Collateral Attack. ..... 13

A. Standard of Review ..... 13

B. Grant's unconditional guilty plea forecloses his present statutory challenge to whether attempted Hobbs Act robbery qualifies under § 924(c)'s elements clause. ..... 14

II. Grant's Elements-Clause Claim is Procedurally Defaulted and Independently Untimely Because the Legal Basis for that Claim was Available Before His Conviction Became Final. ..... 20

A. Standard of Review ..... 21

B. Grant procedurally defaulted his elements-clause claim by failing to raise his available statutory challenge on direct appeal. ..... 21

C. Grant's elements-clause claim was independently untimely because *Johnson* did not newly recognize that distinct statutory claim. ..... 29

D. Grant cannot establish actual innocence because a reasonable factfinder could conclude from his own admissions that he completed Hobbs Act robbery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

III. Grant's Collateral Attack Is Independently Barred by His Express Collateral-Review Waiver. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

A. Grant Cannot Satisfy the Plea Agreement's Express Exception for a Subsequent Change in Law that is Declared Retroactive and Renders the Petitioner Actually Innocent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

1. Neither the Supreme Court nor this Court has "declared" *Taylor* retroactive, as the plea agreement expressly requires. . . . . . . . . . . . 37

2. *Taylor* does not render Grant "actually innocent" because his admitted conduct permits a finding of completed Hobbs Act robbery.38

B. Grant Waived his New Appellate Contention that when His Plea Agreement used the term "Actually Innocent" it meant Something other than the Accepted Usage "Actually Innocent" has in Collateral Review Law. . . . . . . .38

C. Even Absent Waiver, Grant's Proposed Construction Fails Because "Actually Innocent" is an Established Term of Art in the Collateral Review Context and the Plea Agreement is not Ambiguous. . . . . . . . . . . . . . . . . . . . 43

1. "Actual Innocence" Has an Established Meaning in Federal Collateral-Review Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

2. Ordinary Contract Principles Give Technical Terms and Words of Art Their Established Technical Meaning. . . . . . . . . . . . . . . . . . . . . . . . . .45

3. Grant's Construction Reads "Actually" and the Separate Innocence Requirement Out of the Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . 46

4. Grant's Reliance on the Perspective of a "Reasonable Criminal Defendant" Does Not Establish a Different Meaning. . . . . . . . . . . . .46

5. The Agreement Is Not Ambiguous, and the Rule Construing Genuine Ambiguities Against the Government Does Not Apply.. 47

D. *Hunter* Does Not Supply an Extracontractual Basis for Disregarding Grant's Waiver. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .48

1. Grant did not preserve a miscarriage-of-justice theory. . . . . . . . . . . 49

2. *Hunter* did not decide whether its rule applies to collateral-review waivers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

3. Enforcing the waiver in this case would not result in a miscarriage of justice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Conclusion ..........................................................................................................54

Certificate of Compliance ...................................................................................55

Certificate of Service ...........................................................................................56

## TABLE OF AUTHORITIES

Page(s)

Cases

*Arreola-Castillo v. United States*,
889 F.3d 378 (7th Cir. 2018) .................................................. 21

*Bailey v. United States*,
516 U.S. 137 (1995) .................................................. 26

*Bousley v. United States*,
523 U.S. 614 (1998) .................................................. passim

*Boyer v. United States*,
55 F.3d 296 (7th Cir. 1995) .................................................. 22

*Bradley v. Village of University Park*,
59 F.4th 887 (7th Cir. 2023) .................................................. 13

*Brady v. United States*,
397 U.S. 742 (1970) .................................................. 20

*Bridges v. United States*,
991 F.3d 793 (7th Cir. 2021) .................................................. 13

*Chrzanoski v. Ashcroft*,
327 F.3d 188 (2d Cir. 2003) .................................................. 24

*Class v. United States*,
583 U.S. 174 (2018) .................................................. 9, 14, 15, 18

*Cobbs v. United States*,
141 F.4th 872 (7th Cir. 2025) .................................................. passim

*Davila v. United States*,
843 F.3d 729 (7th Cir. 2016) .................................................. 9, 14

*Davis v. United States*,
817 F.3d 319 (7th Cir. 2016) ........................................ 10, 17, 29, 31

*Descamps v. United States*,
570 U.S. 254 (2013)........................................................ 23

*Dodd v. United States*,
545 U.S. 353 (2005)........................................................ 31

*Engle v. Isaac*,
456 U.S. 107 (1982)........................................................ 27

*Gladney v. Pollard*,
799 F.3d 889 (7th Cir. 2015) ............................................ 36

*Grzegorczyk v. United States*,
997 F.3d 743 (7th Cir. 2021) ............................................ passim

*Hughes v. United States*,
2023 WL 12299338 (6th Cir. 2023) ...................................... 17

*Hunter v. United States*,
146 S.Ct. 1702 (2026)........................................ 12, 48, 49, 51

*In re Motorola Securities Litigation*,
644 F.3d 511 (7th Cir. 2011) ............................................ 45

*James v. United States*,
550 U.S. 192 (2007)........................................................ 23

*Jimenez-Gonzalez v. Mukasey*,
548 F.3d 557 (7th Cir. 2008) ............................................ 24

*Johnson v. United States*,
559 U.S. 133 (2010)........................................................ 23

*Johnson v. United States*,
576 U.S. 591 (2015)........................................ 6, 21, 29, 30

*Jones v. United States*,
146 S.Ct. 2547 (2026)...................................................... 53

*Krieger v. United States*,
842 F.3d 490 (7th Cir. 2016) .................................................................................. 38

*Leocal v. Ashcroft*,
543 U.S. 1 (2004) ................................................................................................. 23

*Lund v. United States*,
913 F.3d 665, 668 (7th Cir. 2019) .......................................................................... 35

*Mathis v. United States*,
579 U.S. 500 (2016) ............................................................................................. 30

*Murray v. Carrier*,
477 U.S. 478 (1986) ............................................................................................. 28

*Perrone v. United States*,
889 F.3d 898 (7th Cir. 2018) .................................................................................. 35

*Reed v. Ross*,
468 U.S. 1 (1984) ................................................................................................. 22

*Taylor v. United States*,
495 U.S. 575 (1990) ............................................................................................. 22

*White v. United States*,
8 F.4th 547 (7th Cir. 2021) ..................................................................................... 22

*United States v. Acevedo-Rodriguez*,
178 F.4th 789 (2026) ............................................................................................ 17

*United States v. Adams*,
814 F.3d 178 (4th Cir. 2016) ........................................................................ 49, 52, 53

*United States v. Adkins*,
743 F.3d 176 (7th Cir. 2014) .................................................................................. 39

*United States v. Am. Ry. Exp. Co.*,
265 U.S. 425 (1924) ............................................................................................. 31

*United States v. Andis*,
333 F.3d 886 (8th Cir. 2003) .................................................................................. 49

*United States v. Arenal*,
500 F.3d 634 (7th Cir. 2007) .......... 5

*United States v. Artley*,
489 F.3d 813 (7th Cir. 2007) .......... 44

*United States v. Gracia-Cantu*,
302 F.3d 308 (5th Cir. 2002) .......... 24

*United States v. Grusd*,
164 F.4th 635 (7th Cir. 2026) .......... 39, 41

*United States v. Hahn*,
359 F.3d 1315 (10th Cir. 2004) .......... 49

*United States v. Hathaway*,
882 F.3d 638 (7th Cir. 2018) .......... 41

*United States v. Jones*,
2026 WL 1347507 (3d Cir. 2026) .......... 17

*United States v. Kelly*,
314 F.3d 908 (7th Cir. 2003) .......... 5

*United States v. Khattak*,
273 F.3d 557 (3d Cir. 2001) .......... 49

*United States v. Lezine*,
166 F.3d 895 (7th Cir. 1999) .......... 45

*United States v. Litos*,
847 F.3d 906 (7th Cir. 2017) .......... 52

*United States v. Lomax*,
51 F.4th 222 (7th Cir. 2022) .......... 42

*United States v. McKay*,
176 F.4th 537 (7th Cir. 2026) .......... 13

*United States v. McKinney*,
60 F.4th 188 (4th Cir. 2023) .......... 52, 53

*United States v. Muratovic*,
719 F.3d 809 (7th Cir. 2013) .......... 25

*United States v. Olano*,
507 U.S. 725 (1993) .......... 39, 42

*United States v. Page*,
123 F.4th 851 (7th Cir. 2024) .......... 42

*United States v. Phillips*,
645 F.3d 859 (7th Cir. 2011) .......... 14

*United States v. Roper*,
2023 WL 3376689 (6th Cir. 2023) .......... 17

*United States v. Ruth*,
966 F.3d 642 (7th Cir. 2020) .......... 24

*United States v. St. Hubert*,
909 F.3d 335 (11th Cir. 2018) .......... 17

*United States v. Sweeney*,
833 F. App'x 395 (4th Cir. 2021) .......... 52

*United States v. Taylor*,
596 U.S. 845 (2022) .......... passim

*United States v. Terzakis*,
854 F.3d 951 (7th Cir. 2017) .......... 31

*United States v. Wheeler*,
857 F.3d 742 (7th Cir. 2017) .......... 9, 15

*United States v. Williams*,
168 F.4th 1051 (7th Cir. 2026) .......... 15, 16

*White v. United States*,
8 F.4th 547 (7th Cir. 2021) .......... 24

*Yee v. City of Escondido*,
503 U.S. 519 (1992) .......... 13

Statutes

18 U.S.C. § 16(a) .... 23

18 U.S.C. § 924(c) .... passim

18 U.S.C. § 3231 .... 2

18 U.S.C. §§ 1951(a) .... 2

28 U.S.C. § 2255 .... passim

28 U.S.C. § 2255(f)(3) .... 2

28 U.S.C. §§ 1291 .... 3, 5

Section 2255(f)(1) .... 29

U.S.C. § 1951(b)(1) .... 33

U.S.C. § 2255 .... 6

§ 924(c)(3)(A) .... 26

Rules

Fed. R. App. P. 4(a)(1)(B)(i) .... 3

Fed. R. App. P. 4(b)(1)(A) .... 29

Fed. R. App. P. 32(a)(5) .... 55

Fed. R. App. P. 32(a)(7)(B)(i) .... 55

## STATEMENT REGARDING ORAL ARGUMENT

The United States respectfully suggests that the issues presented in this appeal can be resolved on the record and that oral argument would not substantially benefit this Honorable Court.

## JURISDICTIONAL STATEMENT

The Petitioner-Appellant's ("Petitioner" or "Grant") jurisdictional statement is incomplete and incorrect.

On July 11, 2014, Petitioner-Appellant Denzell Grant pleaded guilty to an indictment charging him with violations of 18 U.S.C. §§ 1951(a) (Count 1) and 924(c) (Count 2). Crim. Docs. 1, 24.[1] The district court had jurisdiction over the criminal prosecution under 18 U.S.C. § 3231. On October 24, 2014, the district court sentenced Grant to 30 months' imprisonment on Count 1 and a consecutive 150 months' imprisonment on Count 2, for a total term of 180 months. Crim. Docs. 29, 31. Grant did not appeal his conviction or sentence.

