Case No. 17–1234

**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

DENZELL D. GRANT,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

On Appeal from the United States District Court
for the Southern District of Illinois
Case No. 3:16–CV–677–MJR
(Related Case No. 3:14–CR–30039–MJR)

# REPLY BRIEF OF PETITIONER-APPELLANT

Benjamin S. Morrell
*Counsel of Record*
Adam W. Decker
Spencer J. Parts

TAFT STETTINIUS &
HOLLISTER LLP
111 East Wacker Drive
Suite 2600
Chicago, IL 60601
(312) 527–4000
bmorrell@taftlaw.com
adecker@taftlaw.com
sparts@taftlaw.com

*Appointed Counsel for Petitioner-Appellant*

# Table of Contents

Page

Table of Authorities ii

Introduction 1

Argument 3

I. Grant's guilty plea does not preclude relief. 3

A. In *Wheeler*, *Grzegorczyk*, and *Williams*, the defendant advanced a new interpretation of his statute of conviction not previously accepted by the Supreme Court or this Court. 3

B. Grant's guilty plea expressly allows this challenge. 10

II. Grant did not commit a procedural default and his petition was timely filed. 14

A. Grant made his elements-clause argument in his § 2255 petition, which was timely filed. 15

B. Grant's elements-clause argument was futile or irrelevant pre-Johnson. 16

C. Grant's appeal waiver was adequate cause for his failure to challenge his conviction on direct appeal. 19

D. Grant's petition was timely for purposes of § 2255(f). 22

III. Should the Court reach the issue, it should conclude that Grant is "actually innocent" of his § 924(c) charge, excusing procedural default. 23

IV. The exception in Grant's appeal and collateral-review waiver for subsequent law applies here. 26

A. Grant did not waive his interpretation of the exceptions to his appeal and collateral-review waiver. 27

B. Grant's reading of the appeal waiver's exception should prevail. 30

C. Enforcing the appeal waiver would work a miscarriage of justice. 32

Conclusion 33

Certificate of Compliance 35

Certificate of Service 36

## Table of Authorities

**Page(s)**

**Cases**

*Alleyne v. United States*,
570 U.S. 99 (2013) .......... 22

*Beeman v. United States*,
871 F.3d 1215 (11th Cir. 2017) .......... 10

*Bousley v. United States*,
523 U.S. 614 (1998) .......... 17, 18, 19, 31

*Cobbs v. United States*,
141 F.4th 872 (7th Cir. 2025) .......... 24, 25, 26

*Crothersville Lighthouse Tabernacle Church, Inc. v. Church Mut. Ins. Co.*,
168 F.4th 483 (7th Cir. 2026) .......... 28

*Davila v. United States*,
843 F.3d 729 (7th Cir. 2016) .......... 4

*Davis v. United States*,
817 F.3d 319 (7th Cir. 2016) .......... 22, 23

*Dimott v. United States*,
881 F.3d 232 (1st Cir. 2018) .......... 10

*Fernandez v. United States*,
114 F.4th 1170 (11th Cir. 2024) .......... 10

*Flores-Figueroa v. United States*,
556 U.S. 646 (2009) .......... 29

*Grzegorczyk v. United States*,
997 F.3d 743 (7th Cir. 2021) .......... *passim*

*Grzegorczyk v. United States*,
Br. of Pet'r, No. 18-3340, 2021 U.S. 7th Cir. Briefs LEXIS 7443 .......... 14

*Hunter v. United States*,
146 S. Ct. 1702 (2026) .......... 2, 20, 31, 32

*Johnson v. United States*,
576 U.S. 591 (2015) .......... *passim*

*McCoy v. United States*,
815 F.3rd 292 (7th Cir. 2016) .......... 17

*Murray v. Carrier*,
477 U.S. 478 (1986) .......... 19, 20

*Reed v. Ross*,
468 U.S. 1 (1984) .......... 17

*Sevugan v. Direct Energy Servs., LLC*,
931 F.3d 610 (7th Cir. 2019) .......... 13

*United States v. Davis*,
588 U.S. 445 (2019) .......... 19

*United States v. Malone*,
815 F.3d 367 (7th Cir. 2016) .......... 13

*United States v. Phillips*,
645 F.3d 859 (7th Cir. 2011) .......... 11

*United States v. Pipitone*,
67 F.3d 34 (2d Cir. 1995) .......... 20, 21

*United States v. St. Hubert*,
909 F.3d 335 (11th Cir. 2018). .......... 10

*United States v. Taylor*,
596 U.S. 845 (2022) .......... *passim*

*United States v. Williams*,
168 F.4th 1051 (7th Cir. 2026) .......... 4, 6, 7, 8

**Statutes**

18 U.S.C. § 924 .......... *passim*

28 U.S.C. § 2255 ........ *passim*

**Other Authorities**

Fed. R. Crim. P. 11 ........ 7, 11

Fed. R. Crim. P. 12 ........ 4

## Introduction

The government does not contest that the predicate offense for Petitioner Denzell Grant's conviction under § 924(c) was attempted Hobbs Act robbery. It concedes that the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022)—which held that attempted Hobbs Act robbery is not a valid predicate for § 924(c)—should apply retroactively. And it does not contest that the challenge Grant made in his original petition to the constitutionality of § 924(c)'s residual clause was unavailable before the Supreme Court decided *Johnson v. United States*, 576 U.S. 591 (2015).