On June 21, 2016, Grant filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Civ. Doc. 1. The district court had jurisdiction over that proceeding under 28 U.S.C. § 2255. Although Grant's amended jurisdictional statement asserts that his § 2255 motion was timely under 28 U.S.C. § 2255(f)(3), the United States does not concede that the claims Grant now presents on appeal satisfy § 2255(f)'s limitations requirements.

On January 11, 2017, the district court issued a written order denying Grant's § 2255 motion and declining to issue a certificate of appealability. Civ. Doc. 10; App'x 1–21.

[1] Documents from Grant's criminal case, No. 3:14-cr-30039 (S.D. Ill.), are marked as "Crim. Doc. __." Documents from Grant's habeas case, No. 3:16-cv-00677 (S.D. Ill.) are marked as "Civ. Doc. __." Petitioner-Appellant's Brief is designated "Pet. Br. at _____." The Appendix to Petitioner's Brief is designated "App'x at ______".

The district court entered final judgment on January 12, 2017, disposing of all claims. Civ. Doc. 11; App'x at 22.

Grant filed a notice of appeal on February 3, 2017, within 60 days after entry of judgment. Civ. Doc. 13; see Fed. R. App. P. 4(a)(1)(B)(i). On June 13, 2017, this Court granted a certificate of appealability. 7th Cir. Dkt. 9. This Court has jurisdiction over this appeal under 28 U.S.C. §§ 1291, 2253(a), (c), and 2255(d).

## STATEMENT OF THE ISSUES

1. Whether Grant's knowing and unconditional guilty plea forecloses his present collateral challenge to his § 924(c) conviction, where his surviving *Taylor*-based claim presents a statutory elements-clause argument rather than a constitutional challenge to the Government's authority to prosecute his admitted conduct.

2. Whether Grant's elements-clause claim is procedurally defaulted and independently untimely, where the legal basis for challenging whether attempted Hobbs Act robbery satisfies § 924(c)(3)(A) was available before Grant's conviction became final in 2014, and Grant did not assert his collateral challenge under § 2255 until 2016.

3. Whether Grant can establish the actual innocence necessary to overcome his procedural default where his stipulated and undisputed facts permit a reasonable factfinder to conclude that Grant completed a Hobbs Act robbery when Grant held a convenience store clerk at gunpoint and obtained the store's cash.

4. Whether Grant's collateral challenge is independently barred by his plea agreement, which excepts from the collateral-review waiver only a subsequent change in law by the Supreme Court or this Court that is declared retroactive by those courts and renders Grant "actually innocent," when neither court has declared *Taylor* retroactive and Grant cannot establish factual innocence.

5. Whether Grant may avoid his collateral-review waiver by arguing for the first time on appeal that "actually innocent" means legal rather than factual innocence, or alternatively by invoking *Hunter's* miscarriage-of-justice exception, when Grant did not preserve either theory below and his negotiated waiver already contains an express actual-innocence exception for subsequent changes in law.

**STATEMENT OF THE CASE**

In October 2013, Grant, wearing a mask and armed with a loaded gun, entered a convenience store in Swansea, Illinois. Stip. Of Facts, Crim. Doc. 23 at 1. Grant jumped over the counter into the area where the lone clerk, R.B., was sitting near the store's cash register. *Id.* Grant put the gun to R.B.'s head and ordered him to give Grant all the money. *Id.* Grant kept the gun trained on R.B. while following him to the cash register. *Id.* The stipulated facts state that, as R.B. "was giving Grant the cash," R.B. grabbed the gun. *Id.* The presentence report states more definitively: "After giving the male the money, R.B. grabbed the gun." PSR, Crim. Doc. 27 ¶ 14.[2] Grant and R.B. then struggled for control of the pistol. The gun discharged, striking Grant in the arm and injuring R.B.'s left hand. Stip. of Facts, Crim. Doc. 23 at 1; PSR, Crim. Doc. 27 ¶¶ 14–15. Grant was apprehended before leaving the store. Stip. of Facts, Crim. Doc. 23 at 1.

On February 20, 2014, a grand jury charged Grant in a two-count indictment with Hobbs Act robbery and possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). Crim. Doc. 1. On July 11, 2014, Grant pleaded guilty to both counts pursuant to a written plea agreement. Crim. Doc. 22. The Government agreed to recommend no more than five years' imprisonment on the Hobbs Act count. *Id.* at 6. In

[2] The Government recognizes that the contents of PSRs are generally confidential. See *United States v. Kelly*, 314 F.3d 908, 913 (7th Cir. 2003). In the present case, however, it is appropriate for this Court to consider all the information before the district court to determine an issue like actual innocence, including "information contained in the PSR to establish a factual basis before entry of judgment and imposition of sentence." *See United States v. Arenal*, 500 F.3d 634, 638 (7th Cir. 2007).

exchange, Grant agreed, among other things, to waive his appeal and collateral-review rights subject to specified exceptions. *Id.* at 6, 8–9.

The agreement expressly tied Grant's waiver to the Government's sentencing concession: "Based on this concession, the Defendant agrees to waive his appeal and collateral review rights, as set forth more fully in section III below." *Id.* at 6. One exception provided that the waiver would not apply to "any subsequent change in the interpretation of the law by the United States Supreme Court or the United States Court of Appeals for the Seventh Circuit that is declared retroactive by those Courts and that renders the defendant actually innocent of the charges covered herein." *Id.* at 9.

On October 24, 2014, the district court sentenced Grant to 30 months' imprisonment on Count 1 and a consecutive 150 months on Count 2, followed by concurrent three-year terms of supervised release. Crim. Docs. 29, 31. Grant did not appeal.

On June 21, 2016, Grant filed a pro se motion under 28 U.S.C. § 2255. Civ. Doc. 1. Relying on *Johnson v. United States*, 576 U.S. 591 (2015), Grant challenged his § 924(c) conviction under the statute's residual clause and its separate force, or elements, clause. Civ. Doc. 1. The district court appointed the Federal Public Defender to assist Grant with his petition. Civ. Doc. 2.

Appointed counsel thereafter advised the court that there was "no non-frivolous basis for the relief sought in Petitioner's pro se § 2255 petition." Civ. Doc. 5 at 1. Counsel recognized that Grant's elements-clause theory was analytically distinct from his residual clause challenge for timeliness purposes. Counsel described the elements clause

timeliness issue as presenting "[a] more difficult analysis." *Id.* at 4–5. Counsel also acknowledged that "the plain language of [Grant's collateral review] waiver seems to preclude consideration of Mr. Grant's § 2255 claims on the merits." *Id.* at 5. Rather than argue that the agreement's express actual-innocence exception applied, counsel asserted that the constitutional vagueness component of Grant's claim should permit review notwithstanding the waiver. *Id.* at 5–6.

Grant later personally adopted his counsel's treatment of the waiver provision. In his pro se response to the Government's filing, Grant stated that counsel had "fully addressed" the waiver argument, that it "need not be made again," and that he "stands by that argument." Civ. Doc. 9 at 1–2. Grant did not argue that "actually innocent" in the agreement meant legal rather than factual innocence.

The Government opposed relief. It argued that Grant's knowing and voluntary collateral-review waiver barred his motion. It also argued that Hobbs Act robbery remained a crime of violence under the § 924(c)(3)(A) elements clause. Civ. Doc. 8 at 3-9. The Government also separately argued that Grant's elements-clause claim was defaulted and untimely. *Id.* at 8-13.

On January 11, 2017, the district court denied Grant's § 2255 motion. App'x at 1-21; Civ. Doc. 10. It concluded that Grant's collateral-review waiver barred relief and that Hobbs Act robbery remained a crime of violence under § 924(c)(3)'s elements clause. *Id.* at 6–8, 10. The court declined to issue a certificate of appealability. *Id.* at 20–21. Grant filed a notice of appeal on February 3, 2017.

On June 13, 2017, this Court granted a certificate of appealability addressing "whether Grant was convicted of an uncompleted attempted Hobbs Act robbery and whether an uncompleted attempted Hobbs Act robbery is a crime of violence under § 924(c)(3)'s elements clause." 7th Cir. Doc. No. 9. The Court stayed briefing pending related cases and later, on November 22, 2021, stayed briefing pending the Supreme Court's decision in *United States v. Taylor*. 7th Cir. Doc. No. 18.

On June 21, 2022, the Supreme Court held in *Taylor* that attempted Hobbs Act robbery is not a crime of violence under § 924(c)(3)(A)'s elements clause. *United States v. Taylor*, 596 U.S. 845 (2022). The parties filed post-*Taylor* position statements on July 18, 2022. 7th Cir. Doc. Nos. 24, 26. On May 6, 2026, this Court appointed counsel for Grant and ordered briefing to proceed. 7th Cir. Doc. No. 39.

## SUMMARY OF ARGUMENTS

Grant seeks § 2255 relief under *Taylor*, 596 U.S. 845 (2022), contending that his § 924(c) conviction cannot stand because the indictment alleged attempted Hobbs Act robbery. *Taylor* established that attempted Hobbs Act robbery is not categorically a crime of violence under § 924(c)(3)(A), and the Government believes that *Taylor* should apply retroactively on collateral review. Neither *Taylor's* merits holding not its retroactive application, however, eliminates the independent barriers to collateral relief that Grant created by pleading guilty, failing to pursue an available elements-clause challenge on direct review, and expressly waiving collateral review in his plea agreement. The district court's denial of Grant's § 2255 motion should be affirmed on any of those grounds.

First, Grant's knowing and unconditional guilty plea independently forecloses his present statutory challenge. A valid guilty plea relinquishes antecedent non-jurisdictional challenges, and this Court has repeatedly applied that rule to petitioners who challenged their § 924(c) conviction on the basis that their predicate offense did not satisfy the elements clause. *See Davila v. United States*, 843 F.3d 729 (7th Cir. 2016); *United States v. Wheeler*, 857 F.3d 742 (7th Cir. 2017); *Grzegorczyk v. United States*, 997 F.3d 743 (7th Cir. 2021). The Supreme Court's decision in *Class v. United States*, 583 U.S. 174 (2018), does not preserve Grant's claim because he does not contend the Government lacked constitutional authority to prosecute his admitted conduct under § 924(c). Grant's surviving *Taylo*r claim therefore presents a question of statutory construction and falls under *Grzegorczyk,* which holds that this type of statutory construction claim under § 924(c) can be waived by an unconditional guilty plea. The plea agreement's separate

exception to Grant's appeal and collateral-review waiver does not alter that consequence because an exception from a contractual waiver does not eliminate independent limitations on the claims a defendant may pursue.

Second, even if Grant's guilty plea did not foreclose relief, his elements-clause claim is procedurally defaulted and was independently untimely when he first asserted it in 2016. Grant took no direct appeal. The legal basis for arguing that attempted Hobbs Act robbery fails as a predicate under § 924(c)(3)(A) was reasonably available before Grant's conviction became final. The categorical approach, the elements-focused statutory text, Supreme Court decisions applying that methodology, and this Court's own pre-2014 treatment of inchoate Hobbs Act robbery offenses supplied the tools necessary to make the argument that *Taylor* later accepted. *Taylo*r vindicated that statutory argument, but it did not create it. Grant therefore cannot establish cause by relying on the later arrival of *Johnson* or *Taylor*, and perceived futility does not excuse his failure to raise an available claim.