These concessions compel granting relief here. The government spends much of its brief arguing two points on which it did not prevail in the district court: whether Grant's guilty plea precludes relief, and whether his petition was timely. Neither carries the day. As to whether Grant's guilty plea alone bars relief, an issue not raised in the district court, it does not because the Supreme Court has ruled decisively in Grant's favor regarding interpretation of his statute of conviction, and because Grant's plea agreement expressly allows collateral challenges based on subsequent changes in law. As to timeliness, the district court

correctly held that Grant's *Johnson*-based petition was timely filed, as it challenged § 924(c)'s residual clause and was filed within one year of the Supreme Court decision making that challenge available.

With respect to Grant's collateral-review waiver, which was the basis on which the district court dismissed Grant's petition, the government primarily argues that Grant forfeited his argument that the waiver does not apply by failing to raise it below in the exact form he does now. But the Court need only review the district court's opinion to see this argument was properly raised below, as the district court endorsed the interpretation of the appeal waiver Grant advances here, but found Grant was not entitled to relief under then-existing law. On the merits, Grant's interpretation of the appeal waiver is the correct one. The government's interpretation of the waiver is unworkable and inconsistent with the function of appeal waivers, as recently explained by the Supreme Court in *Hunter v. United States*, 146 S. Ct. 1702 (2026).

This Court should hold that Grant has satisfied the requisite procedural requirements to challenge his § 924(c) conviction on collateral review, and vacate it pursuant to *Taylor*.

## Argument

### I. Grant's guilty plea does not preclude relief.

In his petition, Grant argued that his guilty plea does not preclude relief because his petition challenges the government's power to "constitutionally prosecute" him. *Class v. United States*, 583 U.S. 174, 182 (2018) (citation omitted); (see Br. of Pet'r-Appellant ("Pet'r's Br.") at 30). The government responds that Seventh Circuit authority, including *Wheeler v. United States*, 857 F.3d 742 (7th Cir. 2017), and its progeny forecloses this argument. (See Br. of Resp't-Appellee ("Gov't's Br.") at 15–16.) Those cases do not control here for two reasons. First, none of the cases the government cites involved a petitioner whose statutory argument had already been resolved in his favor by the Supreme Court. Second, Grant's plea agreement expressly addressed the possibility that subsequent changes in the law may render him innocent of the offense charged and allowed him to challenge his conviction in that circumstance. None of these cases (each discussed below and then distinguished) evaluated the effect of a plea agreement like that.

#### A. In *Wheeler*, *Grzegorczyk*, and *Williams*, the defendant advanced a new interpretation of his statute of conviction not previously accepted by the Supreme Court or this Court.

The primary cases the government relies on, *Wheeler*, *Grzegorczyk* and *Williams*, all assessed whether a guilty plea precludes a later appeal or collateral-review challenge. But the Court in those cases did not confront the situation here, where the government has conceded the defendant's predicate offense is no longer a valid predicate.[1]

In *Wheeler*, this Court considered a direct appeal by a defendant convicted of attempted Hobbs Act robbery and use of a firearm in connection with a crime of violence. He argued that attempted Hobbs Act robbery was not a valid predicate offense for his § 924(c) conviction. The Court noted prior Circuit precedent supported the government's position that attempted Hobbs Act robbery is a crime of violence, but ultimately concluded it "need not decide who is right about [whether attempted Hobbs Act robbery is a crime of violence] because Wheeler waived his position by pleading guilty." *Wheeler*, 857 F.3d at 744. The Court reasoned that the defendant's argument on this point needed to be raised in a pre-trial motion under Fed. R. Crim. P. 12(b)(3)(B)(v), and thus was not

[1] The government also cites *Davila v. United States*, 843 F.3d 729 (7th Cir. 2016). In that case, however, the petitioner "admitted to a substantive drug offense that made him eligible for conviction under §924(c), no matter how [his] Hobbs Act [offense] is best classified." *Id.* at 731. Grant's petition does not involve a drug offense.

properly before the Court when raised for the first time on appeal. *Id.* The Court also assessed how the Supreme Court's anticipated decision in *Class*, 583 U.S. 174, might affect its analysis, but concluded it was not applicable because unlike the defendant in *Class*, the defendant in *Wheeler* did not argue that the statute under which he was convicted was unconstitutional—he argued only that his conduct was not covered by the statute as a matter of statutory construction. *Id.* at 745.

In *Grzegorczyk v. United States*, 997 F.3d 743 (7th Cir. 2021), the defendant's § 2255 petition sought to vacate his § 924(c) conviction, arguing that his underlying offense was not a valid predicate. The Court observed that the defendant's claim was an "almost-identical challenge" to the one it rejected in *Wheeler*, and relied on *Wheeler* to dismiss the petition. *Grzegorczyk*, 997 F.3d at 746. The Court reasoned that the defendant admitted to the predicate offense and he admitted to "possession of a firearm, in furtherance of a crime of violence." *Id.* at 746–47 (quoting § 924(c)(1)(A)). So, whatever the correct legal definition of "crime of violence," Grzegorczyk admitted that he committed one. *See id.* at 747. In *Grzegorczyk*, this Court had the benefit of the Supreme Court's decision in *Class*, which held that a criminal defendant did not waive his right to

challenge as unconstitutional the statute under which he was convicted by entering a guilty plea. 583 U.S. at 178.