The same chronology defeats timeliness. Section 2255(f) applies claim by claim. Grant's *Johnson*-based residual-clause theory could not make his separate statutory elements-clause theory timely, and a petitioner may not use one timely claim to revive another that was already untimely. *See Davis v. United States*, 817 F.3d 319, 327–28 (7th Cir. 2016). Because the elements-clause theory was available when Grant's conviction became final, § 2255(f)(1)'s one-year period governed that claim and expired before he filed his motion in June 2016. *Taylor's* later merits ruling does not retroactively cure that defect.

Grant also cannot overcome procedural default through actual innocence. *Bousley v. United States*, 523 U.S. 614 (1998), and *Cobbs v. United States*, 141 F.4th 872 (7th Cir. 2025), require factual innocence, not merely legal insufficiency under a later decision. Grant's own stipulated facts and the undisputed presentence report would permit a reasonable factfinder to conclude that he completed Hobbs Act robbery. Those factual sources provide that Grant entered a convenience store, held the clerk at gunpoint, demanded the store's money, followed the clerk to the cash register, and obtained the store's cash before an ensuing struggle for the gun. Because Grant bears the burden of showing that no reasonable juror could find him guilty, those admitted facts defeat the actual-innocence gateway.

Third, Grant's express collateral-review waiver supplies an additional and independent basis for affirmance. The negotiated exception applies only when a subsequent change in law by the Supreme Court or this Court is declared retroactive by those courts and renders Grant "actually innocent." Although the Government agrees that *Taylor* applies retroactively, neither the Supreme Court nor this Court has made the judicial declaration the agreement expressly requires. More fundamentally, *Taylor* does not render Grant actually innocent because he cannot establish factual innocence under *Bousley* and *Cobbs.*

Grant's new contention that the words "actually innocent" in his plea agreement mean legal rather than factual innocence fares no better. Grant did not make that argument below. His appointed counsel instead acknowledged that the waiver's plain language appeared to bar relief and advanced a different due-process theory for avoiding

it, which Grant personally adopted. The new interpretation was therefore waived or, at minimum, forfeited. It also fails on the merits. "Actual innocence" is an established term of art in federal collateral-review law, and its use in a plea provision expressly addressing collateral challenges, intervening changes in law, and retroactivity carries its established meaning of factual innocence. Grant's contrary reading would largely collapse the agreement's separate actual-innocence requirement into its requirement of a retroactive change in law.

Finally, *Hunter v. United States*, 146 S.Ct. 1702 (2026), does not authorize disregarding Grant's bargain in this case. *Hunter* addressed direct-appeal waivers and reserved its miscarriage-of-justice exception for extreme and egregious cases. Grant did not preserve that theory below, and *Hunter* did not decide whether its rule extends to collateral-review waivers. Even assuming it does, enforcement here creates no miscarriage of justice. Grant's agreement already contains an express actual-innocence safety valve for subsequent changes in law, unlike the waivers at issue in cases cited in Petitioner's brief such as *Adams* and *McKinne*y. Grant cannot invoke a generalized miscarriage-of-justice doctrine to enlarge the waiver exception that he negotiated or to avoid its requirements, particularly when his own admissions permit a finding that he completed Hobbs Act robbery. The Court should affirm the district court's denial of § 2255 relief.

## ARGUMENTS

### I. Grant's Knowing and Unconditional Guilty Plea Independently Forecloses his Present *Taylor*-based Collateral Attack.

#### A. Standard of Review

This Court reviews the denial of § 2255 relief de novo as to legal conclusions and for clear error as to factual findings. *See Bridges v. United States*, 991 F.3d 793, 799 (7th Cir. 2021). Whether Grant's undisputed guilty plea forecloses his present statutory challenge is a question of law and therefore receives de novo review.

The Government may defend the judgment on any alternative legal ground supported by the record, even if the district court did not rely on that ground. *See Yee v. City of Escondido*, 503 U.S. 519, 534 (1992); *United States v. McKay*, 176 F.4th 537, 542–43 (7th Cir. 2026). Although the Government did not separately label this precise guilty-plea ground in the district court, it placed Grant's guilty plea, Rule 11 colloquy, and the knowing and voluntary nature of the plea directly at issue in arguing that collateral relief was barred. See Civ. Doc. 8 at 3–7. The present contention is a further legal consequence of that same plea, requires no additional fact-finding, and supplies an alternative basis for affirmance.

In any event, Grant has waived any contention that the Government's guilty-plea argument is itself forfeited or waived. An appellant waives an argument by failing to raise it in his opening brief. *Bradley v. Village of University Park*, 59 F.4th 887, 897 (7th Cir. 2023). Grant's opening brief squarely addresses the guilty-plea argument on the merits, invoking *Class*, attempting to distinguish *Davila* and *Grzegorczyk*, and relying on other

authorities to contend that his guilty plea does not bar relief. Pet. Br. at 29–34. He never argues that the Government failed to preserve the issue below. Furthermore, there is no unfairness in considering this issue because it presents a pure question of law on an undisputed plea record, Grant had notice of the Government's position, and he has had an opportunity to fully brief its merits.

**B. Grant's unconditional guilty plea forecloses his present statutory challenge to whether attempted Hobbs Act robbery qualifies under § 924(c)'s elements clause.**

The Supreme Court's assessment of the vitality of a collateral attack following a guilty plea is grim. "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Bousley*, 523 U.S. at 621. A valid guilty plea ordinarily relinquishes antecedent non-jurisdictional challenges, subject to the narrow category of claims that challenge the Government's constitutional authority to prosecute the defendant notwithstanding his admitted conduct. *Class*, 583 U.S. at 179–82; *United States v. Phillips*, 645 F.3d 859, 862–63 (7th Cir. 2011). A claim that the admitted conduct does not satisfy a statutory element of the offense does not fall within that narrow exception. *Grzegorczyk*, 997 F.3d at 748. Grant does not contend that his plea was involuntary or unknowing when entered. Accordingly, his guilty plea in this case precludes his collateral attack.

This Court has repeatedly applied the above rule to the same kind of § 924(c) challenge Grant now advances on appeal. In *Davila*, 843 F.3d 729, a § 2255 petitioner who had pleaded guilty to a § 924(c) offense sought relief after *Johnson* on the ground that his predicate offense no longer qualified as a crime of violence. This Court held that the guilty

plea foreclosed the collateral attack, absent a defect in subject-matter jurisdiction or a constitutional problem with the very institution of the criminal charge. *Id.* at 731–33. In *Wheeler*, 857 F.3d at 744-45, this Court likewise held that a defendant who pleaded guilty to a § 924(c) charge could not later reopen the conviction by arguing that the predicate failed to qualify as a crime of violence. This Court rendered that holding because an unconditional guilty plea waives a contention that the indictment failed to state an offense. *Id.*

Grant argues that *Class,* 583 U.S. 174, allows him to pursue collateral relief in this case despite his guilty plea. In *Wheeler* this Court predicted that a petitioner's reliance on a then-anticipated decision in *Class* would likely prove futile, *Wheeler*, 857 F.3d at 745. This Court's decision in *Grzegorczyk*, 997 F.3d at 746-49, validated *Wheeler's* prediction. There, as here, Grzegorczyk pleaded guilty to a § 924(c) offense and later argued on collateral review that the predicate did not satisfy § 924(c)(3)(A)'s elements clause. This Court held that the guilty plea waived the challenge. *Id.* at 746–49. This Court noted that whether a predicate offense qualifies under the elements clause is "an issue of statutory construction, not a claim of constitutional immunity from prosecution," and "an unconditional plea of guilty is sufficient to waive a defendant's right to contest the proper interpretation of the statute of conviction." *Id.* at 748.

This Court reaffirmed the *Grzegorczyk* distinction recently in *United States v. Williams*, 168 F.4th 1051 (7th Cir. 2026). In *Williams,* this Court explained that a defendant's contention that his predicate felony was not a § 924(c) "crime of violence" is an attack on

"one component of the definition of 'crime of violence' in § 924(c)" and thus an issue of statutory interpretation. *Id*. at 1055.

Grant's *Taylor* claim is indistinguishable from those advanced and rejected in *Grzegorczyk* and *Williams*. He does not contend that § 924(c) is unconstitutional or that the Government was constitutionally forbidden to prosecute his admitted conduct. He contends instead that attempted Hobbs Act robbery does not satisfy the statutory definition in § 924(c)(3)(A). *Taylor* resolves that question of statutory classification in Grant's favor on the merits. *Taylor*, 596 U.S. at 850–52. *Taylor* does not, however, undo the antecedent consequence of Grant's guilty plea according to *Grzegorczyk* and *Williams*.

Grant attempts to avoid *Grzegorczyk* and *Williams* by tethering his statutory *Taylor*-based argument to his earlier *Johnson*-based constitutional attack on § 924(c)'s residual clause which *Davis,* 588 U.S. 445 later invalidated. Pet. Br. at 30-31. In *Davis,* the Supreme Court held that § 924(c)'s residual clause was unconstitutionally vague. The Government does not dispute that *Davis* was a constitutional ruling invalidating § 924(c)'s residual clause on vagueness grounds. Grant cannot, however, use that constitutional ruling to transform his separate *Taylor*-based elements-clause contention into a constitutional claim. While the residual clause issue was resolved definitively in his favor, the separate statutory *Taylor* claim remains to be resolved. *See Grzegorczyk,* 997 F.3d at 746. ("Following *Davis,* a § 924(c) conviction based on a crime of violence may rely only on the statute's '"elements clause'").

In any event, *Davis'* ruling on the residual clause does not establish that Grant's *Taylor*-based elements-clause claim survives his plea. A § 2255 petitioner cannot "tack"

an invalid claim to a valid claim to circumvent procedural bars. *See, e.g.*, *Davis v. United States*, 817 F.3d 319, 327-28 (7th Cir. 2016). That is especially true where, as here, the tethered claim is no longer the subject of this appeal. This Court's certificate of appealability and its subsequent order regarding it have made clear that the issue before this Court is the Petitioner's potential elements clause claim under *Taylor*. *See* 7th Cir. Docs. 9 and 18. Thus, Grant's present entitlement to relief at this stage of the litigation depends entirely on *Taylor's* statutory holding that attempted Hobbs Act robbery does not satisfy an element of § 924(c)(3)(A). *Grzegorczyk* addressed that precise distinction after *Class* and held that whether a predicate qualifies under the elements clause is "an issue of statutory construction, not a claim of constitutional immunity from prosecution." *Grzegorczyk*, 997 F.3d at 748.

Additionally, Grant's reliance on the Eleventh Circuit's decision in *United States v. St. Hubert,* 909 F.3d 335 (11th Cir. 2018), cannot overcome this Circuit's controlling law. Whatever *St. Hubert* understood *Class* to suggest in the context of the precedent existing in the 11th Circuit, *Grzegorczyk* and *Williams* definitively decided the question in this Circuit and held that an unconditional guilty plea waives Grant's § 924(c) *Taylor*-based statutory-construction challenge.