The Court in *Grzegorczyk* offered two primary distinctions from *Class*. First, the defendant's claim "contradict[ed] the terms of his plea agreement." *Grzegorczyk*, 997 F.3d at 747. The defendant in *Grzegorczyk* admitted to committing a crime of violence but later denied doing so in his § 2255 petition. Second, the defendant in *Grzegorczyk* did not contend that the statute under which he was convicted, § 924(c), was "invalid," arguing instead that it did not apply to his conduct. *Id.* at 748. Thus, he "[did] not challenge[ ] the government's power to criminalize his admitted conduct." *Id.* The Court observed that an unconditional guilty plea waives claims on "issue[s] of statutory construction," but not "claim[s] of constitutional immunity from prosecution." *Id.*

The government also contends this Court recently affirmed in *United States v. Williams*, 168 F.4th 1051 (7th Cir. 2026), that the government's proffered interpretation of Grant's plea agreement controls here—that is, that it forecloses a challenge that his predicate offense is not a "crime of violence" for purposes of § 924(c). The defendant in *Williams* pleaded guilty to assaulting a federal employee in violation of 18

U.S. § 111 and to a § 924(c) charge. He later argued on appeal that his assault charge was not a valid predicate offense, meaning he did not understand "the nature of [the] charge to which [he was] pleading" as required by Federal Rule of Criminal Procedure 11. *See Williams*, 168 F.4th at 1054. The Court in *Williams* held the defendant waived his Rule 11 challenge for several reasons, including that by pleading guilty he waived his argument that, as a matter of "statutory interpretation," his assault conviction was not a crime of violence. 168 F.4th at 1055 ("Williams's claim—that § 111(b) wasn't a crime of violence—contradicts the admissions made in his guilty plea, because he admitted that he committed the crimes charged against him."). The Court also noted that the defendant expressly waived his appellate rights in an appeal waiver contained in his plea agreement. *Id.* at 1055–56.

The government's reliance on *Wheeler*, *Grzegorczyk*, and *Williams* is misplaced for two independent reasons. First, none of those cases involved a defendant convicted of a predicate offense that, due to intervening Supreme Court precedent, no longer constituted a valid predicate offense under § 924(c). In each, the defendant advanced an interpretation of what qualifies as a valid predicate for purposes of § 924(c) that had not

been previously accepted by this Court or the Supreme Court. This distinction is critical in light of the Court's reasoning in *Wheeler*, *Grzegorcyk*, and *Williams*, under which a defendant's guilty plea waives statutory interpretation challenges to his guilty plea, but leaves constitutional challenges undisturbed. Here, where Grant's statutory argument has already been accepted by the Supreme Court, Grant's appeal raises a constitutional challenge because his conviction necessarily implicates § 924(c)'s residual clause.

As explained in Grant's opening brief, at the time of Grant's conviction, there were two ways a defendant could be convicted under § 924(c)—the residual clause and the elements clause. 18 U.S.C. § 924(c)(3); (*see* Pet'r's Br. at 18–20). A conviction could be supported by either one, and nothing in Grant's indictment or plea agreement specifies whether he pleaded guilty to having used a firearm in connection with an elements-clause crime of violence, *see* 18 U.S.C. § 924(c)(3)(A), or a residual-clause crime of violence, *see id.* § 924(c)(3)(B).

*Grzegorczyk* explained that "a guilty plea, by itself, does not implicitly waive a defendant's right to challenge the constitutionality of his statute of conviction. But … an unconditional plea of guilty is sufficient

to waive a defendant's right to contest the proper interpretation of the statute of conviction." 997 F.3d at 748 (citation modified). Unlike the defendant in *Grzegorczyk*, Grant is not "contest[ing] the proper interpretation" of his statute of conviction. *Id.* After *Taylor*, there is nothing left to contest.

The implication of the government's argument is that whenever there are collective residual clause and elements clause challenges, and a guilty plea, a petitioner cannot challenge his conviction because it could have rested on the elements clause and thus may turn on "an issue of statutory construction." *Grzegorczyk*, 997 F.3d at 748. But there is little support for such a broad reading of *Grzegorczyk*. In fact, even where courts apply a strict approach to challenges made under statutes with both an elements clause and a residual clause, they typically allow defendants the opportunity to show that they were sentenced under the constitutionally infirm residual clause—rather than saying that so long as there is an elements clause, the claim is automatically purely statutory.

The Eleventh Circuit, for example, in the related context of determining whether a defendant can bypass the second-and-successive bar in

§ 2255, has adopted the rule that, in order for a defendant to be permitted to file a successive petition he must show he was sentenced solely under § 924(c)'s unconstitutional residual clause rather than its elements clause. *Fernandez v. United States*, 114 F.4th 1170, 1179 (11th Cir. 2024).[2] *See also Dimott v. United States*, 881 F.3d 232, 240 (1st Cir. 2018). The existence of the framework set out in *Fernandez* shows that where courts decide to take a strict view of what is a constitutional challenge and what is a statutory challenge, they at least allow a petitioner the opportunity to demonstrate that he is, in fact, making a constitutional challenge rather than merely assume a challenge is statutory because it challenges a conviction under a statute containing an elements clause.