Moreover, the post-*Taylor* dispositions from the First, Third, and Sixth Circuits that Grant cites do not establish a contrary rule. Grant points to *United States v. Acevedo-Rodriguez,* 178 F.4th 789 (2026); *United States v. Jones,* 2026 WL 1347507 (3d Cir. 2026) ("Not Precedential"); *United States v. Roper,* 2023 WL 3376689 (6th Cir. 2023) and *Hughes v. United States,* 2023 WL 12299338 (6th Cir. 2023) because the defendants there had pleaded guilty

and their § 924(c) convictions were later vacated or remanded after *Taylor.* Pet. Br. at 32–33. None of those cases is a merits decision on the issue of whether a defendant who pleads guilty waives a subsequent statutory elements-based challenge to his conviction. There is no analysis and no holding in any of those cases rejecting *Grzegorczyk's* rule that an unconditional plea relinquishes an elements-clause statutory-construction challenge. Those decisions therefore do not dispute, let alone displace, this Court's decisions in *Grzegorczyk* and *Williams.*

Grant also notes that *Cobbs* considered a post-*Taylor* challenge to a § 924(c) conviction without identifying the guilty plea as a separate barrier. Pet. Br. at 32 n.9. *Cobbs* did not, however, hold that a *Taylor*-based statutory claim automatically survives a guilty plea. This Court resolved *Cobbs* through procedural default and the actual-innocence gateway, and silence in *Cobbs* about a distinct ground not decided cannot overrule *Grzegorczyk,* which squarely held that an unconditional guilty plea waives a § 924(c) elements-clause statutory challenge. *See Grzegorczyk,* 997 F.3d at 747–49. *Williams* has since reaffirmed that distinction after *Class. Cobbs'* silence therefore provides no basis for treating the legal implications of Grant's guilty plea differently than the outcome mandated in *Grzegorczyk* and *Williams.*

Thus, contrary to Petitioner's arguments in his brief, *Class* does not change the import of his guilty plea in this case. *Class* held only that a guilty plea, standing alone, does not bar a direct constitutional challenge to the statute of conviction where the defendant accepts the admitted facts yet contends that the Government lacked constitutional power to criminalize that conduct. *Class,* 583 U.S. at 181–85. *Grzegorczy*k

expressly rejected an attempt to extend *Class* to a § 924(c) elements-clause argument. *Grzegorczyk*, 997 F.3d at 747–49; *see also Oliver*, 951 F.3d at 846. ("*Class* is not as sweeping as [petitioners] contend."). Grant's surviving claim before this Court is the same type of statutory claim that *Grzegorczyk* says a guilty plea waives, not the constitutional-immunity claim that *Class* preserves.

Grant also argues that if this Court enforces the standard rule that a guilty plea waives all non-jurisdictional and non-constitutional claims it would render the language of his plea waiver exception "surplusage" or "misleading." Pet. Br. at 33. There is, however, no conflict between the ordinary consequences of Grant's guilty plea and the plea agreement's separate exception permitting specified collateral challenges based on a limited category of later changes in law. The contractual exception in Grant's plea agreement defines the circumstances in which the appeal-and-collateral-review waiver does not apply. The waiver exception language does not purport to erase independent procedural or substantive limitations on whatever claim remains. A defendant who falls within the contractual exception is freed from that contractual bar, but he must still possess a claim that survives his guilty plea, satisfies procedural-default rules, is timely, and otherwise meets § 2255's requirements. Reading the exception according to its terms therefore gives it full effect without converting it into an affirmative promise that every later change in law necessarily entitles Grant to collateral relief.

Finally, the later arrival of *Taylor* does not invalidate Grant's plea. A plea that was voluntary and intelligent under then-applicable law does not become vulnerable merely because later decisions reveal that it rested on a legal premise the defendant could have

contested. *Brady v. United States*, 397 U.S. 742, 757 (1970); *Grzegorczyk*, 997 F.3d at 749. Grant chose to plead guilty rather than litigate whether the charged predicate satisfied § 924(c), and his plea admitted the § 924(c) offense. The later decision in *Taylor* does not restore a statutory-sufficiency challenge relinquished by that plea.

Grant's knowing and unconditional guilty plea itself forecloses this collateral attack. This Court therefore can affirm without reaching the separate questions whether Grant procedurally defaulted his elements-clause claim or whether the written collateral-review waiver independently bars relief.

## II. Grant's Elements-Clause Claim is Procedurally Defaulted and Independently Untimely Because the Legal Basis for that Claim was Available Before His Conviction Became Final.

Even if Grant's guilty plea did not independently foreclose collateral relief for his statutory claim, his elements-clause claim fails for two additional and independent reasons. First, he procedurally defaulted the claim by taking no direct appeal. Second, the claim was already untimely when Grant asserted it in 2016.

Grant's contrary arguments in his brief collapse three distinct limitations on collateral relief—waiver, procedural default, and timeliness. The timeliness and default issues the parties recognized below are pertinent here because the legal basis for an elements-clause challenge existed before Grant's conviction became final and he accordingly cannot establish "cause" for his procedural default. Grant also cannot demonstrate that his petition was timely for that same reason. The Supreme Court later vindicated the elements-based argument in 2022 in *Taylor,* but it did not create the argument. The argument was available years before *Taylor* was decided.

**A. Standard of Review**

The government preserved its procedural default and timeliness arguments below. Civ. Doc. 8 at 8-9. Grant also addresses those claims on the merits in his brief. Pet. Br. at 48-58. When reviewing the denial of a § 2255 motion, this Court thus reviews the district court's legal conclusions de novo and its factual findings for clear error. *Cobbs*, 141 F.4th at 877. That standard governs the procedural-default questions presented here. *See Cobbs*, 141 F.4th at 876–77. The same general standard applies to § 2255(f) limitations questions. *See Arreola-Castillo v. United States*, 889 F.3d 378, 381–82 (7th Cir. 2018).

**B. Grant procedurally defaulted his elements-clause claim by failing to raise his available statutory challenge on direct appeal.**

A § 2255 motion is not a substitute for direct appeal. *Bousley*, 523 U.S. at 621–22. A federal prisoner who could have raised a claim on direct appeal but did not, may obtain collateral review only by showing cause and actual prejudice or actual innocence. *Id.* at 622. Grant took no direct appeal in this case.

Petitioner cites as "cause" for his procedural default the fact that the Supreme Court had not yet decided *Johnson,* 576 U.S. 591, until shortly before he filed his § 2255 motion. *Johnson* decided that the residual clause in the Armed Career Criminal Act ("ACCA") was void for vagueness. However, as noted above, Grant's remaining claim before this Court is not a *Johnson*-based residual-clause claim. *See supra* at 16. Neither he nor the Government is claiming his § 924(c) conviction is potentially valid under 924(c)'s residual clause, which *Johnson* cast doubt upon, and *Davis* later invalidated on constitutional vagueness grounds. Instead, the only claim that is now before this Court is Grant's argument that attempted Hobbs Act robbery cannot be a predicate under the

separate "element of force" clause of 924(c), which the Supreme Court ultimately accepted in *United States v. Taylor*.

The relevant "cause" question for this appeal then is whether the legal basis for the argument the Supreme Court adopted in *Taylor* was reasonably available to *Grant* at the time when he could have appealed. *See Reed v. Ross*, 468 U.S. 1, 16 (1984); *Bousley*, 523 U.S. at 622. A later decision may establish cause on novelty grounds only when it creates a claim "so novel that its legal basis is not reasonably available to counsel." *Bousley*, 523 U.S. at 622 (quoting *Reed*, 468 U.S. at 16). The Seventh Circuit draws an important distinction between a genuinely unavailable legal theory and one whose "basis and authority have long been in existence, but which has only recently been seized upon." *Boyer v. United States*, 55 F.3d 296, 299 (7th Cir. 1995). The latter does not establish cause. *Id.* Furthermore, a claim does not become "unavailable" to a petitioner seeking collateral review merely because it was unlikely to succeed. *Bousley*, 523 U.S. at 623.

Here Grant's *Taylor* argument was available to him before he was sentenced or even pled guilty in this case. Section 924(c)(3)(A) has long defined a "crime of violence" as an offense that "has as an element" the use, attempted use, or threatened use of physical force. As will be demonstrated below, by the date of Grant's sentencing in October 2014, the Supreme Court supplied the analytical tools necessary to ask whether the statutory elements of an offense satisfied such a definition. This Court had also recognized the potential legal theory.

The Supreme Court first established the categorical approach in *Taylor v. United States*, 495 U.S. 575, 600–02 (1990) ("*Taylor 1990*"). *Taylor 1990* directed lower courts to

statutory definitions rather than the defendant's particular conduct when resolving whether a particular offense was a crime of violence. Later in *Leocal v. Ashcroft*, 543 U.S. 1, 7–11 (2004), the Court construed materially identical crime-of-violence language in 18 U.S.C. § 16(a) and held that the language "requires us to look at the elements and the nature of the conviction rather than to the particular facts relating to petitioner's crime." *Id.* at 7. Thereafter, in *Johnson v. United States*, 559 U.S. 133, 138–40 (2010) (*"Johnson 2010")*, the Court construed the Armed Career Criminal Act's ("ACCA") materially similar elements clause and defined the "physical force" the predicate requires. Furthermore, *Descamps v. United States*, 570 U.S. 254, 257, 260–64 (2013), decided more than a year before Grant was sentenced, again emphasized that the required categorical analysis compares statutory elements rather than underlying conduct. It also noted that the categorical approach traced its lineage to *Taylor 1990. Id.* at 260-61. These cases all reflected the same methodology *Taylor* later applied.

Furthermore, application of the categorical analysis to an attempt offense was not a novel proposition by the time Grant could have sought direct review of his conviction in 2014. In *James v. United States*, 550 U.S. 192, 197–209 (2007), the defendant argued that attempted burglary did not qualify as a violent felony under the ACCA, and the Supreme Court analyzed the attempt offense categorically. Although *James* arose under the ACCA's then-valid residual clause, it demonstrates that years before Grant's conviction litigants were comparing the legal requirements of attempt offenses with federal statutory violent-crime definitions.

Other circuit courts likewise had long entertained categorical elements-clause arguments. *See Chrzanoski v. Ashcroft*, 327 F.3d 188, 192–97 (2d Cir. 2003); *United States v. Gracia-Cantu*, 302 F.3d 308, 311–12 (5th Cir. 2002). Additionally, this Court was applying categorical analysis to § 16's crime-of-violence framework years before Grant's 2014 case. *See Jimenez-Gonzalez v. Mukasey*, 548 F.3d 557, 561–64 (7th Cir. 2008). Thus, by the time Grant's conviction became final (in fact, even before he pled guilty or was even charged), arguments that an offense failed a statutory force clause because its elements did not require the specified force were an established species of litigation.

This Court's decision in *White v. United States*, 8 F.4th 547 (7th Cir. 2021), is particularly instructive on this point. In *White*, the petitioner argued that a categorical-approach claim later accepted in *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020), was too novel to have been raised earlier because courts had routinely treated the predicate offense as qualifying. *White* rejected that contention and explained that the relevant "basis and authority" for the categorical approach had been "in place since 1990, when the Supreme Court first laid out the categorical approach in" *Taylor 1990.* The *White* Court noted that an "enterprising defendant" had simply "recently seized upon it" in *Ruth. Id.* at 556–57. Because the categorical methodology and relevant statutory texts were already available, the petitioner "could have raised that challenge" earlier and therefore lacked cause for his procedural default. *Id.* at 557. That reasoning fits Grant's claim. *Taylor 2022* did not overrule Supreme Court precedent or announce a new constitutional rule. It interpreted the preexisting text of § 924(c)(3)(A) by comparing that text with the preexisting elements of attempted Hobbs Act robbery. *See Taylor*, 596 U.S. at 850–52, 860.