**B. Grant's guilty plea expressly allows this challenge.**

Second, the government repeatedly refers to Grant's guilty plea as unconditional. That is technically true but fundamentally misleading. As a technical matter, it is true that Grant's plea was unconditional rather

[2] The Eleventh Circuit established this approach in *Beeman v. United States*, 871 F.3d 1215 (11th Cir. 2017), an ACCA case. It should be noted that the Eleventh Circuit does not require such a showing in this context, i.e., for a petitioner to establish he did not waive a challenge to his conviction in a guilty plea, as it has held this kind of habeas petition "challenges the district court's power to act." *United States v. St. Hubert*, 909 F.3d 335, 343–44 (11th Cir. 2018). (*See* Pet'r's Br. at 31.)

than conditional; a conditional plea is one that "reserve[es] in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." Fed. R. Crim. P. 11; *see United States v. Phillips*, 645 F.3d 859, 862 (7th Cir. 2011). But Grant's plea was only unconditional in this technical sense. It did not preclude him from all future challenges to his conviction.

Grant's plea agreement includes the standard waiver of rights at trial in his plea agreement, including the right to be tried by a jury, the right to file pre-trial motions such as motions to suppress, and others, and reserved no issues for appeal under Rule 11. (*See* Plea Agreement § 1.1, App'x 25.) But as discussed in Grant's opening brief, Grant's guilty plea expressly allows certain challenges to Grant's conviction. The waiver does not apply to:

> 1) any subsequent change in the interpretation of the law by the United States Supreme Court or the United States Court of Appeals for the Seventh Circuit that is declared retroactive by those Courts and that renders the defendant actually innocent of the charges covered herein; and 2) appeals based upon Sentencing Guideline amendments that are made retroactive by the United States Sentencing Commission.

(Plea Agreement § 3.3, App'x 33; *see* Pet'r's Br. at 33.) Grant's plea was thus substantively conditional because it leaves open this avenue for appeal or collateral review, allowing him to challenge his conviction based on certain changes in law.

The government's response does not offer a persuasive way to reconcile its complete-waiver argument with the exception in Grant's agreement. It asserts that there is "no conflict between the ordinary consequences of Grant's guilty plea and the plea agreement's separate exception permitting specified collateral challenges based on a limited category of later changes in law." (Gov't's Br. at 19.) The government believes the exception in Grant's agreement "defines the circumstances in which the appeal-and-collateral review waiver does not apply" but "does not purport to erase independent procedural or substantive limitations on whatever claim remains." (*Id.*) The government thus concludes the exception to the appeal and collateral-review waiver applies solely to that waiver and has no bearing on the rest of the agreement.

The first problem with this argument is that the government does not argue that Grant waived this challenge based on a particular provi-

sion of the plea agreement; instead, the argument is based on the agreement as a whole. (Gov't's Br. at 14 ("Grant does not contend that his plea was involuntary or unknowing when entered. Accordingly, his guilty plea in this case precludes his collateral attack.").) So, the entire agreement should be considered when determining whether Grant waived all challenges to his conviction based on subsequent law, including the express exception to the appeal and collateral-review waiver for subsequent changes in the law.

The second problem is that the agreement must be interpreted "using ordinary principles of contract law," *United States v. Malone*, 815 F.3d 367, 370 (7th Cir. 2016), and one such principle is that "[a] contract should be construed as a whole … viewing each part in light of the others," *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 618 (7th Cir. 2019) (citation modified). The government offers no way to read these provisions harmoniously. It simply says that there is "no conflict" between a full waiver of all subsequent challenges to a conviction and the provision allowing appeal or collateral challenge based on subsequent law. (Gov't's Br. at 19.)

Finally, this bargained-for term in Grant's plea agreement distinguishes this case from *Grzegorczyk*, where no similar exception was at issue. 997 F.3d at 745 ("Under the agreement, he could only appeal the validity of his guilty plea and the sentence imposed.").[3] The Court in *Grzegorczyk* reasoned that the defendant categorically admitted his conduct was a crime of violence, so he "implicitly waive[d]" challenges based on subsequent law asserting that he did not commit a crime of violence. *Id.* at 748. Grant expressly preserved those challenges with the exception in his appeal waiver for new law.

## II. Grant did not commit a procedural default and his petition was timely filed.

The government next argues that Grant's petition was procedurally defaulted because he did not directly appeal his conviction. Specifically, it contends Grant's argument that attempted Hobbs Act robbery is not a valid § 924(c) predicate was available when Grant's conviction became final, so Grant did not have cause for failing to raise it on direct appeal.

[3] *See also* Br. of Pet'r at 6, *Grzegorczyk v. United States*, No. 18-3340, 2021 U.S. 7th Cir. Briefs LEXIS 7443 ("Mr. Grzegorczyk … agreed he was only permitted to 'appeal the validity of this plea of guilty and the sentence imposed.' ... The plea agreement was silent as to Mr. Grzegorczyk's rights under 28 U.S.C. § 2255 to collaterally attack his conviction or sentence.").

However, the government appears to concede that Grant's § 2255 *petition* was timely, because *Johnson v. United States*, 576 U.S. 591 (2015), was not decided until "shortly before" Grant filed his petition. (Gov't's Br. at 21.) The government asks this Court to hold that even though Grant did not procedurally default his § 2255 *petition*, he procedurally defaulted any argument within that petition that attempted Hobbs Act robbery is not a valid § 924(c) predicate. If the government is right, the only argument Grant is permitted to make in that petition and subsequent proceedings on it was that § 924(c)'s residual clause is unconstitutional under *Johnson*, regardless of any subsequent developments in the law. This approach is unsupported, makes little sense, and should thus be rejected.