Furthermore, the precise legal authorities needed to construct the argument that *Taylor* later recognized were demonstrably available in this Circuit before Grant's conviction became final. In *United States v. Muratovic*, 719 F.3d 809 (7th Cir. 2013), decided more than a year before Grant was sentenced, the defendant pleaded guilty to attempted Hobbs Act robbery, Hobbs Act conspiracy, and a § 924(c) offense predicated on those crimes. On direct appeal, he argued that Hobbs Act conspiracy was not a crime of violence under § 924(c). *Id.* at 817. This Court declined to decide that issue because "Muratovic has not argued that attempted Hobbs Act robbery falls outside the scope of § 924(c)," so the § 924(c) conviction would remain valid even if his conspiracy argument succeeded. *Id. Muratovic* thus shows that, before Grant's opportunity for direct review had expired, a defendant in this Circuit was already challenging whether an inchoate Hobbs Act offense satisfied § 924(c), in a case in which the Court expressly identified the unraised possibility of challenging attempted Hobbs Act robbery as well.

*Muratovic* also identified the substantial-step framework later relevant to *Taylor*. It explained that attempted Hobbs Act robbery requires intent to commit the completed offense and a substantial step, and it sustained an attempt conviction based on a finalized robbery plan, surveillance, possession of firearms and other supplies, and readiness to follow the intended target. 719 F.3d at 815–17. *Taylo*r later explained why substantial-step conduct of that kind need not itself involve the use, attempted use, or threatened use of physical force. 596 U.S. at 851–52. Thus, the statute, the categorical method, and this Circuit's preexisting attempt law supplied the components of the argument before Grant's appeal period expired.

For all the above reasons, Grant did not need *Taylor* to identify the statutory theory he now pursues in this appeal. The statute of conviction, the categorical method, and Seventh Circuit attempt law supplied the components of the argument before his appeal period expired. *Taylor* (the 2022 decision) itself confirms the point. It noted that its task was already well-defined, stating "[t]his Court has long understood similarly worded statutes to demand similarly categorical inquiries." *Taylor*, 596 U.S. at 850.

*Taylor* thus asked what the Government must prove to establish attempted Hobbs Act robbery and compared those elements with § 924(c)(3)(A). *Taylor,* 596 U.S. at 850–52. It held that a defendant may take a substantial step toward Hobbs Act robbery without using, attempting to use, or threatening force. *Id*. at 851–52. As the decision itself noted, that approach was an application of preexisting elements-based methodology, not a new analytical framework created in 2022.

*Bousley* therefore answers any assertion that Grant's elements claim was unavailable. In *Bousley,* the Court was evaluating the availability of its decision in *Bailey v. United Stat*es, 516 U.S. 137 (1995) to a petitioner seeking collateral review of his sentence. The *Bousley* Court noted that *Bailey* eventually adopted a narrower interpretation of "use" in § 924(c). *Bousley* held, however, that a defendant who had failed to make that statutory argument on direct review had defaulted it. *Bousley,* 523 U.S. at 621–23. The Court rejected the claim that the legal basis had been unavailable because other litigants had already challenged the broader construction. *Id.* at 622. *Bousley* also rejected any notion that futility could provide cause and held that perceived unlikelihood

of success does not excuse failure to raise an available claim. *Id*. at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)).

The showing of availability is at least as strong here. At the time Grant could have appealed, he had available § 924(c)(3)(A)'s elements-focused text, *Taylor 1990's* categorical approach, *Leocal's* construction of materially identical crime-of-violence language, *Johnson 2010's* construction of "physical force," *James's* categorical treatment of an attempt offense, and *Descamps's* renewed insistence on comparing statutory elements in a categorical approach. That body of law supplied a reasonable basis to argue that attempted Hobbs Act robbery could be completed without any element requiring the use, attempted use, or threatened use of force. Grant did not need the Supreme Court's 2022 *Taylor* decision to make the argument that *Taylor* eventually accepted. *Taylor* established that the argument was correct; it did not establish that the argument had previously been unavailable.

Grant attempts to circumvent this reasoning by arguing that *Johnson* had not yet invalidated the ACCA's residual clause when his conviction became final. Pet. Br. at 49–53. That observation only addresses, however, why a residual-clause challenge may not then have been available, but it does not explain why the separate elements-clause argument was unavailable. The residual clause's existence may have made an elements-clause challenge less likely to produce immediate relief, because the Government could have relied on an alternative definition of "crime of violence." It did not, however, prevent Grant from making and preserving the statutory argument. *Bousley* squarely

rejects perceived futility as cause where the legal contention itself was available. 523 U.S. at 623.

Furthermore, contrary to another argument he makes in his brief, Grant's plea agreement waiver does not supply cause for his procedural default. He argues that the waiver barred an appeal absent a subsequent change in law. Pet. Br. at 49–50. Cause ordinarily requires an objective factor external to the defense that impeded compliance with the procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Grant's voluntarily accepted plea agreement was not an external impediment that made § 924(c)(3)(A)'s elements unknowable and did not prevent him from raising and preserving an elements objection. If Grant had wanted to raise the then-available elements clause claim, he did not have to plead guilty.[3] Grant could have raised the claim below, proceeded to trial and, if convicted, preserved the claim on direct appeal. Instead, he abandoned the claim in exchange for the concessions the Government extended to him in his plea agreement. Additionally, the agreement cannot simultaneously serve as a contractual bar the Government must honor and as "cause" excusing Grant from the consequences of accepting that bargain.

Because Grant cannot establish cause, the Court need not reach prejudice. *Id.* at 494. The relevant procedural question is not whether *Taylor* now establishes legal error. The question is whether Grant has a gateway permitting collateral review of a claim he

[3]Notably, Grant unconditionally waived his "right to file pretrial motions" as part of his plea and in fact filed no such motions, thereby removing any challenge to the sufficiency of the indictment from the scope of any future appeal or collateral attack. Crim. Doc. 22, at ¶ 1. Grant also waived his right to appeal or collaterally attack his conviction and sentence more generally.

did not preserve. A later merits victory on a claim he could have timely raised does not itself erase procedural default.

**C. Grant's elements-clause claim was independently untimely because *Johnson* did not newly recognize that distinct statutory claim.**

Timeliness is analytically distinct from procedural default. Section 2255(f) imposes a one-year limitations period, and timeliness is assessed claim by claim. *Davis,* 817 F.3d at 327–28. A petitioner cannot use one timely claim to "tack on additional, otherwise untimely claims." *Id.* at 328.

Grant's judgment was entered on October 24, 2014, and he filed no direct appeal. His conviction therefore became final when the fourteen-day period for filing a notice of appeal expired. *See* Fed. R. App. P. 4(b)(1)(A). Section 2255(f)(1) then gave him one year to assert the already-available elements-clause challenge. He did not file his § 2255 motion until June 21, 2016.

The district court treated Grant's petition as timely because part of his argument below was based on *Johnson v. United States,* 576 U.S. 591 (2015). As noted previously, *Johnson* involved a constitution-based vagueness claim. The district court apparently concluded that Grant's petition below was timely because of *Johnson,* but it did not separately analyze whether his statutory elements-based contention that attempted Hobbs Act robbery fails § 924(c)(3)(A)'s elements clause was also timely. Civ. Doc. 10 at 4–5. The Government, by contrast, maintained below that only the *Johnson*-based portion of Grant's motion was timely and separately argued that his force-clause theory, which *Taylor* later adopted in 2022, was untimely. Civ. Doc. 8 at 8. Grant's appointed counsel

below likewise recognized that the force clause theory presented a distinct timeliness problem. Civ. Doc. 5 at 4–5.

*Johnson v. United States*, 576 U.S. 591 (2015), does not support a finding that Grant's elements-based claim below was timely. In *Johnson* the Supreme Court newly recognized a constitutional right concerning the ACCA's residual clause. Grant's *Taylor*-based elements theory is different from a *Johnson*-based constitutional claim. Grant's *Taylor*-based claim asserts, as a matter of statutory interpretation, that attempted Hobbs Act robbery does not have the elements required by § 924(c)(3)(A). Nothing that the Court decided in *Johnson* was necessary to assert that issue. The categorical framework, materially similar force-clause language, and the governing conception of physical force all predated the finality of Grant's conviction in 2014.

The parties contemporaneously recognized the distinction between a *Johnson*-based residual clause claim and the elements-based claim (that *Taylor* later adopted) in the proceedings below. Grant's appointed counsel acknowledged that the elements theory presented "[a] more difficult analysis" on timeliness because *Johnson* (2010) predated Grant's conviction and *Mathis v. United States*, 579 U.S. 500 (2016), described the categorical rule it applied as longstanding. Civ. Doc. 5 at 4–5. Counsel instead suggested that an elements challenge would have been futile while the residual clause remained available. Futility does not, however, create a limitations trigger under § 2255(f), any more than it establishes a cause trigger under *Bousley*.

Section 2255(f)(3)'s timeliness provision does not ask when an existing claim became likely to succeed. It supplies a later trigger only for a claim asserting a right

"newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." That one-year period runs from the date the Supreme Court initially recognizes that right. *Dodd v. United States*, 545 U.S. 353, 357–60 (2005). Grant's statutory elements claim did not assert the constitutional vagueness right newly recognized in *Johnson*, so *Johnson's* date of decision cannot make that separate claim timely. *See Davis*, 817 F.3d at 327–28.

Furthermore, the Supreme Court's 2022 decision in *Taylor* cannot retroactively cure the defect. *Taylor* was decided six years after Grant first asserted his tardy elements theory. It supplied intervening merits authority for a claim already pending in this litigation, but it did not convert the untimely 2016 claim into a timely invocation of a newly recognized right. *Taylor*'s own reasoning underscores the point. In *Taylor,* the Court resolved the case by comparing the statutory elements of attempted Hobbs Act robbery with § 924(c)(3)(A), using an analytical framework that long predated Grant's conviction. 596 U.S. at 850–52.

The district court's statement that Grant's "petition" was timely does not foreclose the Government's argument on appeal. Civ. Doc. 10 at 4–5. The court treated the motion as timely because it was filed within one year of *Johnson,* but it did not conduct *Davis's* claim-specific analysis of Grant's separate elements-clause theory. Because the Government prevailed below, it may defend the judgment on any ground preserved by the record without cross-appealing, even if that ground challenges the district court's reasoning. *See United States v. Terzakis,* 854 F.3d 951, 954 (7th Cir. 2017) (quoting *United States v. Am. Ry. Exp. Co.*, 265 U.S. 425, 435 (1924)).

**D. Grant cannot establish actual innocence because a reasonable factfinder could conclude from his own admissions that he completed Hobbs Act robbery.**

Grant's final route around procedural default is the actual-innocence gateway. It is a demanding one. *Bousley* establishes that 'actual innocence' means factual innocence, not mere legal insufficiency. 523 U.S. at 623. *Cobbs* applied that factual inquiry in the *Taylor* setting after expressly assuming, without deciding, that a change in statutory law could support the gateway. 141 F.4th at 878–80. Even on that assumption, a petitioner must still satisfy a demanding factual standard. In this case, Grant "must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 878 (quoting *Lund*, 913 F.3d at 667).