### A. Grant made his elements-clause argument in his § 2255 petition, which was timely filed.

Grant's § 2255 petition was timely filed and thus not subject to procedural default. In the petition, Grant pressed his elements-clause argument alongside his related argument that § 924(c)'s residual clause is unconstitutional. (*See* Pet., Civ. Dkt. 1, PageID 12–37.) Then, when appointed counsel appeared on his behalf, they discussed the merits of

Grant's position on the elements clause (and ultimately concluded his position was foreclosed by law then in effect on the elements clause). (Br. of Pet'r's Counsel, Civ. Dkt. 5, at 6–10.) The district court held that the petition was timely filed—and did not distinguish between claims based on the residual clause and those based on the elements clause. (Order, App'x 5.) It went on to evaluate the merits of Grant's elements-clause argument—although only as an alternative ground for its holding because it held that his collateral-review waiver barred relief. (*Id.*, App'x 8.)

Thus, the government's procedural-default argument requires the Court to accept that when a petitioner makes interrelated arguments in a § 2255 petition and the district court evaluates those arguments as timely-filed, this Court should nonetheless excise from consideration certain arguments that it concludes should have been raised on direct appeal. The government fails to provide any authority for this unusual approach. At least as to claims that are interrelated, i.e. where a petitioner would not be entitled to relief unless he prevails on both, the better mode of analysis is for those claims to rise and fall together for purposes of timeliness and procedural default.

### B. Grant's elements-clause argument was futile or irrelevant pre-*Johnson*.

As explained in Grant's opening brief, Grant did not procedurally default his petition because the claims he makes were not available pre-*Johnson*, *see McCoy v. United States*, 815 F.3rd 292, 295 (7th Cir. 2016), or alternatively that there was cause and prejudice for any default because such claims were not available. (Pet'r's Br. at 49–54.) The government argues at length its contention that pre-*Taylor* law laid the foundation for that ruling, but offers little explanation on this substantive point—that Grant's petition raised a claim (based on the residual clause) "so novel that its legal basis [was] not reasonably available," a situation that provides "cause for his failure to raise the claim." *Reed v. Ross*, 468 U.S. 1, 16 (1984). Its response is that the "residual clause's existence may have made an elements-clause challenge less likely to produce immediate relief .... It did not, however, prevent Grant from making and preserving the statutory argument." (Gov't's Br. at 27.) When the government refers to "making and preserving the statutory argument," it means, in Grant's case, appealing his conviction on the grounds that it was premised on a misapplication of § 924(c).

The only authority the government cites for this position is *Bousley v. United States*, 523 U.S. 614 (1998), in which the Supreme Court held

a federal habeas petitioner procedurally defaulted his claim that the trial court misinformed him of the elements necessary to prove a violation of § 924(c)(1). That case involved the definition of "use" in § 924(c) and a subsequent Supreme Court decision narrowing it. *Bousley*, 523 U.S. at 617. The Court held that Bousley could not argue cause on the grounds that a subsequent decision endorsed his position regarding the statute, but that decision was not available to him during the time in which he could have appealed his conviction. It reasoned that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Id.* at 623 (citation omitted). The fact that the petitioner's statutory argument had not yet been accepted during the time in which he could appeal did not constitute cause for his procedural default. *Id.*

Bousley does not address Grant's argument that direct appeal was futile because relief was precluded by his inability to succeed on a separate point, on which the government concedes Grant's claim was unavailable. It says only that a claim cannot be considered futile for purposes of procedural default solely because a particular court was unlikely to accept that particular claim during the time when the defendant should

have raised it. *Bousley* may apply to preclude similar habeas challenges by defendants sentenced after *United States v. Davis*, 588 U.S. 445 (2019), but before *Taylor*—when the residual clause was no longer viable but the Court had not yet determined attempted Hobbs Act robbery is not a valid § 924(c) predicate under the elements clause—but not to those sentenced before *Davis*, as is the case here.

### C. Grant's appeal waiver was adequate cause for his failure to challenge his conviction on direct appeal.

As to Grant's argument that his appeal waiver also constitutes cause for his failure to challenge his conviction on direct appeal, the government fails to provide adequate support for its contrary position. As it does elsewhere in its brief, the government also essentially ignores the exception in Grant's plea agreement for subsequent changes in law.

First, the government points only to *Murray v. Carrier*, 477 U.S. 478 (1986), as support for its position that Grant's conditional appeal waiver cannot constitute cause for any procedural default. *Murray* established that to constitute cause, the circumstance the defendant relies upon must be an "objective factor external to the defense." *Id.* at 488. At issue in *Murray* was "attorney error that results in a procedural default."

*Id.* *Murray* did not discuss plea agreements, and attorney error is a different impediment to appeal than an appeal waiver that "eliminat[es] judicial review." *Hunter v. United States*, 146 S. Ct. 1702, 1712 (2026). In fact, *Murray* notes that "a showing that the factual or legal basis for a claim was not reasonably available to counsel" constitutes cause. *Murray*, 477 U.S. at 488. Grant's appeal waiver meant that direct appeal was not "reasonably available," *id.*, to him.