This Court's factual innocence analysis from *Cobbs* is dispositive here. Grant's *Taylor* argument establishes, at most, a legal insufficiency in his indictment. *Taylor* held that because attempted Hobbs Act robbery can be committed without the use, attempted use, or threatened use of force, the offense is not categorically a crime of violence under § 924(c)(3)(A). *Taylor*, 596 U.S. at 850–52. The procedural-default gateway, however, asks a different question—whether Grant is factually innocent of the conduct that supports his conviction. *Bousley*, 523 U.S. at 623–24; *Cobbs,* 141 F.4th at 878–80.

In this case, as in *Cobbs,* Grant's indictment charged both a completed and an attempted *Hobbs Act* robbery arising from the same incident. App'x at 23-24. The stipulated facts accompanying Grant's guilty plea and his PSR foreclose that showing in this case. The Hobbs Act defines robbery as "the unlawful ***taking or obtaining*** of personal property from the person or in the presence of another, against his will, by means of

actual or threatened force, or violence, or fear of injury." 18 U.S.C. § 1951(b)(1) (emphasis added). Grant's stipulation and the contents of his PSR track that definition in substance. He entered the store armed with a loaded gun, while intending to rob it. He then put the gun to R.B.'s head and ordered R.B. to give him all the money. He then followed R.B. to the cash register while holding him at gunpoint. R.B. "after giving Petitioner the money" grabbed the gun. Crim. Doc. 27 at ¶ 14; App'x at 35. Those facts readily permit a finding that Petitioner committed a completed Hobbs Act robbery because he obtained the store's cash from R.B., against R.B.'s will, by threatened force.

Petitioner contends that the robbery remained incomplete because the stipulation does not establish "asportation." Pet. Br. at 57. Section 1951(b)(1), however, speaks in the disjunctive of "taking or obtaining" property, and Petitioner's own stipulation says that R.B. was "giving Grant the cash" in response to Grant's armed demand. The actual-innocence question is therefore not whether the record contains a formal recital that Grant carried the money away for some particular distance. It is whether Grant has shown that no reasonable juror could find a completed taking or obtaining.

More fundamentally, Grant bears the burden of proving actual innocence. The Government does not bear a renewed burden in this collateral proceeding to prove a completed robbery from a record drafted years ago to establish an attempted-robbery plea. *See Bousley,* 523 U.S. at 623–24; *Cobbs*, 141 F.4th at 878. The factual stipulation for the plea indicates the robbery victim "was giving Grant the cash" while he held a gun to his head. The PSR, to which Petitioner did not object, indicated R.B. had given him all the cash. In any event, it is the Petitioner's burden to establish factual innocence. At most,

Petitioner identifies a factual issue about the precise instant at which R.B. grabbed Grant's gun—whether it was before Grant had obtained all the cash or after he had obtained all the cash. A reasonable juror could convict him of Hobbs Act robbery upon a finding he had obtained any of the cash. A factual issue on which a reasonable juror could find against Grant is fatal to an actual-innocence claim.

Additionally, Grant's reliance on *Cobbs's* footnote 4 reverses its import. *Cobbs* did not hold that a Hobbs Act robber must escape with the proceeds or carry them any substantial distance. It instead noted that even when a statute includes a "carrying away" element (like bank robbery did in the 1961 case the decision cites), any movement "however slight" suffices, and later loss or return of the property does not undo the offense. *Cobbs,* 141 F.4th at 883 n.4. Thus, even if Grant were correct that some movement was required for the "taking" alternative, the stipulation's description of R.B. "giving Grant the cash" permits the inference that the cash was transferred or moved toward Grant before R.B. seized the gun. That permissible inference alone defeats Grant's burden to show that no reasonable juror could find a completed Hobbs Act robbery.

Furthermore, Grant's repeated reliance on the use of attempt language in his indictment and plea agreement does not establish factual innocence. The indictment also charged a completed Hobbs Act robbery. App'x at 23-24. Because the factual admissions Grant made during his plea satisfied the elements for a completed Hobbs Act offense, he cannot show actual innocence. *Cobbs,* 141 F.4th at 881-82.The actual-innocence inquiry is not confined to the label attached to the conviction. *Bousley* requires the petitioner to demonstrate factual innocence and permits the Government to rely on the full record in

testing a petitioner's assertion that he is factually innocent. *Bousley,* 523 U.S. at 624. *Cobbs* likewise rejects using *Taylor's* categorical rule as a substitute for proof that the petitioner did not actually commit the completed offense. *Cobbs,* 141 F.4th at 878–80. Here the admitted facts establish completion regardless of whether the charging language also alleged an attempt.

*Cobbs* also identified, but did not resolve, a separate 'double duty' question that is also applicable to this case. *Cobbs* questioned whether the same statutory decision may serve both as the gateway around procedural default and as the source of relief on the merits. 141 F.4th at 878–80; *see Lund v. United States*, 913 F.3d 665, 668 (7th Cir. 2019). The actual innocence exception is merely a gateway through which a court can consider a petitioner's otherwise barred claims on their merits. *Id.* Framing the exception as a gateway "presupposes that a petitioner will have underlying claims separate from the claim that he is actually innocent." *Id. Lund* noted that "the Supreme Court has not recognized a petitioner's right to habeas relief based on a stand-alone claim of actual innocence." *Id.* The point of the exception is to ensure that federal constitutional errors do not result in the incarceration of innocent people. *Id; Perrone v. United States,* 889 F.3d 898, 903 (7th Cir. 2018).

Finally, it is not even clear in this Circuit that a subsequent change in law, without new facts or evidence demonstrating innocence, can satisfy the actual-innocence gateway. This Court has noted that the actual innocence exception certainly applies where the petitioner has new evidence, like DNA evidence. *Lund*, 913 F.3d at 667–68. 2019). This Court has not, however, explicitly held that it can be used in situations where

a change to the scope of a law merely renders the conduct the petitioner was convicted of no longer criminal. *Id. See also Gladney v. Pollard*, 799 F.3d 889, 897 (7th Cir. 2015); *Cobbs,* 141 F.4th at 878. Here, Grant offers no new facts or evidence demonstrating that he did not commit the conduct underlying his convictions. He relies solely on *Taylor's* subsequent change in the law. Treating that legal development, standing alone, as proof of actual innocence would thus require extending the actual-innocence gateway beyond anything this Court has yet recognized.

For all the above reasons, Grant cannot excuse his default through actual innocence. A reasonable fact finder could conclude from Grant's own admissions that he completed Hobbs Act robbery before the clerk wrestled for the firearm. Because Grant cannot establish factual innocence, his default remains an independent bar to collateral relief.

## III. Grant's Collateral Attack Is Independently Barred by His Express Collateral-Review Waiver.

Grant's plea agreement supplies an additional and independent reason to affirm. In exchange for the Government's concessions, Grant waived his right to appeal and to bring collateral challenges, subject to specifically defined exceptions. App'x at 30, 33; Cr. Doc. 22 at 6, 9. The pertinent exception provides that the waiver does not apply to "any subsequent change in the interpretation of the law by the United States Supreme Court or the United States Court of Appeals for the Seventh Circuit that is declared retroactive by those Courts and that renders the defendant actually innocent of the charges covered herein." *Id.* at 9. Grant cannot satisfy that exception. Furthermore, his alternative reliance

on the Supreme Court's recent *Hunter* decision does not justify disregarding the bargain he made.

Grant's plea waiver exception argument is independent of the barriers addressed above. Grant's guilty plea waived antecedent non-jurisdictional challenges, and his present claim is waived and/or procedurally defaulted for the reasons explained in Arguments I and II. Even assuming Grant could overcome those barriers, his negotiated collateral-review waiver remains enforceable unless he establishes that an express exception applies or that some independent rule forbids enforcement. He establishes neither.

**A. Grant Cannot Satisfy the Plea Agreement's Express Exception for a Subsequent Change in Law that is Declared Retroactive and Renders the Petitioner Actually Innocent.**

The exception in Grant's plea agreement waiver for collateral review contains three separate, conjunctive requirements. There must be (1) a subsequent change in the interpretation of law by the Supreme Court or this Court, (2) a declaration of retroactivity by one of those Courts, and (3) a change that "renders the defendant actually innocent" of the covered charge. Cr. Doc. 22 at 9. *Taylor* satisfies the first requirement. Grant cannot, however, establish the latter two.

**1. Neither the Supreme Court nor this Court has "declared" *Taylor* retroactive, as the plea agreement expressly requires.**

The Department of Justice's position is that *Taylor*, 596 U.S. 845, should apply retroactively on collateral review. That concession does not, however, satisfy the second requirement for the exception to become effective because it requires a change "that is

declared retroactive by" the Supreme Court or the Seventh Circuit. To date, neither court has issued a decision declaring *Taylor* retroactive.

The Government's concession alone of this point cannot satisfy the second condition in the plea waiver exception. A court is not bound by a party's concession on a question of law. *Krieger v. United States*, 842 F.3d 490, 499 (7th Cir. 2016). More importantly, the parties chose language requiring a declaration "by those Courts." Treating the Government's concession as the contractual equivalent of the specified judicial declaration would eliminate words the parties included in their agreement. Thus, even accepting *Taylor's* retroactivity, Grant has not shown that the agreement's declaration requirement has been met.

**2. *Taylor* does not render Grant "actually innocent" because his admitted conduct permits a finding of completed Hobbs Act robbery.**

The exception in Grant's plea agreement also independently fails because *Taylor* must "render[] the defendant actually innocent." As explained in Argument II, "actual innocence" means factual innocence, not mere legal insufficiency. *Bousley*, 523 U.S. at 623–24. *See supra* at 31-34. Because Grant cannot establish factual innocence under *Bousley* and *Cobbs*, 141 F.4th 872, he cannot satisfy the third requirement for the exception to his collateral review waiver to become effective.

**B. Grant Waived his New Appellate Contention that when His Plea Agreement used the term "Actually Innocent" it meant Something other than the Accepted Usage "Actually Innocent" has in Collateral Review Law.**

Grant's arguments regarding his appellate waiver rest substantially on a premise he never raised below. That new premise is that the words "actually innocent" in his plea

agreement do not carry the settled meaning that "actual innocence" ordinarily has in federal criminal and collateral-review law. Pet. Br. at 36–40. Petitioner waived this argument below. Even absent waiver, Grant's construction is incorrect. In a collateral-review provision, "actually innocent" carries an established meaning, with that meaning being factual innocence, not mere legal insufficiency.

Waiver is the "intentional relinquishment or abandonment of a known right," while forfeiture ordinarily results from inadvertence, neglect, or oversight. *United States v. Olano*, 507 U.S. 725, 733 (1993). A waived contention is not subject to appellate review. *See Olano*, 507 U.S. at 733; *United States v. Grusd*, 164 F.4th 635, 638 (7th Cir. 2026). The distinction matters here because the record below reflects more than mere silence.