Although *Murray* does not address this issue, several out-of-circuit cases have concluded that an appeal waiver does not constitute cause for procedural default. *See United States v. Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995) (collecting cases).[4] However, the reasoning of those cases indicates that they do not apply here. Again, the language in Grant's appeal and collateral-review waiver expressly reserving the right to challenge his conviction based on subsequent law is the critical difference. For example, in *Pipitone*, the petitioner's waiver covered appeals but not § 2255 petitions, and the petitioner argued that this constituted cause excusing his failure to file an appeal, thus allowing him to file a § 2255 petition.

[4] Grant has not identified a Seventh Circuit case addressing whether an appeal waiver can constitute cause for procedural default.

The *Pipitone* court responded that "[w]hatever linguistic distinction may be made between an 'appeal' and a § 2255 petition, we are loathe to countenance so obvious a circumvention of a plea agreement." *Id.*; s*ee also id.* ("Without alleging a constitutional or jurisdictional violation, it is an anathema to allow one who has voluntarily waived his right to appeal to attack the sentence collaterally.") (citation omitted).

Part of the reason that courts do not allow an appeal waiver to constitute cause is that filing a § 2255 petition reneges on a defendant's promise in his plea agreement not to challenge his conviction after sentencing. *See id.* No such concern is present here. Instead, as explained in Grant's opening brief, Grant's challenge is entirely consistent with his plea agreement. (*See* Pet'r's Br. at 17, 33–40.) He waited until there was a "subsequent change in the interpretation of the law by the United States Supreme Court" that called into question the validity of his conviction and then filed a permissible collateral challenge. (*See* Plea Agreement § 3.3, App'x 33.[5])

---

[5] The government claims in a footnote that Grant waived his right to file pretrial motions, "thereby removing any challenge to the sufficiency of the indictment from the scope of any future appeal or collateral attack." (Gov't's Br. at 28 n.3 (quoting Plea Agreement § 1.1).) It also states that Grant "waived his right to appeal or collaterally attack his

### D. Grant's petition was timely for purposes of § 2255(f).

The government separately argues that Grant's petition is not timely under 28 U.S.C. § 2255(f), which applies a one-year limitations period to § 2255 petitions. This argument fails because Grant's two-pronged argument with respect to § 924(c) amounts to one claim, not two, for purposes of *Davis v. United States*, 817 F.3d 319 (7th Cir. 2016). *Davis* explained that "Supreme Court precedent issued years after [a defendant's] conviction otherwise became final does not allow him to tack on additional, otherwise untimely claims to that one timely claim." *Davis*, 817 F.3d at 328. The petition at issue in *Davis* concerned three entirely separate grounds for relief—first, that the defendant was entitled to relief under *Alleyne v. United States*, 570 U.S. 99 (2013), which held that any factual finding that increases a defendant's sentence must be proved beyond a reasonable doubt, and two separate arguments of ineffective assistance of counsel. *Davis*, 817 F.3d at 321. Here, Grant's petition asserted that his conviction for attempted Hobbs Act robbery was not a

---

conviction and sentence more generally," without mentioning the exception for new law. (*Id.*) Here, as elsewhere in its brief, the government either reads out the Agreement's exception for new law or fails to give it effect.

valid predicate for his § 924(c) charge on two interrelated grounds—and he needed to prevail on both in order to obtain relief. The district court was correct that Grant's *Johnson*-based petition was timely, and *Davis* does not compel a contrary result.

## III. Should the Court reach the issue, it should conclude that Grant is "actually innocent" of his § 924(c) charge, excusing procedural default.

Grant argues in his opening brief that he is "actually innocent" of his § 924(c) charge because the stipulated facts attached to his plea agreement do not amount to completed Hobbs Act robbery. (Pet'r's Br. at 54–58.) The government responds that the "stipulated facts accompanying Grant's guilty plea and his PSR foreclose [a] showing" that Grant did not commit completed Hobbs Act robbery. (Gov't's Br. at 32–33.) But the facts to which Grant admitted in his Plea Agreement contain one description of the offense, while the PSR contains a different, secondhand description. Grant's stipulation of facts—which, along with Grant's plea agreement and plea colloquy is all the Court should consider—shows he is actually innocent of completed Hobbs Act robbery.

The Stipulation of Facts states: "Grant held the gun on R.B. as Grant followed R.B. to the cash register. As R.B. was giving Grant the

cash from the register, R.B. grabbed the gun and the two began struggling over the gun." (Stip. of Facts § 1, App'x 35.) Those facts would not allow a jury to convict a defendant of completed Hobbs Act robbery. The government acknowledges that completed Hobbs Act robbery requires a "completed taking or obtaining." (Gov't's Br. at 33.) It also acknowledges a "factual issue about the precise instant at which R.B. grabbed Grant's gun." (*Id.* at 34.) However, it fails to recognize the disconnect between these two admissions, and the Court should reject the government's argument that Grant admitted to obtaining money from R.B., which is not supported by the Stipulation.

The government confuses the point by considering Grant's stipulation of facts and material from the PSR together, but it appears to argue that by admitting that R.B. wrestled the gun away when R.B. had gone to the cash register and "was giving" Grant cash, Grant admitted to obtaining cash. This is incorrect; a reasonable jury could not conclude, based only on that admission, that Grant obtained cash from R.B. *See Cobbs v. United States*, 141 F.4th 872, 878 (7th Cir. 2025) ("To establish actual innocence, a petitioner must show that it is more likely than not

that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.") (citation modified).