Grant's appointed counsel below squarely addressed the plea agreement's collateral-review waiver in the pleading he filed below. Civ. Doc. 5 at 3, 5-6. Counsel was an Assistant Federal Public Defender and an attorney from his office had also represented Grant during his plea negotiations that culminated in his plea agreement. *See* Civ. Doc. 3; Crim. Doc. 12. That office represents many federal defendants a year and attorneys with that office are necessarily very familiar with the terms of the plea agreements that are tendered in federal cases in the Southern District of Illinois. While representing Grant in his 2255 motion, Counsel quoted the relevant exception, analyzed waiver in a separate section, and expressly "concede[d] that the plain language of that waiver seems to preclude consideration of Mr. Grant's § 2255 claims on the merits." *Id.* at 5. Counsel nevertheless proposed a way around the waiver. He argued that because Grant's *Johnson* claim alleged unconstitutional vagueness in § 924(c)'s residual clause, then *United States*

*v. Adkins*, 743 F.3d 176, 192 (7th Cir. 2014), supported an implicit due-process exception to enforcement of the waiver. *Id.* at 5–6. However, Counsel did not argue that the agreement's express actual-innocence exception applied, much less that "actually innocent" had a special contractual meaning encompassing legal innocence as Grant now argues on appeal.

Grant personally embraced the position of his appointed counsel below. In his pro se response to the Government's filing, Grant stated that his counsel's filing had "fully addressed" the Government's waiver argument, that the argument "need not be made again," and that Grant "stands by that argument." Civ. Doc. 9 at 1–2. He did not tell the district court that his counsel had overlooked an independent textual route through the waiver. He did not argue that the Government and he had used "actually innocent" to mean legal innocence. Instead, Grant incorporated counsel's chosen due-process theory and proceeded to argue the merits of *Johnson* and the § 924(c) elements clause. *Id.* at 2–4.

The district court therefore had no occasion to decide the contract-interpretation theory Grant now makes central to the plea agreement waiver issue in this appeal. The district court accurately described the only waiver-avoidance argument that Grant presented below: "[counsel] offers one possible basis on which to circumvent the waiver—an implicit due process-based exception…. Petitioner Grant adopts this argument." App'x 7. The court rejected that argument and enforced the waiver. App'x 7–8.

Accordingly, Grant waived the novel plea language theory he now advances on appeal. Petitioner was represented below by counsel who specifically confronted the

waiver, was very knowledgeable about the terms used in plea agreements in the Southern District of Illinois, acknowledged that its plain language barred relief, selected an argument that asserted a means of avoiding it, and then Petitioner later personally adopted that position. The present theory is not simply a new citation or a refinement of an argument preserved below. It contradicts the premise of the argument Petitioner adopted. That premise was that the waiver's plain language barred his claim and that he therefore needed an explicit constitutional exception to circumvent it. A litigant cannot deliberately proceed on one basis for escaping a waiver, lose, and then obtain de novo appellate review on a different basis he never asked the district court to consider. Cf. *Grusd*, 164 F.4th at 638-39 (intentional acquiescence constitutes waiver); *United States v. Hathaway*, 882 F.3d 638, 641 (7th Cir. 2018) (selective objections may demonstrate intentional relinquishment).

Furthermore, the Supreme Court's *Taylor* decision was not necessary for Grant to make the interpretive argument he now advances. The plea agreement's text existed in 2016 when the district court was considering the Petitioner's § 2255 motion; the phrase "actually innocent" was expressly quoted in the district-court briefing; The Government argued that the exception did not apply because Petitioner was not "actually innocent." Civ. Doc. 8 at 6–7. Petitioner thus had every reason and opportunity to respond that the phrase "actually innocent" in his plea agreement meant legal rather than factual innocence if that was his understanding of the bargain. He did not make this argument. *Taylor* later supplied new merits authority concerning attempted Hobbs Act robbery. It did not retroactively preserve a contractual construction that Petitioner affirmatively

declined to advance when the meaning and applicability of the waiver were directly at issue. Because Petitioner waived this construction below, this Court should decline to consider Grant's new argument concerning the terms in his plea agreement.

Additionally, even if this Court does not find an outright waiver, at a minimum, the theory was forfeited. A § 2255 movant must present the specific theory on which he seeks relief in the district court. A materially different theory first advanced on appeal is not preserved merely because the general subject was litigated below. *United States v. Lomax*, 51 F.4th 222, 227–28 (7th Cir. 2022). In a § 2255 appeal, consideration of such a forfeited issue requires exceptional circumstances, an effect on substantial rights, and a miscarriage of justice if review is withheld. *Lomax,* 51 F.4th at 227. Grant has not attempted to satisfy that demanding standard, and he cannot do so where the interpretation he proposes conflicts with *Bousley* and where, as shown above and in Argument II, he cannot establish factual innocence.

Finally, even if ordinary *Olano* plain-error principles were applied to this case, the result would be the same. The district court did not plainly err by failing to adopt an interpretation Grant never proposed, particularly where *Bousley* states that actual innocence means factual innocence rather than legal insufficiency. *See Olano*, 507 U.S. at 732–36; *United States v. Page*, 123 F.4th 851, 864, 867–68 (7th Cir. 2024) (en banc). Grant also cannot show prejudice or that correction is required to protect the fairness, integrity, or public reputation of judicial proceedings. Enforcing a negotiated waiver consistently with its established terminology and the position Grant adopted below does not create a miscarriage of justice.

**C. Even Absent Waiver, Grant's Proposed Construction Fails Because "Actually Innocent" is an Established Term of Art in the Collateral Review Context and the Plea Agreement is not Ambiguous.**

Even absent waiver, Grant's construction of the term "actually innocent" is incorrect on the merits. In a collateral-review provision, "actually innocent" carries its established meaning: factual innocence, not mere legal insufficiency.

Petitioner's collateral-review waiver provides that it will not apply to:

> "any subsequent change in the interpretation of the law by the United States Supreme Court or the United States Court of Appeals for the Seventh Circuit that is declared retroactive by those Courts and that renders the defendant actually innocent of the charges covered herein."

Cr. Doc. 22 at 9. Notably, the exception does not say that any retroactive change in law that undermines the legal basis for a conviction defeats the waiver. The language requires both a qualifying retroactive change in law and that the change "renders the defendant "actually innocent." Petitioner's construction collapses those distinct requirements, both of which are well-settled concepts in the law of collateral review.

**1. "Actual Innocence" Has an Established Meaning in Federal Collateral-Review Law.**

*Bousley* provides that "actual innocence" means factual innocence, not mere legal insufficiency. *Bousley,* 523 U.S. at 623-24. That principle is particularly significant here because *Bousley* itself involved an intervening Supreme Court decision narrowing the substantive reach of a federal criminal statute. Thus, the fact that an actual-innocence inquiry arises because of a subsequent change in law does not convert "actual innocence" into a synonym for legal invalidity. *Bousley* illustrates that there is nothing anomalous

about a plea agreement requiring both an intervening change in law and factual innocence before a defendant is entitled to relief from his waivers.

*Cobbs* is also important because it applies the factual-innocence understanding in the *Taylor*/§ 924(c)/Hobbs Act setting. Petitioner's brief acknowledges that *Cobbs* uses "actual innocence" to mean factual innocence but attempts to distinguish that meaning on the ground that *Cobbs* concerned procedural default while his plea agreement supposedly refers to "legal innocence." That distinction assumes the very proposition that Grant must establish: that the parties silently assigned an established term of art a different meaning in his agreement.

Petitioner then argues that because the clause concerns a "subsequent change in the interpretation of the law," a reasonable defendant would understand "actually innocent" to mean legally innocent. The context of the provision points, however, in the opposite direction. The provision is saturated with the vocabulary of federal postconviction law: "subsequent change in the interpretation of the law," "declared retroactive," "actually innocent," and "collateral challenges." "Actually innocent" therefore appears in its natural legal habitat and should be given its natural meaning within that habitat.

The fact that the term "actually innocent" occurs in this case surrounded by other terms that are particular to collateral review law matters under ordinary principles governing legal instruments. Plea agreements are construed according to ordinary contract principles, and the inquiry focuses on what the parties agreed to and their reasonable expectations. *See, e.g., United States v. Artley*, 489 F.3d 813, 824-25 (7th Cir.

2007); *United States v. Lezine*, 166 F.3d 895, 901 (7th Cir. 1999). When parties use established legal terminology in a legal instrument addressing the very subject to which that terminology belongs, the natural inference is that they employed the established legal meaning unless the agreement supplies a contrary definition.

Nothing in Petitioner's plea agreement defines "actually innocent" to mean legal innocence, legal invalidity, or entitlement to vacatur. It does not say that a conviction becomes exempt from the waiver whenever subsequent law establishes that the charged offense no longer qualifies as a predicate. Had the parties intended that broader exception, they could readily have said so.

### 2. Ordinary Contract Principles Give Technical Terms and Words of Art Their Established Technical Meaning.

The ordinary contract principles governing plea agreements provide an additional reason to reject Grant's proposed redefinition. The Restatement (Second) of Contracts § 202(3)(b) states that, unless a different intention is manifested, "technical terms and words of art are given their technical meaning when used in a transaction within their technical field." The Seventh Circuit has expressly recognized this interpretive principle. *See In re Motorola Securities Litigation*, 644 F.3d 511, 517-18 (7th Cir. 2011) (citing Restatement (Second) of Contracts § 202(3)(b) while discussing whether language incorporated into a settlement agreement should carry a technical rather than ordinary meaning).

That principle fits this plea agreement unusually well. "Actually innocent" is not being used in an unrelated commercial transaction or in casual correspondence. It

appears in a federal criminal plea agreement, in the paragraph governing collateral challenges, and in a sentence addressing subsequent changes in the interpretation of criminal law and retroactivity. Thus, if "actual innocence" is an established term in federal collateral-review law, this is precisely the technical field in which one would expect the parties to have used the term in its established technical sense.

**3. Grant's Construction Reads "Actually" and the Separate Innocence Requirement Out of the Agreement.**

Grant's interpretation also creates a structural problem. If a qualifying retroactive change in law that invalidates the legal basis of the conviction necessarily "renders" the defendant actually innocent, then the actual-innocence requirement adds little or nothing to the preceding requirements. The clause would operate much as though it said simply that the waiver does not apply to a retroactive change in law that invalidates the conviction.

The factual-innocence construction, by contrast, gives each part of the clause independent meaning. First, there must be a subsequent change in the interpretation of law by the Supreme Court or Seventh Circuit. Second, that change must be declared retroactive by those courts. Third, the change must render the defendant actually, that is factually, innocent of the covered charge. This reading respects both the conjunctive structure of the provision and the parties' decision to include the word "actually."

**4. Grant's Reliance on the Perspective of a "Reasonable Criminal Defendant" Does Not Establish a Different Meaning.**

Grant also argues that a reasonable criminal defendant could read the waiver as permitting relief whenever a subsequent change in law means that his conduct is no

longer criminal. The relevant interpretive inquiry is, however, not whether one party can devise a plausible alternative meaning after the fact. Plea agreements are interpreted according to ordinary contract principles and the parties' reasonable expectations. The document here is a federal criminal plea agreement, and the disputed phrase appears specifically in a collateral-review provision.

Against that background, the established legal meaning of "actual innocence" is highly probative of the parties' reasonable understanding. The rule that ambiguities in plea agreements may be construed against the Government does not require a court to manufacture ambiguity by disregarding an established legal meaning. The question is whether the language is genuinely ambiguous. The use of "actually innocent" in a provision expressly governing retroactivity and collateral review strongly supports the established factual-innocence meaning.