The key point is that the phrase "R.B. was giving" does not establish that Grant obtained any cash when R.B. and Grant began struggling over the gun. An example illustrates the point. If one were to say that he received a phone call when he "was going" to the store, that would not typically mean that he received the phone call after he arrived at the store. As a matter of common usage, this would more likely mean that he received the phone call on his drive there. It is thus more likely than not that no reasonable juror would have found Grant guilty, beyond a reasonable doubt, of completed Hobbs Act robbery on these facts.

The other statement on which the government relies is one the victim, R.B., gave to the U.S. Probation Officer and that appeared in Grant's Presentence Investigation Report. However, the government offers little authority for its argument that the Court should consider statements the Probation Officer recounted in the PSR as part of its actual-innocence analysis. In *Cobbs*, a case similar to this one, the Court did not consider facts from the petitioner's pre-sentence investigation report while evalu-

ating actual innocence, but analyzed it with reference to facts the petitioner actually admitted. *See Cobbs*, 141 F.4th at 881 ("Recall that, as part of his plea colloquy, Cobbs *acknowledged* that he had taken a cell phone from an employee…. By *acknowledging* these facts, Cobbs *admitted* that he had taken or obtained personal property from the person of another….") (emphases added).

Applying the approach in *Cobbs*, the statements in the PSR that the government cites should not be considered. Arguing for consideration of these statements, the government claims that Grant "did not object" to the PSR, but that does not amount to affirmative acknowledgment by Grant that R.B.'s account of the incident in the report is accurate. (*See* Gov't's Br. at 33.) Fundamentally, the Stipulation of Facts, which was agreed by the parties as part of a negotiated resolution of the government's case against Grant, covers the events relevant to the actual innocence question, and it conflicts with the account in the PSR. Whether or not it is appropriate to consult the PSR for an actual innocence inquiry in other circumstances, the PSR should not control over conflicting information in a defendant's agreed Stipulation of Facts.

## IV. The exception in Grant's appeal and collateral-review waiver for subsequent law applies here.

This appeal is not barred by Grant's appeal and collateral-review waiver, which expressly reserved Grant's right to challenge his conviction based on new law that has been declared retroactive. As an initial matter, the government concedes that *Taylor* applies retroactively on collateral review. (Gov't's Br. at 37–38.) It nonetheless argues that the exception in Grant's plea agreement for new law "declared retroactive" does not apply because neither this Court nor the Supreme Court has yet declared *Taylor* retroactive. The Court should now hold that *Taylor* applies retroactively, as all parties agree, thus satisfying the Plea Agreement's requirement for new law "that is declared retroactive," which does not say the declaration needs to come in a case preceding consideration of Grant's appeal or collateral challenge. (Plea Agreement § 3.3, App'x 33.)

### A. Grant did not waive his interpretation of the exceptions to his appeal and collateral-review waiver.

The government first argues that Grant waived the interpretation of his plea agreement advanced in his petition because he did not present it to the district court. That is demonstrably wrong. The district court said in its order:

> Grant's plea agreement explicitly left one door to collateral review open. The agreement says the waiver of the right to bring a collateral challenge does *not* apply to any subsequent

> change in the law by the United States Supreme Court or the United States Court of Appeals for the Seventh Circuit that was declared retroactive by those Courts *and* that rendered Grant actually innocent of the charges. Any reliance on this provision would be misplaced, because *Johnson* did *not* render Grant actually innocent of the charges he pled guilty to – Hobbs Act robbery and discharge of a firearm in furtherance of a crime of violence. Nothing about the holding of *Johnson* altered the elements of or heightened the proof required for conviction under these statutes.

(Order, App'x 7–8.)

Based on this analysis alone, the Court should conclude that Grant did not waive or forfeit his argument that the exception to his appeal waiver for subsequent changes in law applies. The doctrines of waiver and forfeiture seek to ensure arguments are raised at the proper time and in the proper channels. *See Crothersville Lighthouse Tabernacle Church, Inc. v. Church Mut. Ins. Co.*, 168 F.4th 483, 490 (7th Cir. 2026). Where, as here, an argument is considered by the district court, this Court need look no further, because that shows that the argument was properly raised below.

The government nonetheless argues that Grant waived his specific argument that "actual innocence" in his appeal waiver does not have the technical meaning it has elsewhere in collateral-review law. But there is no reason the Court should apply the waiver analysis at that level of

granularity. Grant's argument is that the exception to his appeal waiver for subsequent law applies because under the definition of § 924(c) now in effect, attempted Hobbs Act robbery does not qualify as a predicate offense. Grant offered the specific argument about legal and factual innocence only in anticipation of the argument—which the government advances in its brief—that the technical meaning of "actual innocence" from the procedural default context should apply to the appeal waiver. The basic argument, however, is that Grant is innocent of his § 924(c) charge in light of new law.

The district court addressed this exact argument but rejected it because no law subsequent to Grant's conviction had changed the elements the government needed to prove to convict for § 924(c) under the elements clause, reasoning that *Johnson* did not "alter[ ] the elements of or heighten[ ] the proof required for conviction under these statutes." (Order, App'x 8.) In fact, the district court arguably endorsed Grant's reading of the actual innocence requirement, because in a footnote it contrasted Grant's circumstances with those of the defendant in *Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009). It explained that in *Flores-Figueroa*, "an element of the offense of conviction was changed by the

Supreme Court's opinion, resulting in the defendant being *actually innocent* of the charge." (Order, App'x 8 n.3.) The district court's footnote is consistent with Grant's interpretation of his appeal waiver here, as it endorses that a defendant can be rendered actually innocent of his offense of conviction by new law changing what the government must prove to convict for that offense.