**5. The Agreement Is Not Ambiguous, and the Rule Construing Genuine Ambiguities Against the Government Does Not Apply.**

Grant alternatively argues that, even if his proposed meaning of "actually innocent" is not the better reading, the phrase is at least ambiguous and therefore must be construed against the Government. The principle that genuine ambiguities in a plea agreement are construed against the Government does not, however, create ambiguity. The Court must first determine, applying ordinary principles of interpretation and reading the agreement as a whole, whether the disputed language is reasonably susceptible to competing meanings. Here it is not. "Actually innocent" is an established term of art used in a provision devoted specifically to collateral review, intervening

changes in criminal law, and retroactivity. *Bousley* established conclusively that actual innocence means factual innocence, not mere legal insufficiency. *Bousley,* 523 U.S. at 623. The surrounding language in Grant's plea agreement reinforces, rather than unsettles, that established meaning.

Furthermore, Petitioner's reliance on the adjacent exception in the plea agreement for retroactive Sentencing Guidelines amendments also does not create ambiguity. The two exceptions demonstrate that the parties knew how to identify distinct consequences of subsequent changes in law and specified different conditions for each. The Guidelines provision permits an appeal based on amendments made retroactive by the Sentencing Commission. The separate provision governing changes in law by the Supreme Court or this Court requires not merely a retroactive change in law, but one that also "renders the defendant actually innocent." Reading "actually innocent" to mean only that subsequent law supplies a legal basis for setting aside the conviction would substantially eliminate that additional requirement. The neighboring Guidelines provision thus confirms that the parties deliberately prescribed different prerequisites for different forms of later-law relief.

### D. *Hunter* Does Not Supply an Extracontractual Basis for Disregarding Grant's Waiver.

Grant alternatively invokes the Supreme Court's recent decision in *Hunter v. United States*, 146 S.Ct. 1702 (2026), and argues that enforcing his waiver would produce a miscarriage of justice. Pet. Br. at 42–48. That argument fails for three independent reasons: (1) Grant did not preserve the underlying miscarriage-of-justice theory below;

(2) *Hunter* addressed direct-appeal waivers rather than collateral-review waivers; and (3) even assuming *Hunter* applies to collateral review waivers, this case does not approach *Hunter's* deliberately high threshold.

**1. Grant did not preserve a miscarriage-of-justice theory.**

*Hunter* was decided after the district-court proceedings in this case, but the underlying theory was not new. Long before Grant filed his § 2255 motion, several courts of appeals had recognized a miscarriage-of-justice limitation on enforcement of plea waivers. *See, e.g.*, *United States v. Adams*, 814 F.3d 178, 182 (4th Cir. 2016); *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004); *United States v. Andis*, 333 F.3d 886, 891 (8th Cir. 2003); *United States v. Khattak,* 273 F.3d 557, 562 (3d Cir. 2001). Grant therefore could have argued below that enforcing his waiver would itself work a miscarriage of justice. He did not make such an argument. Instead, he adopted counsel's different due-process theory. For the same preservation reasons discussed above, *Hunter's* later decision does not automatically entitle Grant to de novo review of a theory he never presented below.

**2. *Hunter* did not decide whether its rule applies to collateral-review waivers.**

*Hunter* held that an agreement not to directly appeal a sentence is unenforceable when enforcement would result in a miscarriage of justice. Its reasoning concerned direct appellate review and the consequences of enforcing a waiver that would "cement into place" an egregiously unlawful sentence. *Hunter,* 146 S.Ct. at 1712. *Hunter* did not decide whether the same exception governs a separate waiver of collateral review under § 2255. Grant acknowledges as much in his brief. Pet. Br. at 43.

The distinction between direct and collateral review is important in this case. Grant's waiver, if being enforced on direct review, would impose a substantial additional restriction on him because even when a subsequent and retroactive change in law undermines a conviction, the parties agreed that Grant could invoke the exception to his waiver only if that change "renders [him] actually innocent." Crim. Doc. 22 at 9. That was a meaningful limitation on the direct review rights Grant otherwise possessed.

The waiver plays a different role, however, at the collateral review stage. In the circumstances presented here, independent doctrinal limitations on collateral review already require Grant to establish actual innocence to overcome his procedural default. *See supra* 33-37. Thus, enforcing the parties' agreed-upon actual-innocence limitation on collateral review does not itself foreclose a claim that the ordinary rules governing collateral review would otherwise permit Grant to pursue. Instead, it leaves Grant subject to the same actual-innocence requirement that would apply even absent the waiver.

That distinction also limits Grant's ability to rely on *Hunter*. *Hunter* recognized a miscarriage-of-justice limitation on enforcement of an appeal waiver, but it did not eliminate the independent restrictions governing collateral review or authorize courts to disregard limitations contained in an expressly negotiated exception to a waiver. Grant therefore cannot use *Hunter* to obtain through a generalized miscarriage-of-justice theory what his plea agreement specifically makes contingent upon his ability to show actual innocence, particularly where the ordinary rules of collateral review independently require him to satisfy that same standard to overcome his procedural default.

**3. Enforcing the waiver in this case would not result in a miscarriage of justice.**

The *Hunter* Court emphasized that its miscarriage-of-justice exception "sets a high bar" and is reserved for extreme cases in which the justice system's basic integrity is at stake. *Hunter*, 146 S.Ct. at 1713–14. The error must be obvious and egregious, not merely a legal error a reasonable judge could make. *Id. Hunter's* examples—such as a sentence beyond the statutory maximum, blatant unconstitutional discrimination, or proceedings lacking the minimum attributes of civilized process—illustrate the institutional character of the inquiry. *See id.* Justice Kavanaugh likewise emphasized that the Court had adopted a "genuinely high bar" confined to "extreme and egregious cases." *Id.* at 1727 (Kavanaugh, J., concurring).

This case presents different concerns than the ones in *Hunter*. Grant knowingly and voluntarily entered a plea agreement that expressly allocated the risk of later changes in criminal law. The parties specified that a later change would reopen collateral review only if it were declared retroactive by the Supreme Court or this Court and rendered Grant actually innocent. Enforcing those negotiated conditions does not imply judicial lawlessness. Treating the mere existence of a later favorable decision as a miscarriage of justice would largely nullify the carefully drafted exception.

Furthermore, Grant is not an actually innocent defendant whose imprisonment would make enforcement institutionally intolerable. As explained in Argument II and briefly above, his own admissions permit a finding that he completed a Hobbs Act robbery at gunpoint. Completed Hobbs Act robbery remains a valid § 924I predicate.

*Cobbs*, 141 F.4th at 878–84. Enforcing a collateral-review waiver against a defendant who cannot establish factual innocence is far removed from the extreme circumstances *Hunter* is designed to redress.

Additionally, the cases Grant invokes in his brief do not justify disregarding the limitation the parties expressly placed on his actual-innocence exception. *Litos* and *Sweeney* arose on direct appeal, not collateral review. *United States v. Litos*, 847 F.3d 906, 910–11 (7th Cir. 2017); *United States v. Sweeney*, 833 F. App'x 395, 395–97 (4th Cir. 2021). *Litos* involved the exceptional circumstance in which enforcing one defendant's waiver in a multi-defendant case that would have left him alone liable for restitution to an entity the court concluded was not legally entitled to restitution, while his jointly liable codefendants obtained relief. *Litos*, 847 F.3d at 910–11. *Sweeney*, an unpublished Fourth Circuit decision, applied that circuit's miscarriage-of-justice doctrine on direct appeal and reviewed the unpreserved predicate-offense challenge for plain error. 833 F. App'x at 396–97. Neither case construed an agreement that expressly anticipated subsequent changes in law and specified the circumstances in which such a change would permit review.

*Adams* and *McKinney* are distinguishable for an even more fundamental reason. The waivers there broadly foreclosed collateral review subject only to exceptions for ineffective assistance of counsel and prosecutorial misconduct. Neither agreement contained an exception, as here, permitting review when a subsequent change in law rendered the defendant actually innocent. *Adams*, 814 F.3d at 180–83; *United States v. McKinney*, 60 F.4th 188, 191–93 (4th Cir. 2023). The Fourth Circuit's miscarriage-of-justice

doctrine supplied that missing safeguard. In *Adams* and *McKinney,* rather than enforce a waiver that contained no avenue for an actual-innocence claim, the court held that a cognizable claim of actual innocence could escape the otherwise valid waiver. *Adams*, 814 F.3d at 182–83; *McKinney*, 60 F.4th at 192–93.

Grant's agreement contains no comparable gap. It is partly for this reason that the concerns expressed by Justice Sotomayor in her advisory opinion denying certiorari in *Jones v. United States,* are inapplicable to Grant's case. *See Jones v. United States,* 146 S.Ct. 2547 (2026). The parties expressly anticipated subsequent changes in law and agreed that Grant could obtain review when such a change, declared retroactive by the Supreme Court or this Court, "renders [him] actually innocent." App'x at 33; Crim. Doc. 22 at 9. Thus, Grant already received in his negotiated agreement the actual-innocence safety valve that the Fourth Circuit supplied judicially in *Adams* and *McKinney*. Invoking a generalized miscarriage-of-justice doctrine here would serve a fundamentally different purpose because it would not be used to prevent the waiver from categorically foreclosing an actual-innocence claim. Instead, it would be used to enlarge the actual-innocence exception the parties themselves negotiated by relieving Grant of its agreed-upon requirements. Neither *Adams* nor *McKinney* supports rewriting an express exception in that manner. They also do not provide a basis for converting "actually innocent" in Grant's express exception into mere legal insufficiency or for dispensing with the factual-innocence showing the parties made a condition of relief.

## IV. Conclusion

Grant pleaded guilty, did not appeal, and expressly waived collateral review subject to narrow exceptions that do not apply here. His present claims cannot overcome those independent barriers. The district court correctly denied relief, and this Court should affirm.

**Respectfully submitted,**

**THE UNITED STATES OF AMERICA**

**STEVEN D. WEINHOEFT**
**United States Attorney**

**s/ Thomas E. Leggans**
**THOMAS E. LEGGANS**
**Assistant United States Attorney**
**Office of the United States Attorney**
**402 West Main Street – Suite 2A**
**Benton, Illinois 62821**
**(618) 439-3808**

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i), as modified by Circuit Rule 32(c), because this brief contains 13,788 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Seventh Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared using Microsoft Word 2016, in 12-point Book Antiqua font, a proportionally spaced typeface.

**Respectfully submitted,**

**s/ Thomas E. Leggans**
**THOMAS E. LEGGANS**
**Assistant United States Attorney**
**Office of the United States Attorney**
**402 West Main Street – Suite 2A**
**Benton, Illinois 62821**
**(618) 439-3808**

**IN THE**

# UNITED STATES COURT OF APPEALS

**FOR THE SEVENTH CIRCUIT**

---

## No. 17-1234

| | | |
|---|---|---|
| **DENZELL D. GRANT,** | ) | |
| | ) | **Appeal from the** |
| **Petitioner – Appellant,** | ) | **United States District Court for** |
| | ) | **the Southern District of Illinois** |
| **v.** | ) | |
| | ) | **No. 14-CR-30039-MJR** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Honorable Michael J. Reagan** |
| **Respondent - Appellee.** | ) | **United States District Judge** |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing and by placing said copy in a postpaid envelope addressed to the following:

All Registered Participants

/s/ Thomas E. Leggans

**THOMAS E. LEGGGANS**
**Assistant United States Attorney**