In sum, the district court's opinion below seemingly agreed that Grant could have been entitled to relief if subsequent Supreme Court authority altered what the government needed to prove to convict. But at the time the district court rendered its opinion, no such Supreme Court authority existed regarding § 924(c)'s elements clause. This Court should reject the government's contention that Grant waived an argument that the district court expressly addressed.

**B. Grant's reading of the appeal waiver's exception should prevail.**

The government fails to meaningfully respond to Grant's contractual argument that the term actual innocence in his appeal waiver should be read to include the circumstance where the predicate offense to which the defendant pleaded guilty is no longer a valid predicate. The basic question regarding actual as opposed to factual innocence, as applied to

this case, is whether Grant must show that he is actually innocent under *Bousley*, 523 U.S. at 623–24, or if some lesser showing is required. The contract principles that the government cites, including evaluating contract terms in context, and reading the contract harmoniously to give each term meaning whenever possible, support Grant's reading that a heightened showing of factual innocence is not required. (*See* Gov't's Br. at 45–46.)

As for context, the actual innocence analysis from *Bousley* is a poor fit for determining whether or not to apply an appeal waiver. The point of such a waiver is that it "eliminat[es] judicial review." *Hunter*, 146 S. Ct. at 1712. Under the government's reading, assessing whether an appeal waiver applies would require thorough judicial review because courts would need to evaluate the factual record in each case to determine whether a reasonable jury could have convicted the defendant, and also potentially determine whether the government "has forgone more serious charges" and, if so, whether a defendant is innocent of those charges too. *Bousley*, 523 U.S. at 624. An appeal waiver with that kind of exception would not eliminate judicial review. *See Hunter*, 146 S. Ct. at 1712.

The government should instead adopt Grant's common-sense reading of the exception to his plea waiver, applying it where the Supreme Court has newly interpreted a defendant's statute of conviction such that the predicate offense to which he pleaded guilty no longer qualifies as a valid predicate. This reading is a significantly better fit with the nature of appeal and collateral-review waivers than the fact-intensive approach for which the government advocates.

### C. Enforcing the appeal waiver would work a miscarriage of justice.

As to Grant's argument that enforcing the appeal waiver would result in a miscarriage of justice and the waiver should not be enforced under *Hunter*, the government argues the existence of the exception in the appeal waiver for subsequent changes in law indicates that the Court should not apply the miscarriage-of-justice exception here. (Gov't's Br. at 51 ("Treating the mere existence of a later favorable decision as a miscarriage of justice would largely nullify the carefully drafted exception [for changes in law].").) But the relevant exception for new law should have the opposite effect.

If the Court concludes that the exception in Grant's plea agreement does not apply because he is not "actually innocent" in the sense used

therein, it should apply the miscarriage-of-justice exception because of the serious concerns regarding defendants' expectations of what they bargained for discussed in Grant's opening brief. That is, a reasonable defendant would believe that this type of provision would allow him to challenge his conviction when new law from the Seventh Circuit or Supreme Court changes what conduct the statute covers. (*See* Pet'r's Br. at 33–37.) Where a defendant bargained in his plea agreement for the opportunity to challenge his conviction based on new law, that opportunity should not be denied because of the technical meaning of "actual innocence" elsewhere in collateral-review law. If the Court concludes it must apply that meaning of "actual innocence" to maintain consistency across different collateral-review contexts, the miscarriage-of-justice exception is an appropriate safety valve to ensure that petitions a defendant reasonably expects to have reviewed are in fact reviewed.

## Conclusion

Grant was convicted of attempted Hobbs Act robbery and use of a firearm in connection with a crime of violence, but after *Taylor*, attempted Hobbs Act robbery is no longer a crime of violence. There is thus no valid predicate underlying Grant's § 924(c) conviction. And Grant

prosecuted his claim correctly, meaning no procedural hurdle stands in the way of relief.

For the reasons stated above and in Grant's opening brief, Grant requests that his conviction for violation of § 924(c) be vacated and that he be remanded for resentencing.

Filed: September 24, 2026.

Respectfully submitted,
DENZELL D. GRANT,
*By Counsel*

By /s/ *Adam W. Decker*

Benjamin S. Morrell
Adam W. Decker
Spencer J. Parts
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Dr., Suite 2600
Chicago, IL 60601
(312) 527-4000
bmorrell@taftlaw.com
adecker@taftlaw.com
sparts@taftlaw.com

*Appointed Counsel for Petitioner Appellant*

**Certificate of Compliance**

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that the foregoing document complies with the type-volume limitation of Rule 32(a)(7)(B)(i), as modified by Circuit Rule 32(c). It contains 6,955 words.

I further certify that the foregoing document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6), as modified by Circuit Rule 32(b). It has been prepared using Microsoft Word in the proportionally spaced typeface of Century Schoolbook, in 14-point font size.

Dated: September 24, 2026.

By: /s/Adam W. Decker

## Certificate of Service

I certify that on the date listed below, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: September 24, 2026.

By: /s/Adam W. Decker